## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

| | |
|---|---|
| SUNTRUST EQUIPMENT FINANCE & LEASING CORP., | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| INTERNATIONAL SPEEDWAY CORPORATION, | ) ) ) |
| Defendant. | ) ) ) |

CIVIL ACTION FILE NO._____

## COMPLAINT

Plaintiff SunTrust Equipment Finance & Leasing Corp. ("Plaintiff" or "STEFL"), by and through undersigned counsel, files its Complaint against International Speedway Corporation ("ISC") as follows.

## INTRODUCTION

1.

This lawsuit arises out of ISC's steadfast refusal to pay STEFL even a single dime of rent for the 500 mobile solar generators ("MSGs") it subleases for use at its onsite events.

2.

STEFL entered into a commercial arrangement in 2017 with DC Solar Distribution, Inc. ("DC Solar"), a manufacturer and distributor of MSGs, and ISC, a publicly-traded corporation that owns and operates race tracks across the United States.

3.

As the basis of the commercial arrangement, STEFL agreed to purchase from a DC Solar affiliate 500 MSG's that DC Solar had manufactured. STEFL then agreed to lease the MSGs back to DC Solar, which in turn subleased the MSGs to ISC to use at five of ISC's racetracks (collectively the "Sale/Leaseback/Sublease"). STEFL, DC Solar, and ISC all understood and agreed that ISC, a publicly traded company with a market capitalization in excess of $1.5 billion at the time of the transaction, was the ultimate user of the MSGs and thus would have the ultimate financial responsibility.

4.

Because STEFL was relying on ISC to make payments under the Sublease (as defined below) obligations, as a critical part of the Sale/Leaseback/Sublease, STEFL would only allow a "Permitted Sublessee" to use the MSGs pursuant to a "Permitted Sublease"—*i.e.*, a sublease that STEFL had approved. STEFL expressly approved (and incorporated as an exhibit to the Master Lease (as defined below)) the Sublease that governs ISC's right to use STEFL's MSGs.

5.

DC Solar stopped making required lease payments in December 2018 and thus went into default under the Master Lease. STEFL then stepped into the shoes of DC Solar pursuant to its contractual rights under the Master Lease and notified ISC to make payment directly to STEFL under the Sublease. ISC, however, has failed to respond to STEFL's demands for payment, thus necessitating this litigation.

6.

DC Solar has recently been accused by federal investigators of operating a Ponzi Scheme (as defined below) by which investors in DC Solar were misled about both the existence of certain MSGs and lease revenue for certain MSGs.  DC Solar filed a bankruptcy petition on February 4, 2019.

7.

While ISC has not been accused of involvement in the Ponzi Scheme (as defined below), evidence recently disclosed to STEFL has raised significant concerns about ISC's and DC Solar's lack of candor in their dealings with STEFL.  Specifically, despite being on notice of and acknowledging that ISC's right to use the MSGs was only authorized under a Permitted Sublease, ISC and DC Solar secretly entered into Addendum 1 (as defined below) to the Sublease (as defined below) *on the very day the Sublease was signed*, and then Addendum 2 (as defined below) a few months later (collectively, the "Secret Addendums").  The Secret Addendums radically changed the applicable terms of the Sublease by (among other things) conditioning ISC's obligation to make payments under the Sublease on DC Solar's compliance with a separate set of sponsorship agreements by which DC Solar advertised itself at ISC events.  The Secret Addendums effectively turned the Sublease into a financing arrangement for DC Solar's Sponsorship Agreements with ISC, rather than the Sale/Leaseback/Sublease established by the Master Lease and Sublease.

8.

The Secret Addendums were not disclosed to STEFL, and neither ISC nor DC Solar ever sought STEFL's consent.

9.

STEFL seeks payment from ISC of $46,093,072.50, representing the accelerated payments due under the Sublease, along with related interest and attorney's fees.  STEFL seeks, in the alternative, a declaration that the Secret Addendums are void and unenforceable because they violate both the Master Lease and Sublease.

## PARTIES

10.

