# Exhibit A

# MASTER EQUIPMENT LEASE AGREEMENT NO. 10194

**THIS MASTER EQUIPMENT LEASE AGREEMENT NO. 10194** dated as of September 25, 2017 (this "**Master Lease**"), is made by and between SUNTRUST EQUIPMENT FINANCE & LEASING CORP. (together with its successors and assigns, "**Lessor**") and DC SOLAR DISTRIBUTION, INC. (together with its successors and permitted assigns, "**Lessee**").

Lessee desires to lease from Lessor the Equipment subject to each equipment schedule executed pursuant to this Master Lease (each, a "**Schedule**"). Each capitalized term used, but not defined, in this Master Lease shall have the meaning given it in Appendix A attached hereto. For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lessor and Lessee hereby agree as follows:

**1. AGREEMENT TO LEASE; TERM**. By entering into a Schedule, Lessee leases from Lessor and Lessor leases to Lessee the Equipment described therein subject to and upon the terms and conditions in this Master Lease, the Schedule and all of the other documents and agreements executed in connection herewith and therewith, including, without limitation, documents executed by any Guarantor (together with this Master Lease and the Schedules, collectively, the "**Lease Documents**"). Each Schedule shall constitute a separate and enforceable instrument of lease incorporating the terms of this Master Lease and each Lease Document executed in connection therewith. If any term of a Schedule conflicts or is inconsistent with any term of this Master Lease, the terms of such Schedule shall govern. This Master Lease is effective as of the date first above written. The term of lease with respect to the Equipment leased under a Schedule shall commence on the date of execution of the Schedule and continue for the term set forth therein.

**2. RENT.** Lessee shall pay to Lessor the following amounts as and when specified in the applicable Schedule (collectively, "**Rent**"): (1) the Interim Rent, if any, without demand; (2) the monthly installments of basic rent ("**Basic Rent**" and each payment, a "**Basic Rent Payment**") during the Base Term, without demand; (3) the monthly installments of rent during any renewal term, without demand; and (4) upon demand, all of the other amounts payable in accordance with this Master Lease, such Schedule or the Lease Documents executed in connection therewith (collectively, "**Other Payments**"). Lessee will make all payments of Rent to Lessor either in cash or other immediately available funds at the following address or such other address as Lessor may request from time to time: P.O. Box 79194, Baltimore, MD 21279-0194, or electronically pursuant to Lessor's written instructions for receipt of the same. Time is of the essence. If any payment of Rent becomes due and payable on a day other than a Business Day, such payment shall be extended to the next succeeding Business Day, unless such next succeeding Business Day would fall in the next calendar month, in which case such payment of Rent shall be due and payable on the immediately preceding Business Day. If Lessee fails to pay any Rent on its due date, Lessee shall immediately pay to Lessor a late charge equal to five percent (5%) of the delinquent amount, but in no event shall such late charge exceed the maximum rate allowed by Applicable Law. If any payment of Rent is returned, Lessee shall make the payment by mail of a certified check or wire transfer of immediately available funds, in each case, in an amount equal to the sum of the payment of Rent so returned plus a return fee per rejected or returned payment equal to $50.00. UPON LESSEE'S EXECUTION OF A SCHEDULE, SUCH SCHEDULE SHALL CONSITUTE A NON-CANCELABLE NET LEASE. LESSEE'S OBLIGATION TO PAY RENT AND TO PERFORM ITS OBLIGATIONS THEREUNDER SHALL BE ABSOLUTE AND UNCONDITIONAL UNDER ANY AND ALL CIRCUMSTANCES WHATSOEVER AND SHALL NOT BE SUBJECT TO ANY RIGHT OF SETOFF, COUNTERCLAIM, RECOUPMENT, DEDUCTION, DEFENSE OR OTHER RIGHT WHICH LESSEE MAY HAVE AGAINST LESSOR, SUPPLIER OR ANY THIRD PARTY FOR ANY REASON WHATSOEVER.

**3. REPRESENTATIONS, WARRANTIES AND AGREEMENTS OF LESSEE**. Lessee represents and warrants to Lessor as of the effective date of this Master Lease and each Schedule and agrees that: (a) Lessee has the form of organization set forth on the signature page hereto, is and will remain duly organized, validly existing and in good standing under the laws of the jurisdiction of its organization set forth on the signature page hereto, is and will remain duly qualified to do business wherever necessary to perform its obligations under the Lease Documents (including each jurisdiction in which the Equipment is or will be located), and its legal name, federal employer identification number and organizational number are set forth on the signature page hereto; (b) within the previous six (6) years, Lessee has not changed its name, done business under any other name, or merged or been the surviving entity of any merger, except as disclosed to Lessor in writing; (c) Lessee's chief executive office and principal place of business are located at the address set forth on the signature page hereto and such address is the place where its records concerning the Equipment are kept; (d) Lessee has the power and authority to own or hold under lease its properties and to enter into and perform its obligations under the Lease Documents; (e) the execution, delivery and performance of the Lease Documents and the consummation of the transactions by Lessee contemplated hereby and thereby (i) have been duly authorized by all necessary action consistent with Lessee's form of organization, (ii) do not require the consent or approval of any Person (except such as have been duly obtained), (iii) do not and will not contravene, constitute a default under, or result in the creation of a Lien upon the property of Lessee pursuant to, any Applicable Law, Lessee's organizational documents, or any agreement, indenture, or other instrument to which Lessee is a party or by which it or its property is bound, and (iv) when entered into, will constitute the legal, valid and binding obligations of Lessee enforceable against Lessee in accordance with the terms hereof and thereof, except as limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws or equitable principles relating to or affecting the enforcement of creditors' rights generally and by Applicable Law which may affect the remedies provided herein and therein; (f) there are no pending actions or proceedings to which Lessee is a party, and there are no other pending or threatened actions or proceedings of which Lessee has knowledge, before any arbitrator or Governmental Authority, which, either individually or in the aggregate, would have a Material Adverse Effect; (g) Lessee is not in default under any financial or other material agreement that, either individually or in the aggregate, would have a Material Adverse Effect; (h) Lessee is not in violation of any Applicable Law to which it is subject (including, without limitation, applicable environmental, health and safety laws and regulations) and the violation of which would have a Material Adverse Effect, and Lessee has obtained any and all licenses, permits, franchises or other authorizations from any Governmental Authority necessary for the ownership of its properties

and the conduct of its business; (i) Lessee has filed or has caused to have been filed all federal, state and local tax returns which, to the knowledge of Lessee, are required to be filed, and has paid or caused to have been paid all Impositions as shown on such returns or on any assessment received by it, to the extent that such have become due, unless, and only to the extent, such Impositions are currently being contested in good faith and by appropriate proceedings by Lessee and adequate reserves therefor have been established as required under GAAP, and to the extent Lessee believes it advisable to do so, Lessee has set up reserves which are believed by Lessee to be adequate for the payment of additional Impositions for years which have not been audited by the respective tax authorities; (j) all of the Equipment is and will continue to be located solely in the jurisdiction(s) specified in the related Schedule; (k) under the Applicable Law of each such jurisdiction, such Equipment consists (and shall continue to consist) solely of personal property and not fixtures; (l) the Equipment is removable from and is not essential to the premises at which it is located; (m) Lessee's financial statements (copies of which have been furnished to Lessor) have been prepared in accordance with GAAP, and fairly present Lessee's financial condition and the results of Lessee's operations as of the date of and for the period covered by such statements, and since the date of such statements no event or events have occurred which, either individually or in the aggregate, could have a Material Adverse Effect; and (n) no information contained in any Lease Document, financial statement, or any written statement furnished by or on behalf of Lessee under any Lease Document, or to induce Lessor to execute the Lease Documents, contains any untrue statement of material fact or omits a material fact necessary to make the statements contained herein or therein not misleading in light of the circumstances under which they were made; and (o) the Supplier is not an affiliate or agent of Lessor.

4. **COVENANTS AND FURTHER ASSURANCES**.

(a) Financial Reporting. Lessee shall provide to Lessor: (a) within one hundred fifty (150) days of the close of each fiscal year of Lessee, Lessee's balance sheet, consolidated statements of income, statements of cash flows, statutory statements (to the extent applicable) and statements of equity together with all notes to consolidated financial statements, prepared in accordance with GAAP, certified by a recognized firm of certified public accountants; (b) within sixty (60) days of the close of each fiscal quarter of Lessee, Lessee's quarterly financial report certified by the chief financial officer of Lessee. Upon the written request of Lessor, Lessee will deliver to Lessor any additional information reasonably requested by Lessor relating to the Collateral and/or the general financial condition of Lessee.

(b) Filings. Lessee shall, at its sole expense, promptly and duly authenticate, execute and deliver to Lessor such further documents, instruments, assurances and other records, and take such further actions as Lessor may from time to time reasonably request in order to effectively carry out the intent and purpose of the Lease Documents and to establish and protect the rights and remedies created or intended to be created in favor of Lessor hereunder and thereunder. Lessee irrevocably authorizes Lessor to file UCC financing statements ("**UCC Statements**") and other filings with respect to the Equipment or Collateral without Lessee's authentication to the extent permitted by Applicable Law. Lessee agrees not to file any corrective or termination statements or partial releases with respect to any UCC Statements or other filings filed by Lessor pursuant to the Lease Documents.

