# Exhibit B

# SunTrust Equipment Finance & Leasing Corp.

**EQUIPMENT SCHEDULE NO. 001**
(Solar Equipment Tax Lease)

This Equipment Schedule No. 001 dated as of September 28, 2017 (this "**Schedule**") is entered into between SUNTRUST EQUIPMENT FINANCE & LEASING CORP. ("**Lessor**") and DC SOLAR DISTRIBUTION, INC. ("**Lessee**"), pursuant to that certain Master Equipment Lease Agreement No. 10194 dated as of September 25, 2017, between Lessor and Lessee (the "**Master Lease**,").

| | |
|---|---|
| **TOTAL INVOICE COST:** | $45,000,000.00 |
| **LEASE TERM:** | Base Term: One Hundred Twenty months (120) Months |
| | Base Term Commencement Date: The Basic Rent Payment Date in the month of September, 2017. |
| **RENT:** | Basic Rent Payment Date: The 28th day of the applicable calendar month commencing in the month of September, 2017, provided, however, that, if there is no numerically corresponding calendar day in a particular month, the Basic Rent Payment Date shall be the last calendar day of such month. |
| | Basic Rent Payment: See Exhibit 1. |
| | Per Diem Interim Rent: N/A |
| | **APPLICABLE IMPOSITIONS WILL BE ADDED TO THE ABOVE AMOUNTS.** |
| **TAX PROVISIONS:** | MACRS Property Class: Five-year property class |
| | Energy Credit: 30% of $45,000,000.00 ("**Eligible Cost**") |
| | Section 467 Loan Interest Rate: 2.86% compounded annually |
| **INSURANCE:** | Combined Single Limit: The minimum amount of commercial general liability insurance referenced in Section 10 of the Master Lease is $5,000,000.00 (Five Million Dollars). |
| | Maximum Deductible: **N/A** |
| **OTHER PROVISIONS:** | Documentation Fee: Upon entering into this Schedule, Lessee shall pay to Lessor the following amount N/A. |
| | Required Notice Period: At least one hundred eighty (180) days, but not more than two hundred seventy (270) days, prior to the expiration of the applicable term or such longer required notice period, if any, set forth in the Return Addendum attached hereto, if any. |
| | Special Maintenance Provisions: See Maintenance Addendum attached hereto, if any. |
| | Special Return Provisions: See Return Addendum attached hereto, if any. |

The Master Lease provides for the execution and delivery of this Schedule for the purpose of confirming the acceptance and lease of the Equipment described in the Schedule of Equipment attached hereto. The provisions of the Master Lease are hereby incorporated into this Schedule. This Schedule shall be deemed a separate instrument of lease. Each capitalized term used, but not defined, in this Schedule shall have the meaning given it in the Master Lease. If any term of this Schedule conflicts or is inconsistent with any term of the Master Lease, the terms of this Schedule shall govern.

1. **LEASE; TERM.** Pursuant to the terms and conditions of this Schedule, Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment. The term of this Schedule shall (a) commence on the date of first hereinabove written, (b) continue through an interim term, if any, expiring on the Base Term Commencement Date (the "**Interim Term**"), and (c) unless earlier terminated in accordance with its terms, continue through the Base Term.

2. **RENT PAYMENTS; ADDITIONAL CONDITIONS PRECEDENT, REPRESENTATIONS, COVENANTS AND EVENTS OF DEFAULT.**

    (a) Rent.

    (1) Rent Payments. Lessee shall pay Rent as follows: (i) the Per Diem Interim Rent (if any) for each day of the Interim Term excluding the Base Term Commencement Date (collectively, the "**Interim Rent**") shall be due and payable on the Base Term Commencement Date; (ii) Basic Rent Payments shall be due and payable on each Basic Rent Payment Date in each successive month during the Base Term as set forth on Exhibit 1 to this Schedule; (iii) if applicable, the monthly installments specified in Section 6 shall be due and payable on each Basic Rent Payment Date in each successive month during any renewal term; and (iv) all Other Payments shall be due and payable upon demand. The term "Basic Rent" is intended to constitute "fixed rent" (as such term is defined in Treasury Regulation section 1.467-1(h)(3)). Basic Rent shall be allocated for each rental period pursuant to Section 2(a)(2) and shall be specified in Exhibit 2 to this Schedule and the Basic Rent allocation specified in Exhibit 2 shall represent and be the amount of Basic Rent for which the Lessee shall become liable on account of the use of the Equipment for each calendar year included in whole or in part in the Interim Term and Base Term.

    (2) Rent Allocations; Section 467 Compliance Procedure. Notwithstanding that Basic Rent is payable in accordance with Section 2(a)(1) hereof and without limiting the Lessee's payment obligations under Section 2(a)(1), "**Allocated Rent**" set forth on Exhibit 2 to this Schedule shall represent and be the amount of Basic Rent for which the Lessee becomes liable on

account of the use of the Equipment for each calendar year included in whole or in part in the Interim Term and Base Term. The Lessor and the Lessee agree to treat the allocation of Basic Rent to each "Rental Period" as provided on Exhibit 2 to this Schedule as a specific allocation of fixed rent within the meaning of Treasury Regulation section 1.467-1(c)(2)(ii)(A) with the effect that, pursuant to Treasury Regulation sections 1.467-1(d) and 1.467-2, the Lessor and the Lessee on any federal income tax returns filed by them (or on any federal income tax returns (and any state and local income tax returns that follow the reporting on the relevant party's federal income tax return) on which their income is included), shall accrue the amounts of rental expense and rental income (set forth for each period under the column with the heading "Proportional Rent" on Exhibit 2 to the this Schedule ("**Proportional Rent**")). Because there shall from time to time be a difference between (i) the cumulative amount of Basic Rent paid by the Lessee pursuant to Section 2(a)(1) and (ii) the cumulative amount of Basic Rent allocated pursuant to this Section 2(a)(2), there shall be deemed to exist a loan for purposes of Section 467 of the Code, the amount of which is based on the difference between the cumulative amount of Basic Rent paid by the Lessee and the cumulative amount of Proportional Rent accrued by the Lessee adjusted to account for an interest component, as provided in Treasury Regulation section 1.467-4(b)(1), and the amount of which is set forth on Exhibit 3 to this Schedule (a "**Section 467 Loan**"). The Lessor and the Lessee agree to accrue interest on such Section 467 Loan ("**Section 467 Loan Interest**") at the interest rate specified on this Schedule, compounded annually, in the amounts and at the times set forth under the headings "Lessor Section 467 Interest" or "Lessee Section 467 Interest," as applicable to each party, on Exhibit 3 to this Schedule. The Lessor and the Lessee intend that the amounts set forth in Exhibit 3 to this Schedule in the columns titled "Lessor Section 467 Interest" and "Lessee Section 467 Interest," as applicable to each party, constitute "interest on fixed rent" within the meaning of Treasury Regulation section 1.467-1(e)(2) and reportable as interest expense or interest income for federal income tax purposes and any analogous provisions of applicable state or local tax law. All Section 467 Loan, Section 467 Loan Interest, Proportional Rent and Allocated Rent are already included as part of Stipulated Loss Value, and are payable as a portion thereof, and have been taken into account in the amounts set forth in the SLV Schedule. In no event shall any Section 467 Loan, Section 467 Loan Interest, Proportional Rent or Allocated Rent be separately payable (including upon any termination of the Schedule, and regardless of whether or not Stipulated Loss Value thereunder shall be payable in connection with any such termination); it being agreed and understood that these items represent characterizations for federal income tax purposes only, including in the case of any termination of this Schedule pursuant to where Stipulated Loss Value is not payable.