STEFL is a Georgia corporation that maintains its principal place of business at 3333 Peachtree Road, Northeast, 4th Floor, Atlanta, Georgia 30326.

11.

ISC is a Florida corporation that maintains its principal place of business at One Daytona Boulevard, Daytona Beach, Florida.  ISC may be served with process by serving its registered agent, W. Garrett Crotty, at One Daytona Blvd., Daytona Beach, Florida 32114.

## JURISDICTION AND VENUE

12.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332.  Plaintiff and Defendant are citizens of different states and the amount in controversy, without interest and costs, exceeds seventy-five thousand dollars

($75,000.00).   Specifically, STEFL is a citizen of Georgia because it is a Georgia corporation that maintains its principal place of business in Atlanta, Georgia.   ISC is a citizen of Florida because it is a Florida corporation that maintains its principal place of business in Daytona Beach, Florida.   Further, the action involves claims that seek damages in excess of the jurisdictional amount.   The actual amount in controversy in this matter exceeds $46,000,000.

13.

Venue is proper in the United States District Court for the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(1) because ISC is a resident of Volusia County, Florida, which is located within the Middle District of Florida, Orlando Division.

## BACKGROUND

### The Master Lease

14.

STEFL entered into a Master Equipment Lease Agreement No. 10194 with DC Solar on September 25, 2017 (the "Master Lease").   A true and correct copy of the Master Lease is attached hereto as Exhibit A.

15.

The Master Lease was the format for Sale/Leaseback/Sublease transactions between STEFL and DC Solar through which STEFL became the owner of MSGs that STEFL would leaseback to DC Solar, who in turn entered into the subleases on the terms set forth in the Master Lease.

16.

Under the Master Lease, STEFL granted DC Solar the right to sublease the "Equipment"—*i.e.*, the MSGs—to "Permitted Sublessees," which the Master Lease defines as including Defendant ISC or "any other sublessee with [STEFL's] prior consent,"  under a "Permitted Sublease," which the Master Lease defines as "a sublease of any Equipment between [DC Solar] and a Permitted Sublessee under a sublease agreement in the form of Exhibit A hereto as approved by [STEFL]."

17.

Paragraph 16(a) of the Master Lease provides that DC Solar "SHALL NOT … SUBLET THE EQUIPMENT TO, OR PERMIT THE EQUIPMENT TO BE USED BY, ANYONE OTHER THAN [ISC] OR A PERMITTED SUBLESSEE UNDER A PERMITTED SUBLEASE, IN EACH CASE WITHOUT LESSOR'S PRIOR CONSENT."

18.

The term and rent for the MSGs are set forth in applicable equipment schedules, which were then agreed to by STEFL and DC Solar on September 28, 2017 and November 3, 2017.

19.

Equipment Schedule 001 was entered into between STEFL and DC Solar on September 28, 2017 ("Schedule 001").  Pursuant to Schedule 001, STEFL leased 300 MSGs to DC Solar with $6,750,000 paid upfront and subsequent monthly payments of

$232,500 over a term of 120 months. A true and correct copy of Schedule 001 is attached hereto as Exhibit B.

20.

Equipment Schedule 002 was entered into between STEFL and DC Solar on November 3, 2017 ("Schedule 002"). Pursuant to Schedule 002, STEFL leased 200 MSGs to DC Solar with $4,500,000 paid upfront and subsequent monthly payments of $155,000 over a term of 120 months. A true and correct copy of Schedule 002 is attached hereto as Exhibit C.

21.

Paragraph 14 of the the Master Lease contains a default provision that defines an "Event of Default" as, among other things, failure by DC Solar to "make any payments of Rent (in good, collected and indefeasible funds) within five (5) days after the same shall have become due."

**The Sublease Between DC Solar and ISC**

22.

On September 27, 2017, shortly after STEFL and DC Solar had executed the Master Lease, DC Solar (or "Sublessor") and ISC (or "Sublessee") entered into the Mobile Solar Equipment Sublease (the "Sublease"), under which ISC agreed to sublease the 500 MSGs from DC Solar with $450,000 to be paid monthly over a term of 120 months. A true and correct copy of the Sublease is attached hereto as Exhibit D.