(c) Notice of Changes. Lessee shall provide written notice to Lessor: (1) thirty (30) days prior to any contemplated change in Lessee's name, address of its chief executive office or principal place of business or jurisdiction or form of organization; (2) promptly upon the occurrence of any Event of Default or event which, with the lapse of time or the giving of notice, or both, would constitute an Event of Default (each, a "**Default**"); (3) promptly upon Lessee becoming aware of any alleged violation of Applicable Law relating to the Equipment or this Master Lease; (4) upon the commencement of proceedings under the federal bankruptcy laws or other insolvency laws (as now or hereafter in effect) involving Lessee as a debtor; (5) promptly upon Lessee's delivery or receipt, a copy of any notice of default or other material notice under a Permitted Sublease by Lessee to a Permitted Sublessee or by a Permitted Sublessee to Lessee.

(d) Liens; Waivers. Lessee shall keep the Equipment free from any and all Liens other than Permitted Liens. Lessee shall notify Lessor immediately upon receipt of notice of any Lien or attachment or other judicial proceeding affecting any item of Equipment. Lessee shall obtain, at its sole expense, from each Person having an interest in or Lien on the Equipment Location, waivers of any Lien or interest such Person might have or hereafter obtain or claim with respect to the Equipment.

(e) Compliance with Laws. Lessee shall comply with all Applicable Law to which Lessee may be subject and a violation of which may have a Material Adverse Effect, including, without limitation, all applicable Bank Secrecy Act ("**BSA**") laws, regulations and government guidance on BSA compliance and on the prevention and detection of money laundering violations. Without limiting the foregoing sentence, Lessee covenants that none of the proceeds funded pursuant to any Lease Document will be used directly or indirectly: (a) to fund or finance any operations, investments or activities in or make any payments to a (i) Person that is, or is owned or controlled by Persons that are, the subject of any Sanctions (each, a "**Sanctioned Person**") or (ii) country or territory that is the subject of Sanctions or is owned or controlled by one or more Sanctioned Person (each, a "**Sanctioned Country**"), or in any other manner that would result in a violation of any Sanctions by any Person, or (b) in furtherance of an offer, payment, promise to pay, or authorization of the payment or giving of money, or anything else of value, to any Person in violation of any laws, rules or regulations of any jurisdiction concerning or relating to bribery or corruption. Lessee further represents, warrants and covenants that while any obligations remain outstanding under any Lease Document, Lessee, and each subsidiary or affiliate of Lessee, and their respective directors, officers, employees, or agents will not (x) be or become a Sanctioned Person, (y) allow any of their assets to be located in a Sanctioned Country, or (z) derive any of their operating income from investments in, or transactions with, one or more Sanctioned Person or Sanctioned Country.

5. **CONDITIONS PRECEDENT**. This Master Lease is not a commitment by Lessor or Lessee to enter into a Schedule or by Lessor to provide any financial accommodations to Lessee. Notwithstanding anything to the contrary contained in the Lease Documents, Lessor's agreement to enter into a Schedule and to purchase and then lease any item of the Equipment under this Master Lease is conditioned upon Lessor's determination in its sole discretion that all of the following, together with all additional conditions precedent set forth in the related Schedule, if any, have been satisfied: (a) Lessor having received the following, in form and substance satisfactory to Lessor in its sole discretion: (i) evidence as to due compliance with the insurance provisions of Section 10; (ii) a duly executed incumbency certificate and duly certified copies of the current organizational documents of Lessee and each

Guarantor that is an entity (if any); (iii) certificates of good standing for Lessee and each Guarantor that is an entity (if any) from their respective state of organization and the state where their respective chief executive office and principal place of business is located; (iv) the only manually executed original of the Schedule and counterpart originals of all other Lease Documents (including, without limitation, each Guaranty); (v) a duly executed pay proceeds letter in the amount of the related Schedule, and, if required by Lessor, an appraisal of the related Equipment by an appraiser acceptable to Lessor; (vi) the Supply Contract; (vii) such UCC Statements, filings, other documents, agreements, instruments, certificates, opinions, and assurances as Lessor may reasonably require; (viii) as applicable, financing statements authorized by any Permitted Sublessee, as debtor, and naming Lessee, as secured party, and Lessor, as assignee; and (ix) if applicable, the original certificate of title or manufacturer's certificate of origin and title application if any of the Collateral is subject to certificate of title laws and such other affidavits, notices and similar instruments necessary or appropriate to perfect and maintain Lessor's first priority perfected security interest in the Equipment, within such time as Lessor may require; (b) on the effective date of the Schedule: (i) all representations and warranties provided by Lessee in favor of Lessor in any of the Lease Documents shall be true and correct; (ii) no Default or Event of Default shall then be continuing under the Schedule or any other Lease Document; (iii) the Equipment shall have been delivered to and accepted by Lessee, as evidenced by the Lessee's execution of the Schedule, and shall be in the condition and repair required hereby; and (iv) no event which may have a Material Adverse Effect shall have occurred; (c) Lessor shall have received payment in full from Lessee of the fees reflected on the related Schedule, if any (the "**Documentation Fees**"), and any other fees due hereunder at the closing of the related Schedule; and (d) Lessee shall have taken, or caused to be taken, all such other actions as Lessor may reasonably require. Lessee acknowledges and agrees that (i) Lessor's entering into any Schedule or purchasing any item of Equipment prior to the satisfaction of all of such conditions precedent shall not constitute a waiver by Lessor of any such condition precedent, and (ii) Lessee shall be irrevocably obligated to satisfy all of such conditions precedent prior to the effective date of the Schedule.

6. **ACCEPTANCE**. Lessee ordered or shall order the Equipment from the Supplier chosen by Lessee. Lessee, at its sole expense, shall be responsible for the delivery, licensing, titling and registration of each item of Equipment in compliance with the laws of any jurisdiction where it may be operated, and installation of the Equipment. Lessee shall inspect the Equipment immediately upon receipt thereof. If the Equipment conforms to the condition required by the Supply Contract, Lessee shall accept the Equipment and execute a Schedule describing such Equipment, which shall evidence Lessee's unconditional and irrevocable acceptance of such Equipment. However, <u>if Lessee fails to accept delivery of the Equipment, or accepts such Equipment but fails to satisfy any or all of the other conditions precedent set forth herein or in the related Schedule</u>, then (a) Lessor shall have no obligation to purchase or lease such Equipment and, (b) upon Lessor's demand, Lessee shall (1) fully assume all of Lessor's obligations (if any) as purchaser of the Equipment and cause Lessor to be released from any liability relating thereto; (2) immediately remit to Lessor an amount sufficient to reimburse Lessor for all advance payments, costs, taxes or other charges paid or incurred with respect to the Equipment, together with interest at the Default Rate accruing from the date or dates such amounts were paid by Lessor until indefeasibly repaid by Lessee in full; and (3) take all such other actions as may be reasonably requested by Lessor to accomplish such assumption, release and payment. Lessee shall not re-title or register the Equipment in a state other than that where such items of Equipment were initially titled or registered without the prior written consent of Lessor.

7. **USE AND MAINTENANCE; MODIFICATIONS; REPLACEMENT PARTS; INSPECTION**.

(a) <u>Use; Equipment Location</u>. Lessee shall use the Equipment: (i) except upon the consent of the Lessor which consent shall not be unreasonably withheld or delayed, solely in the continental United States; (ii) in the conduct of Lessee's business; (iii) solely for the purpose for which it was designed; (iv) in a careful and proper manner so as to subject it only to ordinary wear and tear; and (v) in compliance with all Applicable Law. Lessee shall not permanently discontinue use of the Equipment without Lessor's prior written consent. Upon delivery and acceptance of the Equipment, the Equipment (or if any item of Equipment is a motor vehicle, such item of Equipment's principal garage) shall be located at the Equipment Location. Lessee shall not change the Equipment Location without at least thirty (30) days' prior written notice to Lessor.