(b) <u>Additional Conditions Precedent</u>. Lessor's agreement to lease the Equipment is conditioned upon Lessor's determination that all of the following, together with all conditions precedent set forth in the Master Lease, have been satisfied: (1) Lessor shall have received good title to the Equipment, free and clear of any and all Liens pursuant to documentation acceptable to Lessor; (2) Lessor shall have received true and correct copies of all documents and agreements (the "**Project Documents**") relating to the operation and maintenance of the Equipment, such Project Documents shall be in full force and effect and no default shall exist thereunder; (3) Lessor shall have received true and correct copies of all licenses and permits, if any ("**Permits**") required to operate the Equipment, all in accordance with Applicable Law, and such Permits shall be in full force and effect and have not been suspended, modified or revoked; (4) Lessor shall have received (i) an appraisal related to the Equipment, (ii) an engineering report related to the Equipment, and (iii) a cost segregation report (the appraisal and each such report, being a "**Report**") with respect to the Total Invoice Cost establishing the portion of the Total Invoice Cost that is the Eligible Cost, eligible for the federal energy credit under Section 48 of the Code, in each case from a firm or provider acceptable to Lessor and providing such opinions, certifications and other information in form and substance acceptable to Lessor; (5) Lessor shall have received such other documents, agreements, opinions (including but not limited to a satisfactory supporting tax opinion), information and such further assurances relating to Lessee, the Equipment, the Equipment Location and the subject matter of this Schedule as reasonably required by Lessor; and (6) there shall have occurred no change in Applicable Law, including applicable tax laws, that could adversely affect Lessor with respect to the proposed transaction. In the event Lessee is intended to be a special purpose entity, Lessor shall have received a first priority pledge (the "**Pledge**") of all of the ownership and voting interests in Lessee, together with such other certificates and opinions relating to the Pledge and the pledgor(s) as Lessor may request.

(c) <u>Additional Covenants</u>. In addition to the covenants set forth in the Master Lease, Lessee covenants until its obligations under the Schedule are fully paid and performed that (i) it will maintain all Permits required for the conduct of its business and the operation of the Equipment in accordance with its intended purposes and Applicable Law, (ii) without the consent of Lessor, it will not amend, modify or terminate any Project Document or enter into any other Project Document not in effect as of the date hereof, (iii) it will provide to Lessor such reports relating to the Equipment and the electricity generated by the Equipment as reasonably requested by Lessor, (iv) if the Equipment has not been placed in service, it will report to Lessor any construction delays or other delays in being able to operate the Equipment in accordance with its intended purposes, and (v) it will report to Lessor any default under any Project Document, any revocation, suspension or non-renewal of any Permit or any other material adverse event with respect to the Equipment or the operation thereof or with respect to the business of Lessee. In the event that Lessee is intended to be a special purpose entity, Lessee covenants that it will not engage in any other business, acquire any other assets or incur any indebtedness except in respect of the lease of the Equipment, the operation thereof and the sale of electricity therefrom, and as incidental to the foregoing.

(d) <u>Additional Events of Default</u>. In addition to the Events of Default set forth in the Master Lease, the following shall constitute any Event of Default hereunder: (i) A default shall exist and be continuing under any Project Document or (ii) any material Permit shall be revoked or suspended or shall not be renewed upon termination.

3. **TITLE; GRANTING CLAUSE; UCC RIGHTS AND REMEDIES; MAXIMUM PERMITTED RATE.**

(a) <u>Title</u>. It is the express intention of the parties that (1) this Schedule constitutes a true "lease" and "finance lease" under Article 2A of the UCC ("**Article 2A**") and not a sale or retention of security interest, (2) title to the Equipment at all times shall remain with Lessor, and Lessee shall acquire no interest in the Equipment other than the leasehold interest hereunder, and (3) throughout the term of this Schedule, Lessee agrees to report the transaction as a lease for federal income tax purposes. TO THE EXTENT PERMITTED BY APPLICABLE LAW, LESSEE WAIVES ANY AND ALL RIGHTS AND REMEDIES CONFERRED UPON A LESSEE BY SECTIONS 2A-508 THROUGH 2A-522 OF THE UCC. Pursuant to Article 2A, the parties hereby

acknowledge and agree that: (1) Lessee has selected the Supplier and has directed Lessor to purchase the Equipment from the Supplier, and (2) Lessor has informed Lessee in writing that Lessee is entitled under Article 2A to the promises and warranties, including those of the Supplier, provided to Lessor by the Supplier in connection with or as part of the Supply Contract, and that Lessee may communicate with the Supplier and receive an accurate and complete statement of those promises and warranties, including any disclaimers and limitations of them or of remedies.

(b) <u>Granting Clause</u>. As security for the payment of the Rent and the performance by Lessee of all of its obligations under this Schedule and all other Lease Documents (to the extent related hereto) as and when due, Lessee hereby grants to Lessor a first priority security interest in and to all of Lessee's right, title and interest in and to, wherever located, whether now owned or hereafter acquired or now existing or hereafter arising (collectively, the "**Collateral**"): (1) the Equipment (if contrary to the parties' intentions a court determines that this Schedule does not constitute a true "lease" under Article 2A); (2) as and to the extent applicable, all subleases, rental contracts, chattel paper, accounts, security deposits and general intangibles relating to the Equipment, in each case in which Lessee shall from time to time acquire an interest; (3) all Project Documents and Permits; (4) all Permitted Subleases; (5) all rents, accounts and rights to payment under all Permitted Subleases (the "**Assigned Rents**"); (6) all Segregated Payment Accounts; (7) all deposit accounts containing Assigned Rents; and (8) any and all Proceeds. The filing of UCC Statements in connection with this Schedule shall not have any effect on its characterization as a true "lease" under Article 2A. The security interest granted herein shall survive the termination, cancellation or expiration of this Schedule until such time as all of Lessee's obligations hereunder and under each Lease Document (to the extent related hereto) are fully and indefeasibly discharged. Upon Lessee's full satisfaction of all of its obligations hereunder and under each other Lease Document (to the extent related hereto): (i) Lessor's security interest in the Equipment (if contrary to the parties' intentions a court determines that this Schedule does not constitute a true "lease" under Article 2A) and the other Collateral shall be deemed to be released; and (ii) UPON WRITTEN REQUEST FROM LESSEE AND AT LESSEE'S COST, LESSOR WILL PROVIDE LESSEE WITH THE APPLICABLE UCC-3 TERMINATION STATEMENT FOR THE COLLATERAL.