23.

The Sublease incorporates the Master Lease and attaches a copy thereto, and thus ISC was on notice of all of the provisions contained in the Master Lease.

24.

Paragraph 4 of the Sublease requires ISC to make payment of rent to DC Solar/Sublessor on a monthly basis and provides that "any rent payment not received by the fifth (5th) day of the month shall be considered late."

25.

Paragraph 13 of the Sublease defines an event of default under the Sublease as including ISC's "failure to make any payment when due, when such failure continues for ten (10) days after Sublessee receipt of written notice from Sublessor specifying the default."

26.

Paragraph 14 of the Sublease grants Sublessor, upon an event of default by ISC, the right to "declare each and every obligation of Sublessee to Sublessor under this Sublease immediately due and payable and recover the balance of rents and charges due under this Sublease."

27.

Paragraph 14 of the Sublease further grants Sublessor, upon an event of default by ISC, entitlement to "all collection costs, costs of repair, maintenance or rehabilitation of the [MSGs], and reasonable attorney's fees and out-of-pocket expenses."

28.

Paragraph 19 of the Sublease expressly designates STEFL as a third-party beneficiary to the Sublease "entitled to the right and benefits thereunder" and grants STEFL the right to "enforce the provisions hereof as if it were a party thereto."

29.

The Sublease contains a legend immediately prior to the signature blocks for the Sublease that states in bold that the Sublease is "NON-CANCELLABLE FOR THE TERM INDICATED ABOVE AND SUBLESSEE'S OBLIGATION TO PAY RENT AND ANY OTHER AMOUNTS OWING HEREUNDER IS ABSOLUTE AND UNCONDITIONAL IN ALL EVENTS."

30.

Finally, paragraph 20 of the the Sublease states that the "Sublease and the Master Lease constitute the entire contract between [DC Solar and ISC] with regard to the subject matter hereof, are the final expression of agreement with respect thereto and supersede all prior oral or written discussions or agreements. *There are no Sublease terms which are not contained herein or in the Master Lease.*" (emphasis added).

**STEFL's Consent to the Sublease and
Rights to Enforce ISC's Obligations to Pay Rent**

31.

STEFL entered into the Master Lease with the understanding that subleases would subsequently be executed.

32.

STEFL consented to the Sublease as a Permitted Sublease in reliance on the terms of the Sublease, including the 120-month term and the stream of revenue arising from ISC's use of the MSGs.  STEFL's financial analysis of the viability of the deal, in fact, was specifically premised on the representations and undertakings that ISC, a publicly traded company with a market capitalization of more than $1.5 billion at the time of the transaction, would be providing a regular stream of payments for its use of the MSGs under the terms of the Sublease.

33.

On September 27, 2017, DC Solar and STEFL entered into a Subleasing Consent and Amendment (the "Schedule 001 Consent") to the Sublease.  A true and correct copy of the Schedule 001 Consent is attached hereto as Exhibit E.

34.

Pursuant to the Schedule 001 Consent, DC Solar agreed to "assign its rights but not its obligations under any Sublease Agreement to STEFL hereunder."

35.

DC Solar further agreed in the Schedule 001 Consent that "[u]pon the occurrence of an Event of Default under the [Master] Lease, STEFL . . . may exercise all of the rights and remedies set forth in the [Master] Lease or any Sublease Agreement" and "shall have the right to notify [ISC] . . . to make payments directly to STEFL."

36.

On November 3, 2017, DC Solar and STEFL entered into a separate Subleasing Consent and Amendment (the "Schedule 002 Consent").  A true and correct copy of the Schedule 002 Consent is attached hereto as Exhibit F.

37.

As with the Schedule 001 Consent, DC Solar agreed to "assign its rights but not its obligations under any Sublease Agreement to STEFL hereunder" and "[u]pon the occurrence of an Event of Default under the Lease, STEFL . . . may exercise all of the rights and remedies set forth in the Lease or any Sublease Agreement" and "shall have the right to notify [ISC] . . . to make payments directly to STEFL."  The Schedule 001 Consent and the Schedule 002 Consent are referred to collectively herein as the "Consents."