(b) <u>Maintenance and Repair; No Attachment</u>. Lessee shall maintain, service and repair the Equipment: (i) in good repair and operating condition and in at least the same condition as when delivered to Lessee under the related Schedule, ordinary wear and tear excepted; and (ii) in compliance with (A) all Applicable Law, (B) all applicable requirements of the Supplier and all maintenance and operating manuals or service agreements, whenever furnished or entered into, including any subsequent amendments or replacements thereof, issued by the Supplier, (C) the terms of any insurance policies relating to the Equipment, (D) the Supply Contract, so as to preserve all of Lessee's rights and all of Lessor's rights (if any) thereunder, including all rights to any warranties, indemnities or other rights or remedies, and (E) to no lesser standard than comparable equipment owned or leased by Lessee, without discrimination as to equipment owned or leased. Lessee shall permit the Equipment to be operated, maintained, serviced and repaired by competent and duly qualified personnel only. Lessee shall not attach or incorporate the Equipment to or in any other property in such a manner that the Equipment may be deemed to have become an accession to or a part of such other property. Lessee shall affix to the Equipment and maintain such labels, plates, plaques, lettering or other indication of Lessor's interest in the Equipment as Lessor may request. **In addition to the foregoing, Lessee will comply with the provisions of the Maintenance Addendum referenced in the applicable Schedule, if any.**

(c) <u>Replacement of Parts</u>. Lessee, at its sole expense and within a reasonable period of time, shall replace any part of the Equipment that becomes unfit or unavailable for use from any cause with a replacement part of the same manufacture, value, remaining useful life and utility as the replaced part immediately preceding the replacement (assuming that such replaced part was in the condition required by the related Schedule and other Lease Documents). Such replacement part shall be free and clear of all Liens and immediately, and without further act, shall be deemed to constitute "Equipment" and be fully subject to the related Schedule. Unless replaced in accordance with this Section 7(c), Lessee shall not remove any part originally installed with the Equipment or from time to time attached to the Equipment if such part is essential to the operation of the Equipment, is required by any other provision of the Lease Documents, or cannot be detached from the Equipment without materially interfering with the operation of the Equipment or adversely affecting the value, utility and remaining useful life which the Equipment would have had with such part. All

replacement parts for the Equipment must be purchased from sources approved by the original manufacturer. Copies of all purchase orders relating to such replacement parts shall be maintained in Lessee's file relating to the Equipment.

(d) Modifications and Upgrades.

(1) Except as expressly permitted in this Section 7(d), Lessee shall make no addition, upgrade, modification, alteration, improvement, or attachment to the Equipment without Lessor's prior written consent. Lessee, at its sole expense, shall make such modifications or alterations to the Equipment as may be required from time to time to meet the requirements of Applicable Law or the Supplier (each, a "**Required Modification**"). All Required Modifications immediately, and without further act, shall be deemed to constitute "Equipment," be fully subject to the related Schedule as if originally leased thereunder, and be free and clear of all Liens.

(2) Lessee, at its sole expense, may from time to time add to or install on the Equipment any upgrade or attachment that does not constitute a Required Modification (each, an "**Upgrade**"), so long as any such Upgrade (A) is readily removable without causing damage to the Equipment, (B) does not materially adversely affect the value, residual value, productive capacity, utility or remaining useful life of the Equipment, and (C) does not cause such Equipment to become "limited use property" within the meaning of the Code as of the date of installation of such Upgrade. Any such Upgrade shall remain Lessee's property. Upon the expiration or earlier termination or cancellation of the related Schedule and provided that no Event of Default has occurred and is continuing, Lessee may, and at Lessor's request shall, remove each Upgrade. Upon the removal of any Upgrade, Lessee shall restore the Equipment to the condition required hereunder.

(3) Lessee shall not make any material structural or other changes or modify components of any item of Equipment ( each a "**Modification**") without Lessor's prior written consent, not to be unreasonably withheld. Title to each Modification shall vest as follows: (i) in the case of each Modification which cannot be readily removed from the Equipment without causing material diminishment to the value, utility or remaining useful life of the Equipment (a "**Nonseverable Modification**"), whether or not the Lessor shall have provided or arranged financing (in whole or in part) of the cost of such Modification, the Lessor shall, without further act and effective on the date such Modification shall have been incorporated into such Equipment, acquire title to such **Nonseverable Modification**; and (ii)in the case of each Modification which can be readily removed from the Equipment without causing material diminishment to the value, utility or remaining useful life of the Equipment (a "**Severable Modification**") that is not required by applicable law or required by any governmental agency, the Lessee shall retain title to such Modification.

(e) Reports and Inspection. Lessee shall maintain Records with respect to the Equipment in accordance with Applicable Law. Upon forty-eight (48) hours' notice, Lessee shall, subject to the rights of any approved sub-lessee, afford Lessor and/or Lessor's designated representatives access to the premises where the Equipment is located for the purpose of inspecting such Equipment and all applicable Records relating thereto during normal business hours.

8. **DISCLAIMER OF WARRANTIES; QUIET ENJOYMENT. THE EQUIPMENT IS LEASED HEREUNDER "AS IS, WHERE IS." LESSOR SHALL NOT BE DEEMED TO HAVE MADE AND HEREBY DISCLAIMS LIABILITY FOR, AND LESSEE HEREBY WAIVES ALL RIGHTS AGAINST LESSOR RELATING TO, ANY WARRANTY OR REPRESENTATION, EXPRESS OR IMPLIED, ARISING BY APPLICABLE LAW OR OTHERWISE, AS TO THE EQUIPMENT OR ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE FITNESS FOR ANY PARTICULAR PURPOSE, QUALITY, DESIGN, CONDITION, CAPACITY, SUITABILITY, MERCHANTABILITY OR PERFORMANCE OF THE EQUIPMENT OR OF THE MATERIAL OR WORKMANSHIP THEREOF, COURSE OF DEALING, USAGE OR TRADE, COMPLIANCE WITH APPLICABLE LAW, TITLE OR FREEDOM FROM LIENS, TRADEMARK, COPYRIGHT OR PATENT INFRINGEMENT, AND LATENT DEFECTS (WHETHER OR NOT DISCOVERABLE), OR ANY INTERFERENCE OR INFRINGEMENT (EXCEPT AS SET FORTH BELOW IN THIS SECTION 8). LESSEE SHALL BE RESPONSIBLE FOR ALL SUCH RISKS AND ACKNOWLEDGES THAT LESSOR'S AGREEMENT TO ENTER INTO THIS MASTER LEASE, ANY SCHEDULE AND THE LEASE DOCUMENTS IS IN RELIANCE UPON THE FREEDOM FROM LIABILITY FOR SUCH RISKS. LESSEE HAS MADE THE SELECTION OF THE EQUIPMENT FROM THE SUPPLIER BASED ON LESSEE'S OWN JUDGMENT AND EXPRESSLY DISCLAIMS ANY RELIANCE UPON ANY STATEMENTS OR REPRESENTATIONS MADE BY LESSOR. LESSOR IS NOT RESPONSIBLE FOR ANY REPAIRS, SERVICE, MAINTENANCE OR DEFECT IN THE EQUIPMENT OR THE OPERATION THEREOF. IN NO EVENT SHALL LESSOR BE LIABLE FOR ANY INDIRECT, INCIDENTAL SPECIAL OR CONSEQUENTIAL DAMAGES (WHETHER UNDER THE UCC OR OTHERWISE).** So long as no Event of Default has occurred, Lessee may exercise Lessor's rights, if any, under any warranty with respect to the Equipment. Lessee's exercise of such rights shall be at its sole risk, shall not result in any prejudice to Lessor, and may be exercised only during the term of the related Schedule. Lessee shall not attempt to enforce any such warranty by legal proceeding without Lessor's prior written approval. Lessor warrants that during the term of each Schedule and so long as no Event of Default has occurred, Lessor or anyone rightfully claiming an interest through Lessor shall not interfere with Lessee's possession and use of the Equipment leased thereunder. The preceding warranty is in lieu of all other warranties by Lessor, whether written, oral or implied, with respect to this Master Lease, any other Lease Document or the Equipment.

9. **GENERAL TAX INDEMNITY**. Lessee shall pay directly, and shall indemnify, defend, and hold each Indemnitee harmless on an after-tax basis from and against all Impositions with respect to, or in connection with (a) this Master Lease, any other Lease Document or any of the transactions contemplated hereby and thereby, (b) the Equipment, and (c) the Rent, receipts or earnings arising from the Lease Documents. If Lessee fails to pay any Impositions when due, Lessor may, at its option, make such payment, in which event the amount so paid, plus interest thereon at the Default Rate, shall be paid by Lessee immediately upon demand.

10. **INSURANCE**. Upon acceptance of the Equipment under a Schedule and until Lessee has satisfied all obligations under such Schedule and the other Lease Documents (to the extent related thereto), Lessee, at its sole expense, shall maintain, or cause to be maintained, insurance coverage with respect to the Equipment insuring against, among other things: (a) all risks of physical loss or damage to the Equipment, including loss or damage due to fire and all those risks normally included in extended coverage, malicious

mischief and vandalism (and if any item of Equipment is a motor vehicle, comprehensive and collision), for an amount not less than the greater of the then Stipulated Loss Value or the full replacement value of the Equipment; and (b) commercial general liability insurance (and if any item of Equipment is a motor vehicle, automobile liability insurance) for personal and bodily injury and property damage arising out of or in connection with the use, possession, or ownership of the Equipment with a combined single limit per occurrence of not less than the amount specified in the related Schedule. All insurance policies (including all endorsements required by Lessor) providing the insurance required hereunder shall: (a) be in form and amount reasonably satisfactory to Lessor and reflect such coverages as Lessor may request from time to time; (b) be written by insurers of recognized reputation and responsibility satisfactory to Lessor in its sole discretion; (c) be endorsed to (i) name Lessor as an additional insured for liability coverage and sole lender loss payee for physical damage coverage (but without responsibility for premiums), (ii) provide that any amount payable under the required casualty coverage shall be paid directly to Lessor as sole lender loss payee, (iii) provide for thirty (30) days' written notice by such insurer of cancellation, material change, or non-renewal, (iv) include a severability of interest clause providing that such policy shall operate in the same manner as if there were a separate policy covering each insured, (v) waive any right of set-off against Lessee or Lessor and any rights of subrogation against Lessor, (vi) provide that with respect to the interests of Lessor in such policies, the insurance shall not be invalidated by any action or inaction of Lessee or any other Person operating or in possession of the Equipment regardless of any breach or violation of any warranties, declarations or conditions contained in such policies by or binding upon Lessee or any other Person operating or in possession of the Equipment, and (vii) be primary with respect to any insurance maintained by Lessor, not subject to any co-insurance clause and without right of contribution from any other insurance; (d) reflect that all insurance proceeds payable thereunder be payable in U.S. Dollars; and (e) have a deductible, if applicable, in an aggregate amount not greater than the amount set forth in the related Schedule. Lessee shall provide to Lessor evidence satisfactory to Lessor of renewal or replacement coverage not less than thirty (30) days prior to the scheduled expiration or lapse of such insurance coverage. All insurance proceeds following a Casualty Event shall be paid to Lessor and applied as set forth in Section 11.