(c) <u>UCC Rights and Remedies</u>. To the extent this Schedule creates a security interest, then with respect to the Collateral, in addition to all of the other rights and remedies available to Lessor hereunder upon the occurrence of an Event of Default, Lessor shall have all of the rights and remedies of a first priority secured party under the UCC. To the extent that there is in shortfall in payment of Assigned Rents, 100% of Permitted Sublessee rent shall be applied to Rent due hereunder.

(d) <u>Maximum Permitted Rate</u>. If contrary to the parties' intentions a court determines that this Schedule does not constitute a true "lease" under Article 2A, Lessor and Lessee intend that no provision of this Schedule or the other Lease Documents be interpreted, construed, applied, or enforced in a way that will permit or require the payment or collection of interest in excess of the highest rate of interest permitted to be paid or collected under Applicable Law (the "**Maximum Permitted Rate**"). If, however, any such provision is so interpreted, construed, applied, or enforced, Lessor and Lessee intend (i) that such provision automatically shall be deemed revised so as to require payment only of interest at the Maximum Permitted Rate; and (ii) if interest payments in excess of the Maximum Permitted Rate have been received, that the amount of such excess shall be deemed credited retroactively in reduction of the then-outstanding amount of Rent under this Schedule that constitutes principal, together with interest at the Maximum Permitted Rate. In connection with all calculations to determine the Maximum Permitted Rate, Lessor and Lessee intend (i) that all charges be excluded to the extent they are properly excludable under Applicable Law, as it from time to time is determined to apply to this Schedule; and (ii) that all charges that may be spread in the manner provided by statute of the jurisdiction indicated or any similar law, be so spread.

4. **ACCEPTANCE.** Lessee hereby certifies that the Equipment (a) was received by Lessee, (b) is satisfactory to Lessee in all respects, (c) is acceptable to Lessee for lease under this Schedule, (d) operates properly, and (e) is subject to all of the terms of this Schedule, including the obligations of Lessee to pay Rent hereunder.

5. **TAX INDEMNITY.**

(a) <u>Definitions</u>. As used in this Section 5, the following terms shall have the following meanings: (1) "**Lessor**" means Lessor and any affiliated group (within the meaning of Section 1504 of the Code) with which Lessor files consolidated returns for federal income tax purposes or combined, unitary or consolidated returns pursuant to the rules of any state Governmental Authority; (2) "**MACRS Deductions**" shall mean the deductions under Section 167 of the Code, determined in accordance with the Modified Accelerated Cost Recovery System with respect to the Depreciable Cost using the accelerated method set forth in Section 168(b)(1) of the Code as in effect on the date of this Schedule for property assigned to the MACRS Property Class set forth on the first page of this Schedule and taking into account the special depreciation allowance and basis adjustment under Section 168(k)(1) of the Code; (3) "**Tax Indemnification Payment**" means such amount as, after consideration of (i) all Impositions required to be paid by Lessor in respect of the receipt thereof under Applicable Law, and (ii) the amount of any interest or penalty which may be payable by Lessor in connection with the Tax Loss, shall be required to cause Lessor's after-tax economic yield to be equal to, but no greater than, Lessor's anticipated after-tax economic yield from this Schedule computed consistently with current Applicable Law (and with the assumption that Lessor is taxed at the maximum marginal federal and state tax rates including the federal tax consequences of paying state taxes) as of the date of this Schedule had the Tax Loss not occurred; (4) "**Tax Loss**" means the occurrence of any of the following events: (i) as the result of any act or failure to act of Lessee (regardless of whether any such act or failure to act is permitted by the terms of this Schedule or any other Lease Document), or the breach of any of Lessee's representations, warranties or covenants set forth in this Section 5, Lessor shall lose, shall not have the right to claim, or shall suffer a disallowance or recapture with respect to, or shall receive a lower than anticipated economic benefit from, all or any portion of MACRS Deductions or the Energy Credit; (ii) for federal, foreign, state or local income tax purposes, any item of income, loss or deduction with respect to the Equipment is treated as derived from, or allocable to, sources outside the U.S., and as a result Lessor's allowable foreign tax credit for federal income tax purposes for any year is less than the credit to which Lessor would have been entitled if all such income, loss and deduction had been derived from U.S. sources; (iii) during the term of this Schedule any amount is included in Lessor's gross income for federal, state or local income tax purposes on account of any addition, alteration or other modification or improvement to the Equipment or an exchange of the Equipment or any portion thereof that results in any reduction to Lessor's anticipated after-tax economic yield from this Schedule; or (iv) any reduction in the highest marginal federal statutory income tax rate applicable to corporations that is effective for all or any portion of Lessor's taxable year ending

December 31, 2017, that results in any reduction to Lessor's anticipated after-tax economic yield from this Schedule; (5) "**Energy Credit**" means the energy tax pursuant to Sections 38(b)(1), 46 and 48(a) of the Code that is equal to 30% of Eligible Cost; and (6) "**Depreciable Cost**" means Total Invoice Cost reduced by 50% of the amount of the Energy Credit.

(b) Lessee's Representations, Warranties and Covenants. Lessee represents and warrants to Lessor that: (1) Lessee believes that it is reasonable to estimate that the useful life of the Equipment exceeds the term of this Schedule (including the Base Term, any Interim Term and any fixed rental renewal periods) by the greater of one (1) year or twenty percent (20%) of such estimated useful life; (2) the Equipment will have a value at the end of the term of this Schedule (including any fixed rental renewal period) of at least twenty percent (20%) of the Total Invoice Cost, without including in such value any increase or decrease for inflation or deflation during the Base Term; (3) the Equipment is, and will be used by Lessee so as to remain, property eligible for the MACRS Deductions and the Energy Credit; (4) the Equipment will not constitute property "used predominantly outside the United States" within the meaning of Section 168(g)(1)(A) of the Code, "public utility property" within the meaning of Section 168(f)(2) of the Code, "tax-exempt use property" within the meaning of Section 168(h) of the Code, "tax-exempt bond financed property" within the meaning of Section 168(g)(5) of the Code, or "imported property" within the meaning of Section 168(g)(6) of the Code; (5) each part and component of the Equipment is new and has not been refurbished or subject to any prior use; (6) the Equipment will be in a condition and state of readiness and availability for its specifically assigned function of generating electricity from solar energy by the end of the calendar quarter in which this Schedule is executed (including for such purposes, as applicable, all Permits shall have been obtained and shall be in force for operation of the Equipment, all critical tests shall have been completed for the proper operation of the Equipment in accordance with its specifications, the Equipment shall be in the control of the Lessee, provided if the Equipment has been placed in service by the Lessee prior to the date hereof, the Equipment was originally placed in service by the Lessee and was placed in service no earlier than the date that is [85] days from the date that Lessor acquires the Equipment from Lessee and there has been no intervening ownership or use of the Equipment by any other person or entity; (7) the Equipment (to the extent of Eligible Cost) constitutes equipment that will use solar energy to generate electricity and that is "solar energy equipment" as defined under Treasury Regulations Section 1.48-9(d); and (8) all information provided by Lessee to any firm or provider of any Report was true and correct at the time such information was provided and remains true and correct in all material respects. Lessee further represents and warrants to Lessor that: (A) each item of Equipment constitutes "qualified property" under Section 168(k) of the Code and is eligible for the additional first-year depreciation deduction equal to the applicable percentage of the Total Invoice Cost contemplated by the Code; (B) the Equipment shall be treated as originally placed in service not earlier than the date of the execution and delivery of this Schedule, or in the event the transaction is a sale-leaseback transaction, Lessee shall not have placed in service the Equipment at any time prior to three (3) months before the execution and delivery of this Schedule; (C) Lessee has not arranged to purchase, and Lessor is not purchasing, the Equipment pursuant to a binding written contract entered into before the applicable date specified in Section 168(k) of the Code; and (D) each item of Equipment shall be placed in service during the period specified in Section 168(k) of the Code for eligibility for such additional first-year depreciation deduction. Lessee covenants with Lessor that Lessee will refrain from taking any action or omitting to take any action that would disqualify the Equipment from eligibility for or cause a recapture of MACRS Deductions or the Energy Credit.