38.

DC Solar granted STEFL a security interest in the Sublease through the Consents. Specifically, DC Solar agreed to "assign[] and grant[] to STEFL a continuing security interest in any and all Sublease Agreements and all proceeds thereof" and agreed to "irrevocably authorize[] STEFL to file UCC Statements and other filings with respect to the Collateral without [DC Solar's] authentication to the extent permitted by Applicable Law."

39.

STEFL filed a UCC Financing Statement to perfect its security interest in the Sublease and in "all rentals and other sums due, now or hereafter, under the Sublease, and

any other proceeds of insurance required under the Sublease, and all products and proceeds of the foregoing" on October 17, 2017.  A true and correct copy of the UCC Financing Statement is attached hereto as Exhibit G.

40.

Thus, under the Master Lease and Consents, STEFL effectively limited its dependence on DC Solar's performance under the Sublease to the delivery and acceptance of the MSGs by ISC.

**STEFL's Assumption of DC Solar's Rights Under the Sublease**

41.

DC Solar failed to make required rent payments to STEFL for payments due under the Master Lease in December 2018.

42.

DC Solar's failure to make such payments constituted an Event of Default under the Master Lease, thus authorizing STEFL, as assignee of DC Solar's rights in the Sublease and pursuant to the terms of the Consents, to exercise all of Sublessor's rights against Sublessee under the Sublease, including demanding payment of the rent payments owed under the Sublease.

43.

On January 15, 2019, STEFL notified ISC that an Event of Default in the Master Lease between STEFL and DC Solar had occurred and demanded that all rent payments under the Sublease be made directly to STEFL.  A true and correct copy of the January 15, 2019 letter is attached hereto as Exhibit H.

44.

Despite being placed on notice of STEFL's right to receive rent payments under the Sublease, ISC has failed and refused to make any payments to STEFL.

45.

On March 8, 2019, STEFL wrote another letter to ISC, notifying ISC that ISC had failed to make both the February and March 2019 rent payments due under the Sublease. The March 8, 2019 letter also alerted ISC that STEFL would exercise its remedies under the Sublease if ISC did not cure its late payments within 10 business days.

46.

A true and correct copy of the March 8, 2019 letter is attached hereto as Exhibit I.

47.

ISC failed to respond to STEFL's notice or cure its default under the Sublease.

48.

Under the terms of the Sublease, STEFL has the right to declare all amounts owed under the Sublease immediately due and payable as a result of ISC's default.

49.

STEFL declared all such amounts immediately due and payable, which total $46,093,072.50, through the "Amended Complaint for Declaratory Judgment, Breach of Contract and Possession of Personal Property" filed on April 9, 2019, in the case styled *SunTrust Equipment Finance & Leasing Corp. v. International Speedway Corporation,* Case No. 1:19-cv-01493 (N.D. Ga.).

**ISC's Secret Addendums with DC Solar**

50.

On September 27, 2017, the same day the Sublease was executed, ISC and DC Solar secretly entered into an Addendum to Mobile Solar Equipment Sublease ("Addendum 1"), an agreement that would radically change the nature of the Sublease. A true and correct copy of Addendum 1 is attached hereto as Exhibit J.

51.

STEFL was not aware of and did not consent to Addendum 1.

52.

ISC expressly represented to STEFL in a letter dated September 27, 2017, that the MSGs were being subleased to ISC "pursuant to the Sublease." ISC's letter to STEFL omitted the material fact that the Sublease had been purportedly amended that very day by Addendum 1. A true and correct copy of the September 27, 2017 letter is attached hereto as Exhibit K.

53.

Addendum 1 purported to condition ISC's obligations under the Sublease on the consummation of multiple sponsorship agreements between certain affiliates of ISC and DC Solar (the "Sponsorship Agreements"). Addendum 1 purportedly gave ISC the right to terminate the Sublease if any of the Sponsorship Agreements were not consummated by October 6, 2017.

54.