**11. LOSS AND DAMAGE**.

(a) <u>Casualty Event</u>. Upon acceptance of the Equipment under a Schedule and until Lessee has satisfied all obligations under such Schedule and the other Lease Documents (to the extent related thereto), Lessee hereby assumes all responsibility for, shall bear the risk of, and shall defend, indemnify and hold Lessor harmless from and against, all Casualty Events. No Casualty Event shall relieve Lessee from any obligations under any Schedule or other Lease Document. Lessee shall promptly notify Lessor in writing of any Casualty Event, which notice must include any damage reports provided to any Governmental Authority, the insurer or the Supplier, and any documents pertaining to the repair of such damage. If the Casualty Event is not a Total Loss, Lessee shall promptly repair such damage so as to cause the Equipment to be in the condition and repair required by the related Schedule and other Lease Documents. If a Total Loss occurs with respect to any item of the Equipment (the "**Lost Equipment**"), then Lessee shall at its option, and with the Lessor's consent which shall not be unreasonably withheld or delayed, either: (i) promptly replace such item of Lost Equipment with an item of Equipment that (A) is free and clear of all Liens, (B) is of a similar make, model and age and has a value, utility and remaining useful life at least equal to that of the item of Lost Equipment; and (C) is otherwise in conformance with the provisions of the related Schedule and other Lease Documents; or (ii) on the next Basic Rent Payment Date following such Total Loss (a "**Loss Payment Date**"), Lessee shall pay to Lessor any unpaid Rent due on or prior to such Loss Payment Date plus the portion of the Stipulated Loss Value allocable to the Lost Equipment (as reasonably determined by Lessor). Upon making such payment, (x) the remaining Basic Rent Payments shall be proportionally reduced by the amount allocable to the Lost Equipment (as reasonably determined by Lessor) but Lessee shall remain liable for any Other Payments with respect to the Lost Equipment, (y) Lessor shall convey to Lessee all of Lessor's right, title and interest in the Lost Equipment, "AS IS, WHERE IS," but subject to the requirements of any third party insurance carrier in order to settle an insurance claim, and (z) UPON WRITTEN REQUEST FROM LESSEE AND AT LESSEE'S COST, LESSOR WILL PROVIDE LESSEE WITH THE APPLICABLE UCC-3 TERMINATION STATEMENT FOR SAID EQUIPMENT. Lessor shall be under no duty to Lessee to pursue any claim against any Person in connection with a Casualty Event.

(b) <u>Application of Proceeds</u>. Lessor shall be entitled to receive all payments payable by an insurer or Governmental Authority with respect a Casualty Event. If Lessor receives an indefeasible and unconditional payment of insurance proceeds under an insurance policy required pursuant to the Lease Documents in connection with a Casualty Event, so long as Lessee has complied with this Section 11 and a payment Event of Default is not then continuing, Lessor shall: (i) if the Casualty Event is not a Total Loss, remit such proceeds to Lessee up to an amount equal to the amount of the costs of repair actually incurred by Lessee as established to Lessor's satisfaction; or (ii) if a Total Loss has occurred, remit such proceeds to Lessee up to the amount Lessee paid to Lessor as the Stipulated Loss Value or apply such proceeds as a credit to any other payments due under Section 11(a). Any excess insurance proceeds shall be returned to Lessee, so long as no payment Event of Default is then continuing.

**12. REDELIVERY**.

(a) <u>Return Location</u>. Unless Lessee has duly exercised a purchase option, if any, set forth in the related Schedule upon the expiration or earlier termination or cancellation of such Schedule, Lessee, at its sole expense, shall assemble and return the Equipment to any location in the continental United States as Lessor may reasonably designate to Lessee in writing (the "**Return Location**"), F.O.B. (as defined in Section 2-319 of the UCC) the Return Location.

(b) <u>Records</u>. With respect to any item of the Equipment returned pursuant to this Section 12, Lessee shall also deliver to Lessor all Records.

(c) <u>Return Condition</u>. Lessee agrees that the following requirements (the "**Return Requirements**") must be satisfied when the Equipment is returned to Lessor: (i) the Equipment shall be in the same condition as when delivered to Lessee under the applicable Schedule, ordinary wear and tear excepted; (ii) the Equipment shall be: (A) mechanically and structurally sound; (B) in such operating condition as is capable of (1) performing its originally intended use, in accordance with the manufacturer's published and recommended specifications, subject to normal performance deterioration and (2) being placed into use in a similar operating environment, in each case, without repair or overhaul; (C) capable of being tested by Lessor under power, if applicable; (D) clean, cosmetically acceptable (free of all rust, corrosion and Lessee-installed markings); and (E) in good appearance with adequate protective coatings over all surfaces that

were originally painted or coated; (iii) all components of the Equipment shall have been properly serviced, following the manufacturer's written operating and servicing procedures; (iv) the Equipment shall have been used, operated and repaired in accordance and otherwise in compliance with the terms and conditions of the applicable Schedule and other Lease Documents; (v) the Equipment shall be free and clear of all Liens, except Liens created by or in favor of the Lessor; (vi) the Equipment shall be in the condition required by the return and maintenance provisions of the applicable Schedule (including all return and maintenance addenda thereto, if any) and other Lease Documents; (vii) the Equipment shall be complete with no missing components, parts or attachments; (viii) all inspections, overhauls, rebuilds and certifications of the Equipment known to be or expected to be due within six (6) months after the end of the term of the applicable Schedule, if any, shall have been completed; and (ix) all manuals or other documents relating to the Equipment that are subject to periodic revision are fully up-to-date and current to the latest revision standard of any particular manual or document.

(d) <u>Certifications and Inspections</u>. Not more than forty-five (45) days prior to the expiration of the term of the applicable Schedule, Lessee shall certify to Lessor that the Equipment satisfies the Return Requirements or indicate what maintenance or repair is needed to bring the Equipment in compliance with the Return Requirements. Upon Lessor's request, Lessee shall confirm to Lessor the then current Equipment Location and, at any reasonable time and from time to time, upon reasonable prior written notice to Lessee, shall make the Equipment and the Records available to Lessor for inspection. If the results of such inspection indicate that any item of Equipment does not satisfy the Return Requirements, then Lessee shall, upon the request of the Lessor, immediately take all reasonable actions necessary to service or repair the Equipment such that the Equipment satisfies the Return Requirements. In the event the Lessee fails to in a reasonable time place the Equipment in a condition necessary to satisfy the Return Requirements then, in addition to all other Rent due under the applicable Schedule, Lessee shall pay to Lessor within ten (10) days of demand, as liquidated damages, the estimated cost of servicing or repairing any such non-complying item. Such amount shall be determined by Lessor's obtaining two quotes for such service or repair work and taking their average. Lessee shall bear the cost, if any, incurred by Lessor in obtaining such quotes.

(e) <u>Return Costs</u>. If, in the opinion of Lessor, the Equipment fails to meet the Return Requirements, Lessee agrees to pay on demand all reasonable and documented costs and expenses incurred in connection with repairing the Equipment and restoring it so as to meet the Return Requirements. In addition, in the event that any of the Records are missing or incomplete, Lessor shall have the right to cause the same to be reconstructed at Lessee's expense. Without limiting the generality of the foregoing, costs of installation, de-installation (including packing materials and maintenance certification/recertification by the Supplier), transportation, rigging and storage charges on delivery or redelivery of the Equipment to and from Lessee, including, without limitation, redelivery following the occurrence of an Event of Default, shall be the sole responsibility of Lessee.

(f) <u>Holdover</u>. If Lessee fails to return the Equipment in accordance with this Section 12, all of Lessee's obligations under the applicable Schedule (including, without limitation, Lessee's obligation to pay Rent at the rental then applicable thereunder) shall continue in full force and effect until the Equipment shall have been returned in the condition required thereunder. Lessor's acceptance of such holdover rent does not constitute an extension or renewal of the term of the applicable Schedule or a waiver of Lessor's right to prompt return of the Equipment in compliance with the Return Requirements. Such holdover rent shall be payable upon the earlier of Lessor's demand or the return of the Equipment in accordance with this Section 12.