(c) Tax Indemnification.

(1) Indemnity; Adjustments. If a Tax Loss occurs, Lessee shall pay the Tax Indemnification Payment to Lessor at Lessor's option: (i) within thirty (30) days after written notice from Lessor to Lessee that a Tax Loss has occurred, or (ii) as additional Rent on each Basic Rent Payment Date, beginning on the date specified in written notice from Lessor to Lessee that a Tax Loss has occurred. Lessor shall appropriately adjust the SLV Schedule and any affected option amounts to reflect the Tax Loss.

(2) Exclusions. Lessor shall be responsible for, and shall not be entitled to a Tax Indemnification Payment on account of, any Tax Loss arising primarily as a direct result of the occurrence of: (i) the failure of Lessor to timely and properly claim MACRS Deductions or Energy Credit in its tax return unless (A) such failure shall be the result of an event or circumstance described in clause (i) of the definition of "Tax Loss" in Section 5(a) (and Lessor's tax counsel has provided Lessee an opinion concluding that there is no reasonable basis to claim such amount) or (B) claiming such amount would be inconsistent with a prior final determination by the Internal Revenue Service with respect to which Lessee was required to indemnify Lessor hereunder; (ii) the failure of Lessor to have sufficient taxable income before application of the MACRS Deductions or Energy Credit to offset the full amount of such MACRS Deductions or Energy Credit other than as a result of changes in the Code or applicable regulations; (iii) any event which by the terms of this Schedule requires payment by Lessee of the Stipulated Loss Value if such payment is thereafter actually made to Lessor, to the extent that such payment reimburses Lessor for amounts otherwise payable pursuant hereto; or (iv) a disqualifying disposition due to Lessor's sale of the Equipment or this Schedule prior to an Event of Default.

(3) Timing of Tax Loss. For the purposes of this Section 5, a Tax Loss shall be deemed to have occurred upon the earliest of: (i) the payment by Lessor to a Governmental Authority of the tax increase (including an increase in estimated taxes) resulting from such Tax Loss; (ii) the date on which the Tax Loss is realized by Lessor; or (iii) the adjustment of the tax return of Lessor to reflect such Tax Loss. The obligations of Lessee under this Section 5 shall survive the expiration or termination or cancellation of the lease term with respect to this Schedule.

6. END OF TERM OPTIONS.

(a) Definitions. For purposes of this Schedule, the following terms shall have the following meanings: (1) "**Fair Market Rental Rate**" means, with respect to any item of the Equipment, an amount equal to the rental amount of such item, as in use, obtainable in an arms' length transaction between a willing and informed lessor and a willing and informed lessee under no compulsion to lease assuming that such item is in at least the condition required by this Schedule; (2) "**Fair Market Value**" shall be determined in accordance with Section 6(e) and means, with respect to any item of the Equipment, an amount equal to the sale price of such item, as in use, obtainable in an arms' length transaction between a willing and informed buyer and a willing and informed seller under no compulsion to sell assuming that such item is in at least the condition required by this Schedule; and (3) "**Purchase Price**"

means, with respect to any item of the Equipment, an amount equal to the greater of (i) $9,000,000.00 (floor price) and (ii) its then current Fair Market Value, together with all Impositions due upon sale.

(b) Base Term. At the expiration of the Base Term, Lessee shall have the right to exercise one of the following options with respect to all, but not less than all, of the Equipment: (1) **return** the Equipment to Lessor pursuant to, and in the condition required by, this Schedule; or (2) so long as no Default or Event of Default is then continuing, (A) **purchase** the Equipment for the Purchase Price, or (B) **renew** this Schedule on the terms and conditions herein for a non-cancellable term of twelve (12) months (the "**Renewal Term**") with monthly installments payable at the then current Fair Market Rental Rate as determined by Lessor in its sole discretion. Lessee must give irrevocable written notice to Lessor of Lessee's election to exercise one of the foregoing options within the Required Notice Period (the "**Election Notice**"). If Lessee fails to give the Election Notice to Lessor within the Required Notice Period, so long as no Default or Event of Default is then continuing, it shall be deemed to have elected to **purchase** the Equipment.

(c) Renewal Term. If applicable, at the expiration of the Renewal Term, Lessee shall have the right to exercise one of the following options with respect to all, but not less than all, of the Equipment: (1) **return** the Equipment to Lessor pursuant to, and in the condition required by, this Schedule; or (2) so long as no Default or Event of Default is then continuing, **purchase** the Equipment for the Purchase Price. Lessee must give the Election Notice to Lessor within the Required Notice Period. If Lessee fails to give the Election Notice within the Required Notice Period, so long as no Default or Event of Default is then continuing, it shall be deemed to have elected to **purchase** the Equipment.

(d) Purchase. If Lessee has, or is deemed to have, elected to purchase the Equipment in accordance with the terms and conditions of this Section 6, then, on the date upon which the applicable term expires (the "**Expiration Date**"), Lessee shall pay to Lessor in cash or other immediately available funds the Purchase Price and all other Rent due and owing under this Schedule on or before the Expiration Date. Upon Lessee's written request and so long as no Default or Event of Default is then continuing, following Lessor's receipt of full and indefeasible payment of such amounts, Lessor shall deliver to Lessee a bill of sale transferring to Lessee all right, title and interest of Lessor in and to the Equipment **"AS IS, WHERE IS."**

(e) Determination of Fair Market Value. Lessor and Lessee will negotiate the Fair Market Value in good faith. If Lessor and Lessee are unable to agree on the Fair Market Value on or before one hundred twenty (120) days prior to the expiration of the applicable term, then at the shared expense of the parties, the determination of Fair Market Value shall be made by an appraiser reasonably and mutually selected by the parties. If the Lessor and Lessee are unable to mutually select an appraiser on or before ninety (90) days prior to the expiration of the applicable term: (1) each party shall, at their own cost/expense, select an appraiser, both of whom shall make a Fair Market Value determination; (2) these two appraisers shall, at the mutual cost/expense of the parties, select a third appraiser who also shall make a Fair Market Value determination; (3) upon completion, the three appraisals shall be averaged to create a Fair Market Value determination. In both of the foregoing instances, the determination of the appraiser/appraisers shall be binding upon Lessor and Lessee.