Addendum 1 also inserted a "cross-default" provision that purportedly allowed ISC to declare a default on any other agreements between ISC, or any of its affiliates, and DC Solar, including the Sponsorship Agreements.

55.

The Sponsorship Agreements required a DC Solar affiliate to make annual payments totaling $7.5 million at the beginning of each calendar year to ISC for the right to market itself at ISC's events.

56.

Under Addendum 1, at the end of a five-year term, coterminous with the initial term of the Sponsorship Agreements, ISC could then purportedly exercise a termination right and walk away from the Sublease.

57.

ISC and DC Solar entered into a second Addendum to Mobile Solar Equipment Sublease on March 6, 2018 ("Addendum 2"). A true and correct copy of Addendum 2 is attached hereto as Exhibit L.

58.

STEFL was not aware of and did not consent to either Addendum 1 or Addendum 2. ISC failed to disclose these Secret Addendums to SunTrust, and ISC never obtained consent from SunTrust to modify the Sublease pursuant to the Secret Addendums.

59.

The Secret Addendums turned the Sublease into a cash generation scheme for DC Solar and a financing vehicle for the Sponsorship Agreements for ISC, as ISC would not serve as the ultimate source of repayment for the Sublease as contemplated under the Master Lease and Sublease.

60.

Joel Chitwood, Executive Vice President and Chief Operating Officer of ISC, has stated in a Declaration filed in the United States Bankruptcy Court for the District of Nevada that DC Solar's entry into the Sponsorship Agreements with ISC was a "requirement and part of the bargain struck between the parties concerning the Sublease."

61.

Thus, ISC has admitted that there were Sublease terms that were not included in the Sublease as initially executed on September 27, 2017.

62.

As highlighted in pleadings filed in DC Solar's bankruptcy proceedings, ISC had a history of omitting the complete terms of its intended agreements with DC Solar to secure other sponsorship agreements. Prior to entering into the Sublease, ISC entered into three subleases with other third-parties for the use of MSGs, and each of those subleases also contain similar addendums with similar provisions to the Secret Addendums.

63.

While the terms of the Secret Addendums could have been easily incorporated into the form of the Permitted Sublease, they would not have been approved by STEFL, as the terms of the Secret Addendums radically altered the payments between the parties under the Sublease.  Specifically, by (a) adding a requirement that DC Solar enter into the Sponsorship Agreements, (b) permitting ISC to declare DC Solar in default under the Sublease if DC Solar failed to perform under the Sponsorship Agreements, and (c) changing the term of the Sublease to be conterminous with the term of the Sponsorship Agreements, ISC attempted to use the Secret Addendums to completely alter the underlying financial dynamics of the relationship without obtaining STEFL's consent.

64.

As approved by STEFL, ISC, which is a publicly traded company with a market capitalization of more than $1.5 billion at the time of the transaction, served as the ultimate source of repayment of the Master Lease through its monthly sublease payments and was the entity that provided financial stability to the Sale/Leaseback/Sublease.  As altered by the Secret Addendums, however, DC Solar's proceeds from the sale of the MSG's to STEFL became the source of repayment for the Sale/Leaseback/Sublease since the Secret Addendums required a DC Solar affiliate to pay $7.5 million for the Sponsorship Agreements to receive $5.4 million from the Sublease.  By entering into the Secret Addendums, ISC received $2.1 million to sublease the MSGs.

**DC Solar's Bankruptcy**

65.

On February 4, 2019, DC Solar and several of its affiliates filed for bankruptcy relief under Chapter 11 of the Title 11 of the United States Code.  The bankruptcy is being jointly administered by the U.S. Bankruptcy Court, District of Nevada, and is styled *In Re: Double Jump, Inc.,* Lead Case No. 3:19-BK-50102-BTB (Bankr. D. Nev.).

66.

On February 22, 2019, ISC filed a motion for relief from stay in the bankruptcy proceedings.  ISC sought relief from the stay so that it could exercise its remedies with respect to the Sponsorship Agreements and attempted to terminate those along with the Sublease.  (*See In Re: Double Jump, Inc.*, Lead Case No. 3:19-BK-50102-BTB (Bankr. D. Nev.) at Dkt. No. 174).