**13. INDEMNITY**. Lessee shall pay, and shall defend, indemnify and hold each Indemnitee harmless, on an after-tax basis, from and against, any and all Claims arising out of: (a) the Lease Documents; (b) the Equipment, including, without limitation, its manufacture, purchase, ownership, selection, acceptance, rejection, possession, lease, sublease, operation, use, maintenance, documenting, inspection, control, loss, damage, destruction, removal, storage, surrender, sale, use, condition, delivery, nondelivery, return or other disposition of it or any other matter relating to it (including, in each case and without limitation, latent or other defects, whether or not discoverable, any claim for patent, trademark or copyright infringement) and any and all claims and liabilities in any way relating to or arising out of injury to persons, properties or the environment, including, without limitation, claims and liabilities based on strict liability in tort, negligence, breach of warranties or violations of any regulatory law or requirement **(Notwithstanding anything contained in the foregoing, with the Lessor's receipt of a fully assigned (to the Lessor) manufacturer's indemnity the Lessor shall primarily look to such manufacturer, and secondarily look to the Lessee, for the defense and indemnity of, on an after tax basis, any and all Claims arising out of the manufacture of the Equipment)**; (c) a failure to comply with Applicable Law; and (d) Lessee's failure to perform any covenant, or Lessee's breach of any representation or warranty, in the Lease Documents; provided, that the foregoing indemnity shall not extend to any Claims to the extent resulting solely from the gross negligence or willful misconduct of Lessor. If any Claim is made against Lessee or an Indemnitee, the party receiving notice of such Claim shall promptly notify the other party, but the failure of the party receiving notice to so notify the other shall not relieve Lessee of any obligation hereunder, unless such failure to provide notice materially and adversely prejudices Lessee's indemnification obligations. Lessee acknowledges and agrees that any resolution of any Claim shall include a complete written release of all Indemnitees from any and all liability arising from or as a result of said Claim.

**14. DEFAULT**. Lessee shall be deemed in default hereunder and under each Schedule (each, an "**Event of Default**") if: (a) Lessee fails to make any payment of Rent (in good, collected and indefeasible funds) within five (5) days after the same shall have become due; or (b) Lessee fails to obtain, maintain and comply with all of the insurance coverages required hereunder; or (c) Lessee fails to maintain, use or operate the Equipment in accordance with Applicable Law; or (d) any representation or warranty made by Lessee in any Lease Document or in any certificate, financial statement or other statement furnished to Lessor (including but not limited to any omission of any substantial contingent or unliquidated liability or Claim against Lessee) shall be untrue in any material respect; or (e) Lessee removes, transfers, sells, sublicenses, encumbers, parts with possession, or sublets any item of the Equipment in violation of the terms of any Lease Document, or assigns or transfers this Master Lease or any Schedule or Lessee's interest hereunder or thereunder, in each case, without Lessor's prior written consent; or (f) Lessee or any Guarantor (i) dissolves, or ceases doing business as a going concern, (ii) commences a voluntary case or other proceeding or files any petition seeking liquidation, reorganization or other relief under any federal, state or foreign bankruptcy, insolvency or other similar law now or hereafter in effect or seeking the appointment of a custodian, trustee, receiver, liquidator or other similar official for Lessee or such Guarantor or any substantial part of the property of

Lessee or such Guarantor, (iii) consents to the institution of, or fails to contest in a timely and appropriate manner, any proceeding or petition described in clause (ii) hereof, (iv) consents to the appointment of a custodian, trustee, receiver, liquidator or other similar official for Lessee or such Guarantor or for a substantial part of the assets of Lessee or such Guarantor, (v) files an answer admitting the material allegations of a petition filed against Lessee or such Guarantor in any such proceeding, (vi) makes a general assignment for the benefit of creditors, or (vii) takes any action for the purpose of effecting any of the foregoing; or (g) an involuntary proceeding shall be commenced or an involuntary petition shall be filed seeking (i) liquidation, reorganization or other relief in respect of Lessee or any Guarantor or the debts of Lessee or such Guarantor, or any substantial part of the assets of Lessee or such Guarantor, under any federal, state or foreign bankruptcy, insolvency or other similar law now or hereafter in effect or (ii) the appointment of a custodian, trustee, receiver, liquidator or other similar official for Lessee or any Guarantor or for a substantial part of the assets of Lessee or such Guarantor, and in any such case, such proceeding or petition shall remain undismissed for a period of sixty (60) days or an order or decree approving or ordering any of the foregoing shall be entered; or (h) a Corporate Event other than a Permitted Corporate Event occurs with respect to Lessee or any Guarantor; or (i) a Change in Control occurs in Lessee or any Guarantor; or (j) Lessee defaults under any loan, lease, guaranty or other financial obligation to Lessor or Lessor's affiliates (including but not limited to SunTrust Bank), which default entitles the other party to exercise remedies; or (k) Lessee defaults under any loan, lease, guaranty or other financial obligation, which obligation is in an amount of twenty (20) million dollars or greater, to any third party which default entitles the other party to such obligation to exercise remedies; or (l) Lessee fails to comply with the provisions of Section 4(e); or (m) a default under, or anticipatory repudiation of, any Guaranty occurs; or (n) Lessee fails to perform or observe any term, covenant or obligation set forth in this Master Lease or any other Lease Document except as otherwise set forth in clauses (a) through (m) above, and such failure is not cured within thirty (30) days after written notice thereof from Lessor; or (o) an event of default occurs and is continuing under any Permitted Sublease.

**15. REMEDIES**.

(a) Remedies. If an Event of Default has occurred and at any time thereafter, or (1) in the case of the occurrence of an Event of Default pursuant to Section 14, sub-section (a) or (b), at any time after written notice from Lessor and Lessee's failure to cure such Event of Default within ten (10) days thereof, or (2) in the case of the occurrence of an Event of Default pursuant to Section 14, sub-sections (d), (f)(ii), (f)(iii), (f)(iv), (f)(v), (f)(vi), (f)(vii),(g),(i), or (o), at any time after written notice from Lessor and Lessee's failure to cure such Event of Default within thirty (30) days thereof, Lessor may exercise at its sole option any one or more of the following remedies: (i) proceed at law or in equity to enforce performance by Lessee of the applicable covenants and terms of the Schedule and other Lease Documents or to recover damages for the breach thereof; (ii) with notice to Lessee, cancel or terminate the Schedule, without prejudice to Lessor's rights in respect of obligations then accrued but unsatisfied; (iii) stop delivery of the Equipment or require that Lessee, at Lessee's expense, return the Equipment to Lessor in the manner and condition required by the Schedule and other Lease Documents; (iv) enter upon the Equipment Location or other premises where the Equipment may be located and, with notice to Lessee and with legal process or the consent of the Lessee, take possession of and remove all or any of the Equipment without liability by reason of such entry or taking possession; (v) sell any item of the Equipment at public or private sale; (vi) sell, abandon, hold, keep idle, lease to others, or otherwise dispose of any item of the Equipment; (vii) demand and recover from Lessee (A) all accrued and unpaid Rent as of the date the Event of Default occurs, plus (B) as liquidated damages for loss of a bargain and not as a penalty, and in lieu of any further payments of Basic Rent or rent during any renewal term, as applicable, the Stipulated Loss Value as of the date the Event of Default occurs (provided, however, that, if the Event of Default does not occur on a Basic Rent Payment Date, the Stipulated Loss Value shall be determined as of the Basic Rent Payment Date immediately preceding the date the Event of Default occurs) ("**Liquidated Damages**"), plus (C) all Enforcement Costs incurred by reason of the occurrence of the Event of Default or the exercise of Lessor's remedies with respect thereto, plus (D) interest at the Default Rate on the total amount under this clause (viii) for the period from the date the Event of Default occurs until such total amount is fully and indefeasibly paid to Lessor; and (ix) exercise any other right or remedy set forth in the related Schedule or other Lease Documents or otherwise available to Lessor under Applicable Law or in equity, including, without limitation, demanding and recovering the present value as of the date the Event of Default occurs of the total Basic Rent for the remaining term of the Schedule.

In addition to the above, if and solely to the extent required by law, Lessor will take steps to mitigate Lessor's damages arising from an Event of Default; provided, however, the foregoing will not be construed to require Lessor to follow any specific steps or procedures not required under applicable law in seeking to mitigate damages and Lessor will be entitled to take such steps and actions as may be reasonable under the circumstances.

(b) Additional Provisions. The exercise of any of the foregoing remedies by Lessor shall not constitute a termination or cancellation of the Schedule unless Lessor so notifies Lessee in writing. Lessor shall have the right to seek a deficiency from Lessee notwithstanding Lessor's repossession, reletting, sale, other disposition or abandonment of the Equipment. At any public sale, Lessor may bid for and become the purchaser of the Equipment, and Lessor or any other purchaser at any such sale thereafter shall hold the Equipment sold absolutely free from any claim or right of Lessee of whatever nature (including any equity of redemption) and Lessee hereby expressly waives such claims and rights. If an Event of Default occurs, Lessee hereby agrees that ten (10) days prior notice to Lessee of any public or private sale shall be conclusively deemed reasonable and, to the extent permitted by Applicable Law, Lessee waives all rights and defenses with respect to such disposition of the Equipment. None of Lessor's rights or remedies hereunder are intended to be exclusive of, but each shall be cumulative and in addition to, any other right or remedy referred to hereunder or otherwise available to Lessor at law or in equity. No express or implied waiver by Lessor of any Event of Default shall constitute a waiver of any other Event of Default or a waiver of any of Lessor's rights in connection therewith. Any failure or delay in Lessor's exercise of its rights or remedies hereunder shall not constitute a waiver of such rights and remedies.