**7. PROPERTY TAX ADMINISTRATION.**

(a) Unless otherwise directed in writing by Lessor, Lessee shall not file directly or list itself as owner of the Equipment with respect to any personal property tax (or any other Impositions in the nature of or imposed in lieu of property taxes) due or to become due with respect to the Equipment or this Schedule. Unless not permitted by Applicable Law, Lessor shall file directly with all appropriate Governmental Authorities all declarations, returns, inventories and other documentation with respect to any personal property taxes (or any other Impositions in the nature of or imposed in lieu of property taxes) due or to become due with respect to the Equipment or this Schedule. Lessee will pay to Lessor on or before the invoiced due date all such Impositions assessed, billed or otherwise payable with respect to the Equipment or this Schedule. Whenever this Schedule terminates as to any item of Equipment, Lessee shall, upon written request by Lessor, advance to Lessor the amount estimated by Lessor to be the personal property taxes or other Impositions on such item of Equipment which are not yet payable, but for which Lessee is responsible.

(b) Lessee will not process for payment any tax bills relating to the Equipment or this Schedule received directly from any Governmental Authority without the prior written consent of Lessor. If payment of a tax bill by Lessee directly to a Governmental Authority results in a double assessment situation, Lessee will be responsible for working with the applicable Governmental Authority to obtain a refund. Lessee will notify Lessor prior to the commencement of this Schedule of any applicable tax exemptions that Lessee claims. The failure of Lessee to notify Lessor of any such claimed tax exemptions will result in (1) Lessee being liable for payment to Lessor for any Impositions paid for which an exemption may have applied, and (2) Lessee being responsible for working with the applicable Governmental Authority to secure removal of the assessment and a refund, if applicable.

**8. NO CONFIDENTIALITY.** It is the mutual intent of Lessor and Lessee that the tax structure and tax treatment of the transactions contemplated by this Schedule are not confidential and that each party (and their employees, representatives and agents) may disclose to any and all persons, without limitation of any kind, the tax structure and tax treatment of the transactions contemplated herein such that the transactions will be treated as not having been offered under conditions of confidentiality for purposes of Section 1.6011-4(b)(3) (or any successor provision) of the Treasury Regulations promulgated under Section 6011 of the Code, and any comparable provision in the law of any other jurisdiction. Nothing contained herein precludes Lessee from disclosing to any and all persons, advice given and materials provided by Lessor pertaining to the tax treatment or tax structure of transactions contemplated by this Schedule. Such advice is not considered to be "confidential" within the meaning of Section 1.6011-4(b)(3) (or any successor provision) of the Treasury Regulations promulgated under Section 6011 of the Code, and any comparable provision in the law of any other jurisdiction.

(The remainder of this page is intentionally blank. Signature page follows.)

IN WITNESS WHEREOF, Lessor and Lessee have caused this Equipment Schedule No. 001 to be duly executed and delivered on the day and year first above written.

Lessor:

SUNTRUST EQUIPMENT FINANCE & LEASING CORP.

By: _____
Name: _____
Title: _____

Lessee:

DC SOLAR DISTRIBUTION, INC.

By: _____
Name: __Paulette Carpoff__
Title: __President__


**Lessee Billing Address:** _____
(Street)

_____
(City, State and Zip Code)

_____
(Attention)

**The above is to be completed by Lessee. If this section is blank, invoices will be sent by regular mail to the address provided below Lessee's signature in the Master Lease.**

COUNTERPART NO. __1__ OF __2__ SERIALLY NUMBERED MANUALLY EXECUTED COUNTERPARTS. TO THE EXTENT THAT THIS DOCUMENT CONSTITUTES CHATTEL PAPER UNDER THE UNIFORM COMMERCIAL CODE, NO SECURITY INTEREST MAY BE CREATED THROUGH THE TRANSFER AND POSSESSION OF ANY COUNTERPART OTHER THAN COUNTERPART NO. 1.

IN WITNESS WHEREOF, Lessor and Lessee have caused this Equipment Schedule No. 001 to be duly executed and delivered on the day and year first above written.

Lessor:

SUNTRUST EQUIPMENT FINANCE & LEASING CORP.

By: _John B. Rosenberg_ (signature)
Name: _Robert B. Rosenberger_
Title: _Vice President_

Lessee:

DC SOLAR DISTRIBUTION, INC.

By: _____
Name: _____
Title: _____


**Lessee Billing Address:** _____
                                (Street)

                                _____
                                (City, State and Zip Code)

                                _____
                                (Attention)

**The above is to be completed by Lessee. If this section is blank, invoices will be sent by regular mail to the address provided below Lessee's signature in the Master Lease.**

COUNTERPART NO. _2_ OF _2_ SERIALLY NUMBERED MANUALLY EXECUTED COUNTERPARTS. TO THE EXTENT THAT THIS DOCUMENT CONSTITUTES CHATTEL PAPER UNDER THE UNIFORM COMMERCIAL CODE, NO SECURITY INTEREST MAY BE CREATED THROUGH THE TRANSFER AND POSSESSION OF ANY COUNTERPART OTHER THAN COUNTERPART NO. 1.