67.

On March 18, 2019, a special agent of the FBI named Christopher Phillips filed a Declaration in an in rem forfeiture federal lawsuit styled *United States of America v. Approximately $6,567,897.50 Seized From CTBC Bank, Account Number 3800191916*, Case No. 2:19-CV-00485 in the United States District Court for the Eastern District of California.

68.

In his declaration, Agent Phillips described in detail the results of an FBI investigation of the operations of companies widely understood to be DC Solar, DC Solar

Solutions, Inc., and affiliates as demonstrating "evidence of a Ponzi-type investment fraud scheme" (the "Ponzi Scheme").

69.

On March 22, 2019, the bankruptcy case was converted to a case under Chapter 7 and a trustee was appointed. (*See In Re: Double Jump, Inc.,* Lead Case No. 3:19-BK-50102-BTB (Bankr. D. Nev.) at Dkt. Nos. 438, 439, and 440).

70.

On May 21, 2019, the Sublease, the Master Lease, and all related agreements were rejected by the trustee pursuant to § 365 of the Bankruptcy Code. (*See In Re: Double Jump, Inc.,* Lead Case No. 3:19-BK-50102-BTB (Bankr. D. Nev.) at Dkt. No. 787). However, the Bankruptcy Court did not grant the relief sought under ISC's motion to lift the stay. Accordingly, neither the Sublease, the Master Lease, nor any other related agreements are part of the bankruptcy estate in DC Solar's bankruptcy proceedings and STEFL is not stayed from bringing this action in this Court.

## CLAIMS FOR RELIEF

### COUNT I

### (Breach of the Master Lease and Sublease)

71.

Plaintiff re-alleges and incorporates by reference all of the allegations contained in paragraphs 1–70, as if fully alleged and set forth herein.

72.

The Sublease, in the form approved by STEFL, is a valid and enforceable agreement.

73.

ISC is required by the terms of the Sublease to make rent payments and other payments on a monthly basis pursuant to the terms of and in the amounts described in the Sublease.

74.

Under the terms of the Sublease, DC Solar has the right to declare each and every obligation of ISC to be immediately due and payable upon an event of default, as defined in the Sublease.

75.

Through the Consents, DC Solar assigned all of its rights under the Sublease to STEFL upon the occurrence of an Event of Default under the Master Lease.

76.

DC Solar also granted STEFL the right to demand that ISC make payments directly to STEFL.

77.

STEFL is an express third-party beneficiary of the Sublease and is entitled to the benefits and rights thereunder and to enforce its provisions.

78.

An Event of Default occurred under the Master Lease when DC Solar failed to pay the amounts due under the Master Lease in December 2018.

79.

STEFL exercised its right to take an assignment of all of DC Solar's rights under the Sublease and demanded that ISC make the payments due under the Sublease to STEFL by written notice on January 15, 2019.

80.

ISC refused to make payment, in breach of the Sublease, within ten (10) day of the January 15, 2019 notice, and at times thereafter.

81.

ISC's failure to make payments to STEFL constitutes an Event of Default under the Sublease.

82.

STEFL provided written notice to ISC on March 8, 2019 of its default under the Sublease.

83.

STEFL has the right to declare each and every obligation of ISC due and payable and to recover the balance of rents and charges due under the Sublease, as well as reasonable attorney's fees, late fees, and prejudgment interest.

84.

STEFL declared such amounts due and payable, in the total amount of $46,093,072.50, on April 9, 2019.

85.

As of August 20, 2019, ISC owes STEFL $46,093,072.50 in accelerated rent under the Sublease, as well as prejudgment interest.

86.

Under Paragraph 14 of the Sublease, STEFL has the right to recover its reasonable attorney's fees and out-of-pocket expenses incurred in the filing and prosecution of this Action.  STEFL has retained undersigned counsel to file and prosecute this Action.

87.

ISC's failure to pay amounts due under the Sublease has forced STEFL to initiate litigation to recover such amounts.  ISC is liable to STEFL for all reasonable attorney's fees and out-of-pocket expenses, in an amount to be determined at trial.