(c) Application of Proceeds. If Lessor repossesses the Equipment, then, the proceeds of any sale, re-letting or other disposition (if any) shall be applied in the following priorities: (i) first, to pay all Enforcement Costs; (ii) second, to pay Lessor all other damages hereunder to the extent not previously paid, including, without limitation, Liquidated Damages if such Liquidated Damages have been demanded by Lessor; (iii) third, if the Lessor under such Schedule is also the Lessor under any other Schedules, to satisfy any

remaining obligations under such Schedules; and (iv) <u>fourth</u>, to reimburse Lessee for any amounts previously paid to Lessor as damages hereunder. Lessor shall retain any remaining surplus.

**16. ASSIGNMENT**.

(a) <u>Lessee Assignments</u>. LESSEE SHALL NOT (I) ASSIGN, DELEGATE, TRANSFER, PLEDGE, ENCUMBER OR OTHERWISE DISPOSE OF ANY OR ALL OF ITS RIGHTS OR OBLIGATIONS HEREUNDER OR UNDER ANY SCHEDULE OR TO THE EQUIPMENT OR THE COLLATERAL, OR (II) SUBLET THE EQUIPMENT TO, OR PERMIT THE EQUIPMENT TO BE USED BY, ANYONE OTHER THAN LESSEE OR A PERMITTED SUBLESSEE UNDER A PERMITTED SUBLEASE, IN EACH CASE WITHOUT LESSOR'S PRIOR WRITTEN CONSENT.

(b) <u>Lessor Assignments</u>. Lessor, without notice to Lessee, may sell, assign or grant a security interest in or otherwise transfer all or any of its right, title or interest in the Equipment, this Master Lease, or any Schedule and the related Lease Documents or the Rent thereunder (each such an event, an "**Assignment**") to any purchaser, transferee, secured party or assignee (each, an "**Assignee**"). Lessee hereby consents to each such Assignment and further acknowledges and agrees (i) that Lessee shall perform all of its obligations under the Lease Documents for the benefit of the Assignee to the extent assigned pursuant to the Assignment, (ii) that any Assignee is entitled to enforce all rights so assigned, (iii) any Assignee shall expressly assume the Section 8 non-interference obligations together with the other obligations of the Lessor, if any, for such Assignment to be effective and upon a written assumption the Assignee shall thereupon be responsible for the Lessor's duties occurring after the Assignment and Lessor shall be released from such duties; (v) if so directed by Lessor, to pay all assigned Rent directly to Assignee or any other party designated in writing by Lessor or Assignee, and (vi) THAT LESSEE HEREBY WAIVES, AND AGREES NOT TO ASSERT AGAINST ANY SUCH ASSIGNEE, ANY CLAIM, DEFENSE, COUNTERCLAIM OR OFFSET THAT LESSEE MAY HAVE AGAINST LESSOR. Lessee agrees that upon written notice to Lessee of any such Assignment and the Assignee expressly assuming any remaining obligations of the Lessor under the Lease Documents, Lessee shall promptly execute and deliver to Lessor or Assignee an acknowledgment of the Assignment in form and substance reasonably satisfactory to the requesting party and such other documents and assurances reasonably requested by Lessor or Assignee. Upon any such Assignment, and except as may be otherwise provided in connection therewith, all references in the related Lease Documents to "Lessor" shall include the related Assignee.

**17. MISCELLANEOUS**.

(a) The Lease Documents contain the entire understanding between Lessor and Lessee and supersede all prior agreements and understandings, if any, relating to the subject matter hereof and thereof. The Lease Documents may not be changed, modified, amended, waived, supplemented, discharged, cancelled or terminated orally or by any course of dealing, or in any manner other than by an agreement in writing signed by the party to be charged.

(b) Any provision of this Master Lease or any other Lease Document which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or thereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by Applicable Law, Lessor and Lessee hereby waive any provision of law which renders any provision hereof or thereof prohibited or unenforceable in any respect.

(c) The representations, warranties and agreements of Lessee herein or made pursuant to any other Lease Document shall be deemed to be continuing and to survive the execution and delivery of this Master Lease, each Schedule and any other Lease Documents. All indemnities, disclaimers, agreements and representations contained in this Master Lease or any other Lease Documents shall survive the expiration or earlier termination or cancellation of any Schedule. Without limiting the generality of the foregoing, any and all indemnities and disclaimers herein or in any other Lease Document shall survive the full indefeasible satisfaction of all of Lessee's obligations hereunder or thereunder.

(d) All of Lessee's obligations under the Lease Documents shall be performed at Lessee's sole expense. Lessee shall reimburse Lessor promptly upon demand for all expenses incurred by Lessor in connection with (1) any action taken by Lessor at Lessee's request or in connection with any option set forth in any Lease Document, (2) the filing or recording of transactionally required real property waivers, UCC Statements, vehicle titling and registration filings, and other documents in connection with the Lease Documents, (3) all inspections of the Equipment required in connection with an Event of Default or in connection with the Lessee's Lease options, and (4) all transactionally required lien search reports (and copies of filings) as requested by Lessor. If Lessee fails to perform any of its obligations under any Lease Document, Lessor, at its option, may perform the same for the account of Lessee without thereby waiving any Event of Default, and Lessee shall promptly pay to Lessor upon demand any amount paid, and any expense (including reasonable attorneys' fees), penalty or other liability incurred, by Lessor in such performance. All amounts payable under this Section 17(d), if not paid when due, shall be paid to Lessor together with interest thereon at the Default Rate.

(e) LESSEE IRREVOCABLY APPOINTS LESSOR AS LESSEE'S ATTORNEY-IN-FACT (WHICH POWER SHALL BE DEEMED COUPLED WITH AN INTEREST) TO EXECUTE, ENDORSE AND DELIVER ANY DOCUMENTS AND CHECKS OR DRAFTS RELATING TO OR RECEIVED IN PAYMENT FOR ANY LOSS OR DAMAGE UNDER THE POLICIES OF INSURANCE REQUIRED BY THE LEASE DOCUMENTS, BUT ONLY TO THE EXTENT THAT THE SAME RELATES TO THE EQUIPMENT, OR ARE REQUIRED BY TITLING AGENCIES IN ORDER TO REFLECT LESSOR AS THE OWNER AND/OR LIENHOLDER WITH RESPECT TO CERTIFICATES OF TITLE PERTAINING TO MOTOR VEHICLES (IF ANY) COMPRISING THE EQUIPMENT.

(f) All notices (excluding billings and communications in the ordinary course of business) hereunder shall be in writing, personally delivered, sent by overnight courier service or certified mail, return receipt requested, addressed to the other party at its address set forth under its signature line below or at such other address as such party shall from time to time designate in writing to the other party and shall be effective upon the earlier of receipt or three (3) days after mailing if mailed in accordance with the terms of this Section 17(f).

(g) This Master Lease and the other Lease Documents may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall be deemed one and the same instrument. This Master Lease and the other Lease Documents may be executed and delivered by facsimile signature or other electronic means (including Adobe's Portable Document Format). Any such signature shall be of the same force and effect as an original signature. The exchange of this Master Lease, the other Lease Documents and the related signature pages via facsimile or as an attachment to electronic mail (including Adobe's Portable Document Format) shall constitute effective execution and delivery by the parties and may be used by the parties for all purposes.

(h) If Lessor is required by the terms of any Lease Document to pay to or for the benefit of Lessee any amount received as a refund of an Imposition or as insurance proceeds, Lessor shall, after notice to and reasonable consultation with Lessee, not be required to pay such amount if a payment Event of Default is then continuing. In addition, if Lessor is required by the terms of any Lease Document to cooperate with Lessee in connection with certain matters, such cooperation shall be reasonably provided as required.

(i) This Master Lease and the other Lease Documents shall inure to the benefit of, and be binding upon, Lessee, Lessor and their respective successors and permitted assigns. Headings are intended for convenience or reference only, and shall not be construed to define, limit or describe the scope or intent of any provisions hereof.

**18. PATRIOT ACT NOTICE.** Lessor hereby notifies Lessee that pursuant to the requirements of the USA PATRIOT Act (Title III of Pub. L. 107-56 signed into law October 26, 2001) (the "**Patriot Act**"), Lessor may be required to obtain, verify and record information that identifies Lessee, which information includes the name and address of Lessee and other information that will allow Lessor to identify Lessee in accordance with the Patriot Act.

**19. CHATTEL PAPER.** To the extent that a Schedule constitutes chattel paper under the UCC, no Assignment of it may be effectuated through the transfer and possession of any counterpart other than the original counterpart no. 1 of the Schedule. The transfer or possession of the "original" counterpart of this Master Lease shall be irrelevant to the Assignment of any Schedule.