**EXHIBIT 1**
**TO**
**EQUIPMENT SCHEDULE NO. 001**

**DC SOLAR SCHEDULE 001**
**BASIC RENT**
**(amounts expressed in U.S. dollars)**

| Basic Rent Payment Date | Basic Rent | Basic Rent Payment Date | Basic Rent | Basic Rent Payment Date | Basic Rent |
|---|---|---|---|---|---|
| Sep 28 2017 | 6,750,000.00 | Oct 28 2021 | 232,500.00 | Nov 28 2025 | 232,500.00 |
| Oct 28 2017 | 232,500.00 | Nov 28 2021 | 232,500.00 | Dec 28 2025 | 232,500.00 |
| Nov 28 2017 | 232,500.00 | Dec 28 2021 | 232,500.00 | Jan 28 2026 | 232,500.00 |
| Dec 28 2017 | 232,500.00 | Jan 28 2022 | 232,500.00 | Feb 28 2026 | 232,500.00 |
| Jan 28 2018 | 232,500.00 | Feb 28 2022 | 232,500.00 | Mar 28 2026 | 232,500.00 |
| Feb 28 2018 | 232,500.00 | Mar 28 2022 | 232,500.00 | Apr 28 2026 | 232,500.00 |
| Mar 28 2018 | 232,500.00 | Apr 28 2022 | 232,500.00 | May 28 2026 | 232,500.00 |
| Apr 28 2018 | 232,500.00 | May 28 2022 | 232,500.00 | Jun 28 2026 | 232,500.00 |
| May 28 2018 | 232,500.00 | Jun 28 2022 | 232,500.00 | Jul 28 2026 | 232,500.00 |
| Jun 28 2018 | 232,500.00 | Jul 28 2022 | 232,500.00 | Aug 28 2026 | 232,500.00 |
| Jul 28 2018 | 232,500.00 | Aug 28 2022 | 232,500.00 | Sep 28 2026 | 232,500.00 |
| Aug 28 2018 | 232,500.00 | Sep 28 2022 | 232,500.00 | Oct 28 2026 | 232,500.00 |
| Sep 28 2018 | 232,500.00 | Oct 28 2022 | 232,500.00 | Nov 28 2026 | 232,500.00 |
| Oct 28 2018 | 232,500.00 | Nov 28 2022 | 232,500.00 | Dec 28 2026 | 232,500.00 |
| Nov 28 2018 | 232,500.00 | Dec 28 2022 | 232,500.00 | Jan 28 2027 | 232,500.00 |
| Dec 28 2018 | 232,500.00 | Jan 28 2023 | 232,500.00 | Feb 28 2027 | 232,500.00 |
| Jan 28 2019 | 232,500.00 | Feb 28 2023 | 232,500.00 | Mar 28 2027 | 232,500.00 |
| Feb 28 2019 | 232,500.00 | Mar 28 2023 | 232,500.00 | Apr 28 2027 | 232,500.00 |
| Mar 28 2019 | 232,500.00 | Apr 28 2023 | 232,500.00 | May 28 2027 | 232,500.00 |
| Apr 28 2019 | 232,500.00 | May 28 2023 | 232,500.00 | Jun 28 2027 | 232,500.00 |
| May 28 2019 | 232,500.00 | Jun 28 2023 | 232,500.00 | Jul 28 2027 | 232,500.00 |
| Jun 28 2019 | 232,500.00 | Jul 28 2023 | 232,500.00 | Aug 28 2027 | 232,500.00 |
| Jul 28 2019 | 232,500.00 | Aug 28 2023 | 232,500.00 | Sep 28 2027 | 232,500.00 |
| Aug 28 2019 | 232,500.00 | Sep 28 2023 | 232,500.00 | | |
| Sep 28 2019 | 232,500.00 | Oct 28 2023 | 232,500.00 | TOTAL | 34,650,000.00 |
| Oct 28 2019 | 232,500.00 | Nov 28 2023 | 232,500.00 | | |
| Nov 28 2019 | 232,500.00 | Dec 28 2023 | 232,500.00 | | |
| Dec 28 2019 | 232,500.00 | Jan 28 2024 | 232,500.00 | | |
| Jan 28 2020 | 232,500.00 | Feb 28 2024 | 232,500.00 | | |
| Feb 28 2020 | 232,500.00 | Mar 28 2024 | 232,500.00 | | |
| Mar 28 2020 | 232,500.00 | Apr 28 2024 | 232,500.00 | | |
| Apr 28 2020 | 232,500.00 | May 28 2024 | 232,500.00 | | |
| May 28 2020 | 232,500.00 | Jun 28 2024 | 232,500.00 | | |
| Jun 28 2020 | 232,500.00 | Jul 28 2024 | 232,500.00 | | |
| Jul 28 2020 | 232,500.00 | Aug 28 2024 | 232,500.00 | | |
| Aug 28 2020 | 232,500.00 | Sep 28 2024 | 232,500.00 | | |
| Sep 28 2020 | 232,500.00 | Oct 28 2024 | 232,500.00 | | |
| Oct 28 2020 | 232,500.00 | Nov 28 2024 | 232,500.00 | | |
| Nov 28 2020 | 232,500.00 | Dec 28 2024 | 232,500.00 | | |
| Dec 28 2020 | 232,500.00 | Jan 28 2025 | 232,500.00 | | |
| Jan 28 2021 | 232,500.00 | Feb 28 2025 | 232,500.00 | | |
| Feb 28 2021 | 232,500.00 | Mar 28 2025 | 232,500.00 | | |
| Mar 28 2021 | 232,500.00 | Apr 28 2025 | 232,500.00 | | |
| Apr 28 2021 | 232,500.00 | May 28 2025 | 232,500.00 | | |
| May 28 2021 | 232,500.00 | Jun 28 2025 | 232,500.00 | | |
| Jun 28 2021 | 232,500.00 | Jul 28 2025 | 232,500.00 | | |
| Jul 28 2021 | 232,500.00 | Aug 28 2025 | 232,500.00 | | |
| Aug 28 2021 | 232,500.00 | Sep 28 2025 | 232,500.00 | | |
| Sep 28 2021 | 232,500.00 | Oct 28 2025 | 232,500.00 | | |

**EXHIBIT 2**
**TO**
**EQUIPMENT SCHEDULE NO. 001**

## DC SOLAR SCHEDULE 001
## BASIC RENT ALLOCATION
### (amounts expressed in U.S. dollars)

| Rental Period Beginning On (and Including) | Rental Period Ending On (and Excluding) | Allocated Rent | Proportional Rent |
|---|---|---|---|
| Sep 28 2017 | Dec 28 2017 | 0.00 | 0.00 |
| Dec 28 2017 | Jan 1 2018 | 26,653.88 | 27,751.37 |
| Jan 1 2018 | Jan 1 2019 | 3,198,465.09 | 3,330,164.99 |
| Jan 1 2019 | Jan 1 2020 | 3,198,465.09 | 3,330,164.99 |
| Jan 1 2020 | Jan 1 2021 | 3,198,465.09 | 3,330,164.99 |
| Jan 1 2021 | Jan 1 2022 | 3,198,465.09 | 3,330,164.99 |
| Jan 1 2022 | Jan 1 2023 | 3,293,233.38 | 3,428,835.45 |
| Jan 1 2023 | Jan 1 2024 | 3,909,227.22 | 4,070,193.43 |
| Jan 1 2024 | Jan 1 2025 | 3,909,227.22 | 4,070,193.43 |
| Jan 1 2025 | Jan 1 2026 | 3,909,227.22 | 4,070,193.43 |
| Jan 1 2026 | Jan 1 2027 | 3,909,227.22 | 4,070,193.43 |
| Jan 1 2027 | Sep 28 2027 | 2,899,343.52 | 3,018,726.80 |
| TOTAL | | 34,650,000.00 | 36,076,747.30 |

**EXHIBIT 3**
**TO**
**EQUIPMENT SCHEDULE NO. 001**

**DC SOLAR SCHEDULE 001**
**SECTION 467 LOAN BALANCES**
**(amounts expressed in U.S. dollars)**

| Date | Lessor Section 467 Interest | Section 467 Loan Balance |
|---|---|---|
| Sept 28 2017 | 0.00 | 0.00 |
| Dec 30 2017 | 0.00 | 7,419,748.63 |
| Dec 30 2018 | 212,204.81 | 7,091,788.45 |
| Dec 30 2019 | 202,825.15 | 6,754,448.61 |
| Dec 30 2020 | 193,177.23 | 6,407,460.85 |
| Dec 30 2021 | 183,253.38 | 6,050,549.24 |
| Dec 30 2022 | 173,045.71 | 5,584,759.50 |
| Dec 30 2023 | 159,724.12 | 4,464,290.19 |
| Dec 30 2024 | 127,678.70 | 3,311,775.45 |
| Dec 30 2025 | 94,716.78 | 2,126,298.80 |
| Dec 30 2026 | 60,812.15 | 906,917.51 |
| Sept 28 2027 | 19,309.28 | 0.00 |
| TOTAL | 1,426,747.30 | |