## COUNT II

### (Declaratory Relief)

88.

Plaintiff re-alleges and incorporates by reference all of the allegations contained in paragraphs 1–70, as if fully alleged and set forth herein.

89.

This count is brought pursuant to 28 U.S.C. § 2201.

90.

This Court is authorized pursuant to 28 U.S.C. § 2201, "[i]n a case of actual controversy within its jurisdiction, … [to] declare the rights and other legal relations of any interested party seeking such declaration."

91.

An actual controversy exists between STEFL and ISC regarding whether the Secret Addendums are enforceable by ISC.

92.

DC Solar, in its role as lessee to STEFL under the Master Lease, only had the right to permit subleasing or use of the MSGs pursuant to the terms of a Permitted Sublease.

93.

The Secret Addendums are not part of the "Permitted Subleases" because STEFL never approved them. DC Solar did not have capacity or authority to lease the MSGs under the terms of the Secret Addendums. Thus, the Secret Addendums are unenforceable.

94.

The Secret Addendums violate Paragraph 3(n) of the Master Lease, which provides that "no information contained in any Lease Document," which term is defined to include the Sublease, contains any untrue statement of material fact or omits a material fact necessary to make the statements contained . . . therein not misleading in light of the

circumstances under which they were made." As such, the Secret Addendums are unenforceable.

95.

The Secret Addendums violate Paragraph 20 of the Sublease, which provides that "there are no Sublease terms which are not contained herein…." As such, the Secret Addendums are unenforceable.

96.

Given the effect of the Secret Addendums on the Sublease, enforcement of the Secret Addendums as against STEFL would be unconscionable and contrary to public policy because ISC, despite having notice of STEFL's requirement that any sublease by DC Solar under the Master Lease be a Permitted Sublease and STEFL's status as an express third-party beneficiary of the Sublease, knew or had reason to know that the Secret Addendums had not been disclosed to or approved by STEFL.

97.

Accordingly, STEFL seeks a judicial declaration, pursuant to 28 U.S.C. § 2201, that the Secret Addendums are unenforceable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court:

1. Award STEFL damages for breach of the Master Lease and the Sublease in an amount of $46,093,072.50;

2. Enter a declaratory judgment declaring the Secret Addendums unenforceable;

3.  Award STEFL its reasonable attorney's fees and costs incurred in this action pursuant to the terms of the Sublease;

4.  Award STEFL pre-judgment and post-judgment interest to the extent permitted by law, and;

5.  Order other such other and further relief as the Court deems just and proper.

This 22nd day of August, 2019.

                                        *s/ Suzanne Barto Hill*
                                        DANIEL J. GERBER, ESQUIRE
                                        Florida Bar No. 0764957
                                        SUZANNE BARTO HILL, ESQUIRE
                                        Florida Bar No. 0846694
                                        RUMBERGER, KIRK & CALDWELL, P.A.
                                        300 South Orange Avenue, Suite 1400 (32801)
                                        Post Office Box 1873
                                        Orlando, Florida  32802-1873
                                        Telephone:  (407) 872-7300
                                        Telecopier:  (407) 841-2133
                                        E-mail:   dgerber@rumberger.com
                                                  shill@rumberger.com

                                        Lawrence A. Slovensky
                                        (*pro hac vice* application filed herewith)
                                        Georgia Bar No. 653005
                                        Jeffrey R. Dutson
                                        (*pro hac vice* application filed herewith)
                                        Georgia Bar No. 637106
                                        Aaron Parks
                                        (*pro hac vice* application filed herewith)
                                        Georgia Bar No. 224347
                                        KING & SPALDING LLP
                                        1180 Peachtree Street, N.E.
                                        Atlanta, Georgia 30309
                                        (404) 572-4600
                                        Email:  lslovensky@kslaw.com
                                                jdutson@kslaw.com
                                                aparks@kslaw.com

                                        *Attorneys for Plaintiff, SunTrust Equipment*
                                        *Finance & Leasing Corporation*