**20. GOVERNING LAW; JURISDICTION.** THIS MASTER LEASE AND THE OTHER LEASE DOCUMENTS, AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER AND THEREUNDER, SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE INTERNAL LAWS OF THE STATE OF NEW YORK (WITHOUT REGARD TO THE CONFLICT OF LAWS PRINCIPLES OF THE STATE (OTHER THAN SECTION 5-1401 OF THE GENERAL OBLIGATIONS LAW), INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE. LESSEE HEREBY IRREVOCABLY CONSENTS TO THE JURISDICTION OF ANY STATE COURT LOCATED IN FULTON COUNTY, GEORGIA, OR THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA; PROVIDED THAT NOTHING CONTAINED HEREIN OR IN THE OTHER LEASE DOCUMENTS WILL PREVENT LESSOR FROM BRINGING ANY ACTION, ENFORCING ANY AWARD OR JUDGMENT OR OTHERWISE EXERCISING ANY RIGHTS AGAINST LESSEE INDIVIDUALLY, AGAINST ANY SECURITY OR AGAINST ANY PROPERTY OF LESSEE IN ANY OTHER STATE OR OTHER FOREIGN OR DOMESTIC JURISDICTION. Lessee waives any objection to venue and any objection based on a more convenient forum in any action instituted hereunder or under any other Lease Document.

**21. WAIVER OF JURY TRIAL.** EACH OF LESSOR AND LESSEE HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING, IN LAW OR IN EQUITY, RELATING TO THIS MASTER LEASE OR ANY OTHER LEASE DOCUMENT AND THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY. THIS WAIVER IS MADE KNOWINGLY, WILLINGLY AND VOLUNTARILY BY EACH OF LESSOR AND LESSEE. EACH OF LESSOR AND LESSEE CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF LESSOR HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT LESSOR WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER. EACH OF LESSOR AND LESSEE ACKNOWLEDGES THAT LESSOR HAS BEEN INDUCED TO ENTER INTO THIS MASTER LEASE AND ALL OTHER LEASE DOCUMENTS AND THE TRANSACTIONS CONTEMPLATED HEREBY AND THEREBY BY, AMONG OTHER THINGS, THE WAIVERS AND CERTIFICATIONS SET FORTH IN THIS SECTION 21.

(The remainder of this page is intentionally blank. Signature page follows.)

IN WITNESS WHEREOF, the parties hereto have caused this Master Equipment Lease Agreement No. 10194 to be duly executed as of the day and year first above set forth.

Lessor:

SUNTRUST EQUIPMENT FINANCE & LEASING CORP.

Lessor Address:
P.O. Box 4418
Atlanta, GA 30302

By: _Robt B. Rosenberg_ (signature)
Name: Robert B Rosenberger
Title: Vice President

Lessee:

DC SOLAR DISTRIBUTION, INC.

By: _____
Name: _____
Title: _____

Lessee Address:
4901 Park Road
Benicia, CA 94510
Attn: _____

Lessee Information:
Form of Organization: Corporation
Jurisdiction of Organization: California
Organizational No.: C3320200
Federal ID #: 27-3619780

IN WITNESS WHEREOF, the parties hereto have caused this Master Equipment Lease Agreement No. 10194 to be duly executed as of the day and year first above set forth.

Lessor:

SUNTRUST EQUIPMENT FINANCE & LEASING CORP.

Lessor Address:
P.O. Box 4418
Atlanta, GA 30302

By: _____
Name: _____
Title: _____

Lessee:

DC SOLAR DISTRIBUTION, INC.

By: _____
Name: __Paulette CARPOFF_____
Title: __PRESIDENT_____

Lessee Address:
4901 Park Road
Benicia, CA 94510
Attn: _____

Lessee Information:
Form of Organization: Corporation
Jurisdiction of Organization: California
Organizational No.: C3320200
Federal ID #: 27-3619780

# APPENDIX A
## SCHEDULE OF DEFINITIONS

The following words and terms used in the Lease Documents shall have the respective meanings set forth below unless the context or use indicates another or different meaning or intent:

"**Applicable Law**" means any law, rule, regulation, ordinance, order, code, common law, interpretation, judgment, directive, decree, treaty, injunction, writ, determination, award, permit or similar norm or decision of any Governmental Authority, as amended, superseded or replaced from time to time.

"**AS IS, WHERE IS**" means AS IS, WHERE IS, WITHOUT ANY WARRANTIES, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING WITHOUT LIMITATION, THE CONDITION OF THE EQUIPMENT, ITS MERCHANTABILITY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE.

"**Assignee**" has the meaning set forth in Section 16(b) hereof.

"**Assignment**" has the meaning set forth in Section 16(b) hereof.

"**Base Term**" with respect to a Schedule shall have the meaning specified in such Schedule.

"**Basic Rent**" has the meaning set forth in Section 2 hereof.

"**Basic Rent Payment**" has the meaning set forth in Section 2 hereof, and with respect to a Schedule shall mean the amount specified in such Schedule.

"**Basic Rent Payment Date**" with respect to a Schedule shall have the meaning specified in such Schedule.

"**BSA**" has the meaning set forth in Section 4(e) hereof.

"**Business Day**" means any day other than a Saturday, Sunday or other day on which commercial banks in the State of Georgia are authorized to close.

"**Casualty Event**" means, and shall be deemed to have occurred, with respect to any item of the Equipment upon: (a) any loss, theft, confiscation, requisition, taking, unavailability or destruction of such item from any cause whatsoever, (b) any damage to such item from any cause whatsoever, and (c) any event in which such item is relinquished from Lessee's possession for any reason whatsoever.

"**Change in Control**" means the occurrence of any event (whether in one or more transactions) after the date hereof which results in the following:

(i) if Lessee or any Guarantor is a privately held entity, the transfer of the power, direct or indirect, to (a) vote fifty percent (50%) or more of the securities having ordinary voting power for the election of the governing body of Lessee or such Guarantor, or (b) direct or cause the direction of the management and policies of Lessee or such Guarantor (by contract or otherwise); and

(ii) if Lessee or any Guarantor is a publicly held corporation, a change in control of a nature that Lessee or such Guarantor must report to the SEC on Form 8-K pursuant to Sections 13 or 15(d) of the Securities Exchange Act of 1934 (the "**Exchange Act**"); provided that, in any event and without limitation of the foregoing, a Change in Control shall occur if: (a) any "person" or "group" (as such terms are used in Sections 13(d) and 14(d) of the Exchange Act) becomes the "beneficial owner" (as defined in Rules 13d-3 and 13d-5 promulgated under the Exchange Act), directly or indirectly, of capital stock of Lessee or such Guarantor representing thirty percent (30%) or more of the voting interest of the then outstanding capital stock of Lessee or such Guarantor, or (b) the individuals who are directors of Lessee or such Guarantor, together with directors duly approved by a majority of such individuals, cease for any reason to constitute a majority of the board of directors of Lessee or such Guarantor.

"**Claims**" means any and all liabilities, losses, damages, injuries, suits, claims (including, without limitation, claims based upon strict liability), demands, debts, judgments, obligations, penalties, fines, charges, actions, costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements) of any kind or nature whatsoever, contingent or otherwise, matured, or unmatured, foreseeable or unforeseeable.

"**Code**" means the Internal Revenue Code of 1986, as amended from time to time.

"**Collateral**" with respect to a Schedule shall have the meaning specified in such Schedule.

"**Corporate Event**" means, with respect to Lessee or any Guarantor that is an entity, one or more of the following events: (a) a consolidation or merger involving Lessee or such Guarantor whereby Lessee or Guarantor is not the surviving business entity; or (b) a conveyance, transfer or lease of all or substantially all of the assets of Lessee or such Guarantor.

"**Default**" has the meaning set forth in Section 4(c) hereof.

"**Default Rate**" means an interest rate equal to the lesser of (a) eighteen percent (18%) per annum, or (b) the highest rate permitted by Applicable Law.

"**Documentation Fees**" means the "Documentation Fees" as defined in Section 5, if any, set forth in the applicable Schedule.

"**Enforcement Costs**" means all reasonable attorneys' fees and other enforcement costs and expenses incurred by reason of any Default or Event of Default or the exercise of Lessor's rights or remedies hereunder, whether incurred pre-judgment or post-judgment or prior to, during or after any bankruptcy proceeding.

"**Equipment**" with respect to a Schedule, shall mean the equipment and other property described in such Schedule, together with all related software (embedded therein or otherwise) and all replacements, repairs, upgrades, additions, parts, accessories, substitutions and exchanges therefor and thereof and accessions thereto.

"**Equipment Location**" means, with respect to a Schedule, the address set forth on the Schedule of Equipment attached to such Schedule. If any of the Equipment is a motor vehicle, Equipment Location for such Equipment shall mean its principal garage.

"**Event of Default**" has the meaning set forth in Section 14 hereof.

"**GAAP**" means generally accepted accounting principles, consistently applied.