EXHIBIT 4
TO
EQUIPMENT SCHEDULE NO. 001

**DC SOLAR SCHEDULE 1**
**STIPULATED LOSS VALUE TABLE** [1]
**(amounts expressed in U.S. dollars)**

| [a] | [b] | [c] | [d] |
|---|---|---|---|
| Stipulated Loss Value Determination Date | Base Stipulated Loss Value | Section 467 Balance [2] | Stipulated Loss Value |
| Sep 28 2017 | 47,250,000.00 | 0.00 | 47,250,000.00 |
| Oct 28 2017 | 47,549,614.07 | (6,750,000.00) | 40,799,614.07 |
| Nov 28 2017 | 47,848,683.04 | (6,982,500.00) | 40,866,183.04 |
| Dec 28 2017 | 48,147,203.39 | (7,215,000.00) | 40,932,203.39 |
| Jan 28 2018 | 48,077,144.54 | (7,186,491.07) | 40,890,653.47 |
| Feb 28 2018 | 48,007,017.10 | (7,159,161.05) | 40,847,856.05 |
| Mar 28 2018 | 47,935,634.10 | (7,131,831.04) | 40,803,803.06 |
| Apr 28 2018 | 47,862,987.41 | (7,104,501.02) | 40,758,486.39 |
| May 28 2018 | 47,786,456.64 | (7,077,171.01) | 40,709,285.63 |
| Jun 28 2018 | 47,708,628.90 | (7,049,840.99) | 40,658,787.90 |
| Jul 28 2018 | 47,626,883.58 | (7,022,510.98) | 40,604,372.60 |
| Aug 28 2018 | 47,543,807.59 | (6,995,180.96) | 40,548,626.62 |
| Sep 28 2018 | 44,032,469.26 | (6,967,850.95) | 37,064,618.31 |
| Oct 28 2018 | 43,944,093.84 | (6,940,520.94) | 37,003,572.90 |
| Nov 28 2018 | 43,854,344.89 | (6,913,190.92) | 36,941,153.97 |
| Dec 28 2018 | 43,763,213.55 | (6,885,860.91) | 36,877,352.65 |
| Jan 28 2019 | 43,667,349.10 | (6,857,801.36) | 36,809,547.74 |
| Feb 28 2019 | 43,570,015.32 | (6,829,689.71) | 36,740,325.62 |
| Mar 28 2019 | 43,471,255.17 | (6,801,578.05) | 36,669,677.12 |
| Apr 28 2019 | 43,371,059.42 | (6,773,466.40) | 36,597,593.02 |
| May 28 2019 | 43,268,944.85 | (6,745,354.75) | 36,523,590.10 |
| Jun 28 2019 | 43,165,373.00 | (6,717,243.09) | 36,448,129.91 |
| Jul 28 2019 | 43,059,860.52 | (6,689,131.44) | 36,370,729.08 |
| Aug 28 2019 | 42,952,868.79 | (6,661,019.79) | 36,291,849.00 |
| Sep 28 2019 | 39,417,465.17 | (6,632,908.13) | 32,784,557.04 |
| Oct 28 2019 | 39,307,012.27 | (6,604,796.48) | 32,702,215.79 |
| Nov 28 2019 | 39,195,048.18 | (6,576,684.83) | 32,618,363.35 |
| Dec 28 2019 | 39,081,563.15 | (6,548,573.17) | 32,532,989.97 |
| Jan 28 2020 | 38,965,323.00 | (6,519,711.13) | 32,445,611.88 |
| Feb 28 2020 | 38,847,485.52 | (6,490,795.48) | 32,356,690.04 |
| Mar 28 2020 | 38,728,094.32 | (6,461,879.83) | 32,266,214.49 |
| Apr 28 2020 | 38,607,139.36 | (6,432,964.19) | 32,174,175.18 |
| May 28 2020 | 38,485,423.08 | (6,404,048.54) | 32,081,374.54 |
| Jun 28 2020 | 38,362,128.00 | (6,375,132.89) | 31,986,995.11 |
| Jul 28 2020 | 38,238,056.48 | (6,346,217.25) | 31,891,839.23 |
| Aug 28 2020 | 38,112,390.93 | (6,317,301.60) | 31,795,089.33 |
| Sep 28 2020 | 34,558,198.00 | (6,288,385.95) | 28,269,812.04 |
| Oct 28 2020 | 34,430,125.99 | (6,259,470.31) | 28,170,655.68 |
| Nov 28 2020 | 34,300,434.11 | (6,230,554.66) | 28,069,879.45 |
| Dec 28 2020 | 34,169,111.89 | (6,201,639.01) | 27,967,472.88 |
| Jan 28 2021 | 34,036,189.47 | (6,171,951.51) | 27,864,237.96 |
| Feb 28 2021 | 33,901,565.69 | (6,142,208.88) | 27,759,356.81 |
| Mar 28 2021 | 33,765,285.02 | (6,112,466.24) | 27,652,818.78 |
| Apr 28 2021 | 33,627,336.77 | (6,082,723.61) | 27,544,613.16 |
| May 28 2021 | 33,488,531.33 | (6,052,980.98) | 27,435,550.35 |
| Jun 28 2021 | 33,348,041.97 | (6,023,238.34) | 27,324,803.63 |
| Jul 28 2021 | 33,206,679.01 | (5,993,495.71) | 27,213,183.30 |
| Aug 28 2021 | 33,063,615.60 | (5,963,753.07) | 27,099,862.52 |
| Sep 28 2021 | 29,491,917.68 | (5,934,010.44) | 23,557,907.24 |
| Oct 28 2021 | 29,346,241.52 | (5,904,267.81) | 23,441,973.72 |
| Nov 28 2021 | 29,198,837.05 | (5,874,525.17) | 23,324,311.87 |
| Dec 28 2021 | 29,049,693.07 | (5,844,782.54) | 23,204,910.54 |
| Jan 28 2022 | 28,891,425.33 | (5,806,845.69) | 23,084,579.64 |
| Feb 28 2022 | 28,730,521.88 | (5,768,029.88) | 22,962,492.00 |
| Mar 28 2022 | 28,567,850.32 | (5,729,214.06) | 22,838,636.26 |
| Apr 28 2022 | 28,403,399.24 | (5,690,398.25) | 22,713,000.99 |
| May 28 2022 | 28,239,031.60 | (5,651,582.44) | 22,587,449.16 |
| Jun 28 2022 | 28,072,873.47 | (5,612,766.63) | 22,460,106.84 |
| Jul 28 2022 | 27,906,787.76 | (5,573,950.82) | 22,332,836.94 |
| Aug 28 2022 | 27,738,900.44 | (5,535,135.01) | 22,203,765.44 |
| Sep 28 2022 | 24,142,276.81 | (5,496,319.19) | 18,645,957.61 |
| Oct 28 2022 | 23,972,625.76 | (5,457,503.38) | 18,515,122.38 |
| Nov 28 2022 | 23,801,150.07 | (5,418,687.57) | 18,382,462.50 |
| Dec 28 2022 | 23,627,837.94 | (5,379,871.76) | 18,247,966.18 |
| Jan 28 2023 | 23,405,414.01 | (5,291,917.98) | 18,113,496.03 |
| Feb 28 2023 | 23,175,723.28 | (5,198,545.53) | 17,977,177.74 |
| Mar 28 2023 | 22,944,172.46 | (5,105,173.09) | 17,838,999.37 |
| Apr 28 2023 | 22,710,749.53 | (5,011,800.65) | 17,698,948.88 |
| May 28 2023 | 22,478,845.10 | (4,918,428.21) | 17,560,416.89 |
| Jun 28 2023 | 22,245,066.27 | (4,825,055.76) | 17,420,010.51 |
| Jul 28 2023 | 22,012,803.65 | (4,731,683.32) | 17,281,120.33 |
| Aug 28 2023 | 21,778,664.32 | (4,638,310.88) | 17,140,353.44 |