"**Governmental Authority**" means any federal, state, county, municipal, regional or other governmental or quasi-governmental authority, agency, board, body, instrumentality or court, in each case, whether domestic or foreign.

"**Guarantor**" means any guarantor of all or any portion of Lessee's obligations under this Master Lease.

"**Guaranty**" means agreements of guaranty duly executed by each Guarantor.

"**Imposition**" means any and all fees, assessments, levies, charges, withholdings or taxes of any nature and penalties, fees and interests thereon imposed upon an Indemnitee, Lessee or the Equipment by any Governmental Authority. Impositions shall exclude federal and state taxes based solely on Lessor's net income unless such taxes are in lieu of any Imposition Lessee would otherwise be required to pay under any Lease Document or if Lessor would not have incurred such taxes but for the operation or presence of the Equipment within the jurisdiction imposing it. In addition, Impositions shall exclude federal tax credits.

"**Indemnitee**" means Lessor, its successors and assigns and their respective agents, employees, officers, and directors.

"**Interim Rent**" with respect to a Schedule shall have the meaning specified in such Schedule.

"**Lease Documents**" has the meaning set forth in Section 1 hereof.

"**Lessee**" has the meaning set forth in the recitals.

"**Lessor**" has the meaning set forth in the recitals.

"**Lien**" means all mortgages, security deeds or deeds of trust, pledges, hypothecations, security interests, liens, encumbrances, easements, preferences, claims, security titles, priorities or other security agreements, assignments, deposit arrangements, preferential arrangements or other charges of any kind or nature whatsoever.

"**Liquidated Damages**" has the meaning set forth in Section 15(a) hereof.

"**Loss Payment Date**" has the meaning set forth in Section 11(a) hereof.

"**Lost Equipment**" has the meaning set forth in Section 11(a) hereof.

"**Master Lease**" has the meaning set forth in the recitals.

"**Material Adverse Effect**" means a material adverse effect on (a) the business, assets, operations, prospects, or financial or other condition of Lessee, (b) the ability of Lessee or any Guarantor to perform its obligations under this Master Lease or any other Lease Document, (c) the Equipment, the Collateral or Lessor's rights therein, or (d) Lessor's rights and remedies under this Master Lease or any other Lease Document.

"**Other Payments**" has the meaning set forth in Section 2 hereof.

"**Patriot Act**" has the meaning set forth in Section 18 hereof.

"**Permitted Corporate Event**" means, with respect to Lessee and any Guarantor that is an entity, the consolidation or merger of such entity with or into another Person under which either: (a) Lessee or such Guarantor is the surviving entity; or (b) if Lessee or such Guarantor is not the surviving entity: (1) the surviving entity is organized and existing under the laws of the United States or any state thereof; (2) Lessor, in its reasonable discretion, is satisfied as to the creditworthiness of such surviving entity and as to such surviving entity's conformance to the other standard criteria then used by Lessor when approving transactions similar to the transactions contemplated in this Master Lease and the other Lease Documents; and (3) not less than sixty (60) days prior to such consolidation or merger, the surviving entity executes and delivers to Lessor (x) an agreement satisfactory to Lessor, in its reasonable discretion, containing such surviving entity's full and total assumption, and its agreement to pay, perform, comply with and otherwise be liable for, pursuant to the terms and conditions of this Master Lease and the other Lease Documents, all of Lessee's obligations having previously arisen, or then or thereafter arising, under any and all of the Lease Documents, and (y) any and all other documents, agreements, instruments, certificates, opinions and filings Lessor may request in its reasonable discretion.

"**Permitted Liens**" means: (a) Liens for fees, taxes, or other governmental charges of any kind which are not yet delinquent or are being contested in good faith by appropriate proceedings which suspend the collection thereof (provided, however, that such proceedings do not involve any substantial danger of the sale, forfeiture or loss of the Collateral or any interest therein); (b) Liens of mechanics, materialmen, laborers, employees or suppliers and similar Liens arising by operation of law incurred by Lessee in the ordinary course of business for sums that are not yet delinquent or are being contested in good faith by negotiations or by appropriate proceedings which suspend the collection thereof (provided, however, that such contest does not involve any substantial danger of the sale, forfeiture or loss of the Collateral or any interest therein); and (c) Liens arising out of any judgments or awards against Lessee which have been adequately bonded to protect Lessor's interests or with respect to which a stay of execution has been obtained pending an appeal or a proceeding for review.

"**Permitted Sublease**" means a sublease of any of the Equipment between Lessee and a Permitted Sublessee under a sublease agreement in the form of Exhibit A hereto as approved by Lessor.

"**Permitted Sublessee**" means International Speedway Corporation, and any other sublessee with Lessor's prior written consent.

"**Person**" means any individual, corporation, limited liability company, partnership, limited partnership, joint venture, association, joint-stock company, trust, unincorporated organization, or Governmental Authority.

"**Proceeds**" means "proceeds," as such term is defined in the UCC and, in any event, shall include: (i) any and all proceeds of any insurance, indemnity, warranty or guaranty payable to Lessee from time to time with respect to any Collateral; (ii) any and all payments (in any form whatsoever) made or due and payable to Lessee from time to time in connection with any requisition, confiscation, condemnation, seizure or forfeiture of any Collateral by any Governmental Authority (or any Person acting under color of Governmental Authority); (iii) any recoveries by Lessee against third parties with respect to any litigation or dispute concerning any Collateral, including claims arising out of the loss or nonconformity of, interference with the use of, defects in, or infringement of rights in, or damage to, any Collateral; and (iv) any and all other amounts, accounts, general intangibles and other rights to payment or other property acquired upon the sale, lease, license, exchange or other disposition of any Collateral and all rights arising out of any Collateral.

"**Records**" means all tooling and other records relating to the Equipment, including all maintenance and repair manuals, records of maintenance, modifications, additions and major repairs, and computerized maintenance history, if any.

"**Rent**" has the meaning set forth in Section 2 hereof.

"**Required Modification**" has the meaning set forth in Section 7(d)(1) hereof.

"**Return Location**" has the meaning set forth in Section 12(a) hereof.

"**Return Requirements**" has the meaning set forth in Section 12(c) hereof.

"**Sanctioned Country**" has the meaning set forth in Section 4(e) hereof.

"**Sanctioned Person**" has the meaning set forth in Section 4(e) hereof.

"**Sanctions**" means any trade, economic or financial sanctions administered or enforced by the Office of Foreign Assets Control, the U.S. Department of State, the United Nations Security Council, the EU, Her Majesty's Treasury or other relevant sanctions authority.

"**Schedule**" has the meaning set forth in the recitals.

"**Schedule of Equipment**" means, with respect to a Schedule, the Schedule of Equipment attached to such Schedule.

"**SEC**" has the meaning set forth in Section 4(a) hereof.

"**Segregated Payment Account**" means a lock box account or control deposit account for the payment of rents under any Permitted Sublease.

"**SLV Schedule**" means, with respect to a Schedule, the Schedule of Stipulated Loss Values attached to such Schedule.

"**Stipulated Loss Value**" means, with respect to a Basic Rent Payment Date, the product of the Total Invoice Cost times the percentage factor opposite such Basic Rent Payment Date, as set forth on the related SLV Schedule; provided, that, after the last Basic Rent Payment Date of the Base Term or any renewal term, the "Stipulated Loss Value" shall be determined using the percentage factor opposite the last Basic Rent Payment Date for the applicable term.

"**Supplier**" means the manufacturer, manufacturer's representative and/or vendor of the Equipment.

"**Supply Contract**" means, collectively, all purchase documents and invoices pertaining to the Equipment.

"**Total Invoice Cost**" means the amount specified in the related Schedule as the "Total Invoice Cost."

"**Total Loss**" with respect to any item of the Equipment shall constitute a Casualty Event and be deemed to have occurred upon: (a) the actual or constructive total loss of such item or any event giving rise to a casualty settlement or other payment by any insurer under any policy of insurance; (b) the disappearance, theft or destruction of such item, (c) damage to such item that is uneconomical to repair or that renders it unfit for normal use, (d) the condemnation, confiscation, requisition, seizure, forfeiture or other taking of title to or use of such item by any Governmental Authority, or (e) the imposition of any Lien on such item by any Governmental Authority.

"**UCC**" means the Uniform Commercial Code, as in effect in the State of New York from time to time.

"**UCC Statements**" has the meaning set forth in Section 4(b) hereof.

"**Upgrade**" has the meaning set forth in Section 7(d)(2) hereof.

The following terms when used in this Master Lease or the other Lease Documents shall be construed as follows: (1) "**including**": means including but not limited to unless such term is followed by the words "**and limited to**," or similar words; and (2) "**or**": at least one, but not necessarily only one, of the alternatives enumerated. Any defined term used in the singular preceded by "**any**" indicates any number of the members of the relevant class. Any "Lease Document" or other agreement or instrument referred to herein means such agreement or instrument as supplemented and amended from time to time. Any reference to "Lessor" or

"Lessee" shall include their permitted successors and assigns. Accounting terms used in this Master Lease or the other Lease Documents shall be as defined, and all calculations hereunder and thereunder shall be made, in accordance with GAAP.