EXHIBIT 4  
TO  
EQUIPMENT SCHEDULE NO. 001

**DC SOLAR SCHEDULE 1**  
**STIPULATED LOSS VALUE TABLE** [1]  
**(amounts expressed in U.S. dollars)**

| [a] | [b] | [c] | [d] |
|---|---|---|---|
| Stipulated Loss Value Determination Date | Base Stipulated Loss Value | Section 467 Balance [2] | Stipulated Loss Value |
| Sep 28 2023 | 21,542,636.14 | (4,544,938.44) | 16,997,697.70 |
| Oct 28 2023 | 21,308,109.62 | (4,451,565.99) | 16,856,543.63 |
| Nov 28 2023 | 21,071,691.76 | (4,358,193.55) | 16,713,498.21 |
| Dec 28 2023 | 20,833,370.33 | (4,264,821.11) | 16,568,549.22 |
| Jan 28 2024 | 20,594,043.31 | (4,168,956.24) | 16,425,087.07 |
| Feb 28 2024 | 20,352,632.00 | (4,072,913.35) | 16,279,718.65 |
| Mar 28 2024 | 20,109,302.10 | (3,976,870.45) | 16,132,431.65 |
| Apr 28 2024 | 19,864,041.21 | (3,880,827.56) | 15,983,213.65 |
| May 28 2024 | 19,620,267.45 | (3,784,784.67) | 15,835,482.79 |
| Jun 28 2024 | 19,374,559.83 | (3,688,741.77) | 15,685,818.06 |
| Jul 28 2024 | 19,130,336.46 | (3,592,698.88) | 15,537,637.58 |
| Aug 28 2024 | 18,884,176.31 | (3,496,655.98) | 15,387,520.33 |
| Sep 28 2024 | 18,636,066.89 | (3,400,613.09) | 15,235,453.80 |
| Oct 28 2024 | 18,389,426.18 | (3,304,570.19) | 15,084,855.98 |
| Nov 28 2024 | 18,140,833.07 | (3,208,527.30) | 14,932,305.77 |
| Dec 28 2024 | 17,890,274.96 | (3,112,484.41) | 14,777,790.56 |
| Jan 28 2025 | 17,638,606.03 | (3,013,877.81) | 14,624,728.23 |
| Feb 28 2025 | 17,384,785.66 | (2,915,088.09) | 14,469,697.57 |
| Mar 28 2025 | 17,128,984.24 | (2,816,298.36) | 14,312,685.88 |
| Apr 28 2025 | 16,871,188.97 | (2,717,508.64) | 14,153,680.33 |
| May 28 2025 | 16,614,846.25 | (2,618,718.92) | 13,996,127.33 |
| Jun 28 2025 | 16,356,506.18 | (2,519,929.20) | 13,836,576.97 |
| Jul 28 2025 | 16,099,615.12 | (2,421,139.48) | 13,678,475.64 |
| Aug 28 2025 | 15,840,723.18 | (2,322,349.76) | 13,518,373.42 |
| Sep 28 2025 | 15,579,817.41 | (2,223,560.04) | 13,356,257.37 |
| Oct 28 2025 | 15,320,344.07 | (2,124,770.32) | 13,195,573.76 |
| Nov 28 2025 | 15,058,853.16 | (2,025,980.59) | 13,032,872.56 |
| Dec 28 2025 | 14,795,331.61 | (1,927,190.87) | 12,868,140.74 |
| Jan 28 2026 | 14,530,588.57 | (1,825,764.13) | 12,704,824.44 |
| Feb 28 2026 | 14,263,622.56 | (1,724,149.02) | 12,539,473.54 |
| Mar 28 2026 | 13,994,608.80 | (1,622,533.91) | 12,372,074.89 |
| Apr 28 2026 | 13,723,534.05 | (1,520,918.80) | 12,202,615.24 |
| May 28 2026 | 13,453,873.76 | (1,419,303.70) | 12,034,570.07 |
| Jun 28 2026 | 13,182,148.31 | (1,317,688.59) | 11,864,459.72 |
| Jul 28 2026 | 12,911,833.13 | (1,216,073.48) | 11,695,759.64 |
| Aug 28 2026 | 12,639,448.53 | (1,114,458.38) | 11,524,990.16 |
| Sep 28 2026 | 12,364,981.16 | (1,012,843.27) | 11,352,137.89 |
| Oct 28 2026 | 12,091,906.33 | (911,228.16) | 11,180,678.17 |
| Nov 28 2026 | 11,816,744.26 | (809,613.05) | 11,007,131.20 |
| Dec 28 2026 | 11,539,481.45 | (707,997.95) | 10,831,483.50 |
| Jan 28 2027 | 11,260,880.67 | (603,670.39) | 10,657,210.27 |
| Feb 28 2027 | 10,979,980.71 | (499,149.09) | 10,480,831.62 |
| Mar 28 2027 | 10,696,961.72 | (394,627.80) | 10,302,333.92 |
| Apr 28 2027 | 10,411,809.99 | (290,106.50) | 10,121,703.49 |
| May 28 2027 | 10,130,254.25 | (185,585.20) | 9,944,669.05 |
| Jun 28 2027 | 9,846,575.24 | (81,063.90) | 9,765,511.34 |
| Jul 28 2027 | 9,566,501.74 | 23,457.40 | 9,589,959.14 |
| Aug 28 2027 | 9,284,314.55 | 127,978.70 | 9,412,293.25 |
| Sep 28 2027 | 9,000,000.00 | 232,500.00 | 9,232,500.00 |

(1) Stipulated Loss Values have been computed to take into account the amount of Basic Rent otherwise payable on the Rent Payment Date.

(2) Section 467 Balance takes into account pro rata rent allocated since the prior Rent Payment Date.