**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

| | | |
|---|---|---|
| SUNTRUST EQUIPMENT FINANCE & LEASING CORP., | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 6:19-cv-01624-CEM-LRH |
| v. | ) ) | |
| INTERNATIONAL SPEEDWAY CORPORATION, | ) ) ) | |
| Defendant. | ) ) ) | |

**SUNTRUST EQUIPMENT FINANCE & LEASING CORP.'S**
**MOTION FOR SUMMARY JUDGMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................... 1

BACKGROUND .................................................................................................... 4

    A.    STEFL and DC Solar Enter Into the Master Lease............................ 4

    B.    DC Solar and ISC Enter Into the Sublease. ...................................... 5

    C.    DC Solar Assigns to STEFL and Grants STEFL a Security Interest in the Sublease. ......................................................................................... 8

    D.    DC Solar Defaults Under the Master Lease and STEFL Exercises Its Right to Seek Payment Directly from ISC................................................... 8

LEGAL STANDARD............................................................................................ 10

ARGUMENT ....................................................................................................... 10

    I.    THERE IS NO GENUINE DISPUTE THAT ISC BREACHED THE SUBLEASE BY FAILING TO PAY RENT TO STEFL (COUNT I). .......... 11

    A.    ISC Has a Contractual Obligation to Pay Rent................................. 12

    B.    ISC Breached the Sublease by Not Paying Rent, and Has No Defense Based on DC Solar's or STEFL's Purported Non-Performance. ................... 13

    C.    STEFL Is Entitled to Outstanding Rent Under the Sublease......................... 15

    D.    ISC's Contractual Obligation to Pay Rent Has Not Been Terminated. .......... 16

    II.    ISC HAS FAILED TO RAISE A GENUINE ISSUE OF MATERIAL FACT IN SUPPORT OF ANY OF ITS COUNTERCLAIMS...................... 23

    A.    ISC's Unjust Enrichment Claim (Count I) Fails Because ISC Was Under a Contractual Obligation to Rent the MSGs. .................................................. 23

    B.    ISC's Declaratory Judgment Claim (Count II) Fails Because It is Duplicative of ISC's Defenses to STEFL's Contract Claim. ........................ 25

    C.    ISC Has Failed to Establish the Required Elements of Trespass to Land (Count III). .................................................................................................. 26

    III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT AGAINST ISC ON ITS AFFIRMATIVE DEFENSES 1, 2, 3, AND 5. ......................... 27

CONCLUSION......................................................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Addison Express, L.L.C. v. Medway Air Ambulance, Inc.*,
   No. Civ. 3:04-CV-1954-H, 2006 WL 1489385 (N.D. Tex. May 19,
   2006) ...................................................................................................................23

*Aetna Cas. & Sur. Co. v. Quarles*,
   92 F.2d 321 (4th Cir. 1937) ...............................................................................25

*Allen & Co., LLC v. Sanford USD Med. Ctr.*,
   No. 08 CV 4596, 2011 WL 941195 (N.D. Ill. Mar. 15, 2011) ....................................1

*Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*,
   773 F. Supp. 2d 1317 (M.D. Fla. 2011).................................................................23

*Applera Corp. v. MP Biomedicals, LLC*,
   173 Cal. App. 4th 769 (Cal. Ct. App. 2009) ............................................................12

*Bishop v. Fla. Specialty Paint Co.*,
   389 So.2d 999 (Fla. 1980)....................................................................................26

*Bowleg v. Bowe*,
   502 So.2d 71 (Fla. 3d DCA 1987) ........................................................................23

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................................10

*Chung v. Johnston*,
   274 P.2d 922 (Cal. Ct. App. 1954) .......................................................................28

*Cluck-U Chicken, Inc. v. Cluck-U Corp.*,
   358 F. Supp. 3d 1295 (M.D. Fla. 2017)..................................................................11

*Cobb. v. Ironwood Country Club*,
   233 Cal. App. 4th 960 (Cal. Ct. App. 2015) ...........................................................20

*Coles v. Glaser*,
   2 Cal. App. 5th 384 (Cal. Ct. App. 2016) ...............................................................11

*Colo. Interstate Corp. v. CIT Grp./Equip. Financing, Inc.*,
   993 F.2d 743 (10th Cir. 1993) .............................................................................14

*Copelco Capital, Inc. v. Johnson*,
No. B164376, 2004 WL 1559652 (Cal. Ct. App. July 13, 2004) ...............................14

*Fairlane Estates, Inc. v. Carrico Const. Co.*,
228 Cal. App. 2d 65 (Cal. Ct. App. 1964) .................................................................20

*FEI Enterprises, Inc. v. Yoon*,
194 Cal. App. 4th 790 (Cal. Ct. App. 2011) ............................................................27

*Gunning v. Equestleader.com, Inc.*,
253 So. 3d 646 (Fla. 2d DCA 2017) .........................................................................26

*James v. Pawsey*,
162 Cal. App. 2d 740 (Cal. 1958) .............................................................................19

*Knights Armament Co. v. Optical Sys. Tech., Inc.*,
568 F. Supp. 2d 1369 (M.D. Fla. 2008)....................................................................24

*Lance Camper Mfg. Corp. v. Rep. Indem. Co. of Am.*,
44 Cal. App. 4th 194 (Cal. Ct. App. 1996) ..............................................................23

*Lentz v. McMahon*,
777 P.2d 83 (Cal. 1989) ...........................................................................................30

*Motown Record Corp. v. Brockert*,
160 Cal. App. 3d 123 (Cal. Ct. App. 1984) ..............................................................21

*Niederer v. Ferreira*,
189 Cal. App. 3d 1485 (Cal. Ct. App. 1987) ............................................................10

*In re O.P.M. Leasing Servs., Inc.*,
21 B.R. 993 (Bankr. S.D.N.Y. 1982)....................................................................2, 14, 15

*Principal Mut. Life Ins. Co. v. Vars, Pave, McCord & Freedman*,
65 Cal. App. 4th 1469 (Cal. Ct. App. 1998) ........................................................17, 19

*Sabo v. Fasano*,
154 Cal. App. 3d 502 (Cal. Ct. App. 1984) ..............................................................29

*Shibata v. Lim*,
133 F. Supp. 2d 1311 (M.D. Fla. 2000)....................................................................23

*SunTrust Equipment Finance & Leasing Corp. v. Int'l Speedway Corp.*,
No. 1:19-cv-01493-CC (N.D. Ga.) ........................................................................9, 15

*Syufy Enters., L.P. v. City of Oakland*,
   104 Cal. App. 4th 869 (Cal. Ct. App. 2002) ................................................................17

*Universal Express, Inc. v. U.S. SEC*,
   177 F. App'x 52 (11th Cir. Apr. 18, 2006) ....................................................................9

*Vallely Investments, LP v. BancAmerica Com. Corp.*,
   88 Cal. App. 4th 816 (Cal. Ct. App. 2001) ..................................................................18

*Wells Fargo Bank Minnesota, N.A. v. Nassau Broad. Partners, L.P.*,
   No. 01 Civ. 11255 (HB), 2003 WL 22339299 (S.D.N.Y. Oct. 10,
   2003) ..............................................................................................................................14

*Wells Fargo Bank, N.A. v. BrooksAmerica Mortg. Corp.*,
   419 F.3d 107 (2d Cir. 2005) ...................................................................................14, 15

*Zurstrassen v. Stonier*,
   786 So. 2d 65 (Fla. 4th DCA 2001) ..............................................................................28

## Statutes

Cal. Civ. Code § 1559 .........................................................................................................12

Cal. Civ. Code § 1596 .........................................................................................................29

Cal. Civ. Code § 1598 .........................................................................................................29

Cal. Com. Code § 9102 ........................................................................................................13

Cal. Com. Code § 9607 ........................................................................................................13

Cal. Com. Code § 10102 ......................................................................................................22

Cal. Com. Code § 10505 .................................................................................................19, 22

## Other Authorities

Fed. R. Civ. P. 56(a) ...........................................................................................................10

Rest. (2d) Contracts § 311 ...................................................................................................19

**INTRODUCTION**

Plaintiff / Counter-Defendant SunTrust Equipment Finance & Leasing Corp. ("STEFL") moves for summary judgment in its favor on Counts I and II of its Amended Complaint, as well as on Defendant / Counter-Plaintiff International Speedway Corporation ("ISC")'s counterclaims and affirmative defenses 1, 2, 3, and 5.

Count I of STEFL's Amended Complaint asserts a straightforward breach of contract claim against ISC that can and should be resolved on the undisputed facts and legal construction of the contracts at issue. ISC signed an equipment sublease with DC Solar Distribution, Inc. ("DC Solar"). That Sublease included a "hell-or-high-water" clause, which made clear that ISC had an "*absolute and unconditional in all events*" obligation to pay rent regardless of the occurrence of any alleged defaults by DC Solar. DC Solar both assigned and granted a security interest in the right to receive that rent to STEFL, which was also an express third-party beneficiary of the Sublease. After DC Solar subsequently defaulted on its obligations to STEFL, STEFL exercised its contractual right to receive rent directly from ISC. Despite retaining possession of the equipment, ISC refused to pay.

There is nothing unusual about the arrangement between STEFL, DC Solar, and ISC. To the contrary, "courts strictly enforce hell or high water clauses" because "they are considered essential to the equipment leasing industry." *Allen & Co., LLC v. Sanford USD Med. Ctr.*, No. 08 CV 4596, 2011 WL 941195, at *3 (N.D. Ill. Mar. 15, 2011). And as courts recognize, it is irrelevant whether it is the lessor or an assignee who seeks to enforce the clause. In either case, ISC's obligation to pay rent remains *absolute*, making

summary judgment particularly appropriate.  *See In re O.P.M. Leasing Servs., Inc.*, 21 B.R. 993, 1007 (Bankr. S.D.N.Y. 1982) (noting courts "have found summary judgment in favor of the lessor *or its assignee* because no facts submitted or to be submitted by the lessee opposing summary judgment *are in any way relevant* to the lessee's unequivocal liability based on these hell and high water provisions") (emphasis added).

In light of the Sublease's hell-or-high-water clause, ISC has tried to argue that the Sublease has been "terminated," either by STEFL or ISC.  This is incorrect.  ISC bases its argument that STEFL terminated the Sublease on a January 28, 2019 letter that STEFL sent to DC Solar terminating schedules to the master lease between STEFL and DC Solar.  But the contracts are clear that the Sublease—and ISC's obligations under the Sublease—survived termination of those schedules.  Moreover, by the time STEFL sent this letter to DC Solar, ISC already had a direct contractual obligation to STEFL to pay rent.

ISC's argument that it terminated the Sublease on the basis of DC Solar's alleged breaches under the Sublease and separate sponsorship agreements (to which STEFL is not a party), meanwhile, rests on a purported termination right contained in an "Addendum" that ISC and DC Solar signed the same day as the Sublease.  ISC intentionally concealed this Addendum from STEFL, and ISC's misrepresentations about the Addendum form the basis of STEFL's alternative fraud claim against ISC.  STEFL's alternative fraud claim raises questions of fact for the jury to decide as necessary, but the Court need not reach those issues to grant summary judgment to STEFL on its contract claim, for at least three reasons.

*First*, the purported termination rights in the Addendum are an unenforceable abrogation of STEFL's rights as a third-party beneficiary, including its rights to receive payment pursuant to the Sublease's hell-or-high-water clause. *Second*, even if the Addendum is enforceable, as ISC contends, ISC's only remedy for DC Solar's alleged default under the Addendum was to terminate the Sublease upon written notice. Here, ISC sent its purported notice of termination of the Sublease to DC Solar on May 22, 2019, more than four months after STEFL had placed ISC on notice to pay rent directly to STEFL, more than two months after STEFL had notified ISC of its default under the Sublease, and more than a month after STEFL accelerated rent. Thus, even under the plain terms of the Addendum, ISC's purported termination of the Sublease did not relieve it of its accrued obligation to pay rent. *Third*, and relatedly, California's version of the Uniform Commercial Code independently provides that ISC's obligation to pay rent would survive any termination of the Sublease by either STEFL or ISC, based on ISC's prior breaches of the Sublease.

ISC has also failed to raise a genuine issue of material fact on any of its three counterclaims. ISC's unjust enrichment counterclaim fails as a matter of law because there is a contractual agreement between STEFL and ISC. ISC's declaratory judgment counterclaim, meanwhile, is duplicative of its defenses to STEFL's Amended Complaint. And ISC has failed to explain why STEFL's equipment lacks a legal right to be on ISC's property, as required for its trespass claim. Finally, ISC has failed to produce evidence to support a number of its affirmative defenses.

## BACKGROUND

The key agreements and events surrounding STEFL's contract claim against ISC are generally undisputed.  No genuine issue for trial exists for any of the facts set forth below.

### A.       STEFL and DC Solar Enter Into the Master Lease.

STEFL's contract claim arises from a three-party transaction between it, ISC, and DC Solar.  Pursuant to that transaction, STEFL purchased 500 mobile solar generators ("MSGs") from DC Solar Solutions, Inc., an affiliate of DC Solar.  STEFL then leased the MSGs to DC Solar, which then subleased them to ISC.

The general terms under which STEFL leased the MSGs to DC Solar are set forth in a Master Equipment Lease Agreement No. 10194, dated September 25, 2017.  *See* Ex. 1 (Miller Decl.), Ex. A ("Master Lease").  Specific provisions for the MSGs, including rent, were set forth in separate Equipment Schedules No. 001 and 002 to the Master Lease, which incorporated the terms of the Master Lease.  *See* Miller Decl., Exs. B & C ("Schedules").  STEFL entered into Schedule No. 001 on September 28, 2017, which is the same date it purchased the first tranche of 300 MSGs from DC Solar.  *See* Miller Decl., Ex. E (Sept. 28, 2017 Sale Agreement).  STEFL entered into Schedule No. 002 on November 3, 2017, which is the same date it purchased the second tranche of 200 MSGs from DC Solar.  *See* Miller Decl., Ex. F (Nov. 3, 2017 Sale Agreement).

The Master Lease contained detailed default and remedy provisions.  Among other things, upon an Event of Default, STEFL could "cancel or terminate the Schedule." Master Lease ¶ 15(a)(ii).  STEFL could also "exercise any other right or remedy set forth

in the related Schedule or other Lease Documents . . . ."  *Id.* ¶ 15(a)(ix).  STEFL could

"exercise at its sole option any one or more of" these remedies.  *Id.* ¶ 15(a).  The Master

Lease defined "Lease Documents" to include all "documents and agreements executed in

connection [with]" the Master Lease or Schedules.  *Id.* ¶ 1.

The Master Lease expressly contemplated that DC Solar would sublease the

MSGs to ISC.  Under the Master Lease, DC Solar could sublease the MSGs only under a

"Permitted Sublease" approved by STEFL, and only to a "Permitted Sublessee," defined

as ISC or any other sublessee with STEFL's consent.  Master Lease, ¶ 16(a) & Appx. A

at p.15.

### B.    DC Solar and ISC Enter Into the Sublease.

On September 27, 2017, shortly after STEFL and DC Solar entered into the

Master Lease (but before STEFL and DC Solar executed the Schedules), DC Solar and

ISC entered into Mobile Solar Equipment Sublease No. 3731 ("Sublease").  *See* Miller

Decl., Ex. D.  Under the Sublease, ISC agreed to rent the 500 MSGs from DC Solar, with

rent paid monthly over a term of 120 months.  Sublease at p.1.  The Sublease

incorporated the Master Lease by reference, used the Master Lease's defined terms, and

provided that ISC's "use of the [MSGs] is subject to all terms and conditions of the

Master Lease."  *Id.* at p.1 & ¶ 2.  Paragraph 20 of the Sublease stated that "[t]here are no

Sublease terms which are not contained herein or in the Master Lease."  *Id.* ¶ 20.

Paragraph 14 of the Sublease listed the sublessor's remedies in the event of a

default by the sublessee.  Among other things, upon the occurrence of a default by the

sublessee, the sublessor could "declare each and every obligation of Sublessee to

5

Sublessor under this Sublease immediately due and payable and recover the balance of rents and charges due under this Sublease." *Id.* ¶ 14(a).  Paragraph 14 also entitled the sublessor to collection costs, reasonable attorney's fees, and out-of-pocket expenses.  *Id.* ¶ 14(c).  The same paragraph clarified that "[n]o failure on the part of Sublessor to exercise, and no delay in exercising, any right or remedy hereunder shall operate as a waiver thereof."  *Id.* ¶ 14.

The Sublease was clear that ISC could not, under *any* circumstances, cancel or terminate its obligation to pay rent.  Paragraph 14 of the Sublease allowed the sublessor—but not the sublessee—to terminate the Sublease upon default.  *Id.* ¶ 14(d). Paragraph 16 provided that the Sublease shall not terminate "by reason of any defect in or damage to or loss or destruction of" the MSGs, "from whatever cause . . . ."  *Id.* ¶ 16. Most notably, the end of the Sublease contained a "hell-or-high-water" clause in capitalized, bolded font, making clear that ISC's payment obligation was absolute:

> THIS SUBLEASE IS NON-CANCELLABLE FOR THE TERM INDICATED ABOVE.  SUBLESSEE'S OBLIGATION TO PAY RENT AND ANY OTHER AMOUNTS OWING HEREUNDER IS ABSOLUTE AND UNCONDITIONAL IN ALL EVENTS.  *Id.* at p.6.

STEFL was the express third-party beneficiary of the Sublease.  *Id.* ¶ 19.  The Sublease explicitly stated that, as a third-party beneficiary, STEFL was "entitled to the rights and benefits hereunder and may enforce the provisions hereof as if it were a party hereto."  *Id.*

On September 27, 2017, the same day as they signed the Sublease, DC Solar and ISC also signed an "Addendum to Mobile Solar Equipment Sublease" ("Addendum"). *See* Ex. 2.  Despite the Sublease's conspicuous language that it was "NON-

CANCELLABLE," the Addendum purported to grant ISC the right to terminate the Sublease upon 30 days' notice if DC Solar failed "to observe or perform any material obligation required by the Sublease." Addendum ¶ 22. The Addendum further purported to provide that if DC Solar defaulted on any obligations to ISC, ISC could then declare a cross-default "and seek all available remedies for such default, including but not limited to termination of such agreement." *Id.* ¶ 23. The Addendum also purported to provide that if DC Solar failed to make payments under certain defined sponsorship agreements with ISC, then ISC would "have the right to terminate the Sublease upon written notice to Sublessor." *Id.* ¶ 24.

ISC has admitted that it never disclosed or presented the Addendum to STEFL. *See* Ex. 3 (ISC Responses to STEFL's First Interrogatories) at 10–11.[1] STEFL did not receive a copy of the Addendum prior to purchasing and leasing the MSGs, in reliance on the Sublease. *See* Ex. 4 (Decl. of Lawrence D. Cooper) ¶¶ 4–5. This is despite the Addendum clearly being part of the original bargain struck between ISC and DC Solar. ISC's representatives have admitted, in a sworn court declaration and in ISC's May 22, 2019 termination notice, that the equipment sublease and sponsorship agreements that the Addendum linked together were all "part of the bargain struck between the parties," Ex. 5 (Decl. of J. Chitwood, *In re Double Jump, Inc.*, Doc. 179, No. 19-50102-gs (Bankr. D. Nev. Feb. 22, 2019) ¶ 44, and part of "one integrated agreement entered into among the parties as part of the bargain struck by and among the parties," Ex. 6 (May 22, 2019

---

[1] ISC and DC Solar executed a second addendum to the Sublease on March 6, 2018. *See* Am. Compl. (Doc. 30) ¶ 60; ISC Answer (Doc. 60) ¶ 60.

Letter) at 2.  ISC's former chief operation officer admitted at his deposition that the terms in the Addendum were "critical" to allowing the transaction to go forward.  Ex. 7 (Chitwood Depo. Tr. at 95:3–96:8).

### C.   DC Solar Assigns to STEFL and Grants STEFL a Security Interest in the Sublease.

In conjunction with the two Schedules, STEFL and DC Solar entered into two "Subleasing Consent and Amendment" agreements, dated September 28, 2017 and November 3, 2017.  *See* Miller Decl., Exs. G & I ("Consent Agreements").[2]  Through the Consent Agreements, DC Solar granted STEFL a security interest in the Sublease and Sublease proceeds.   Consent Agreements ¶ 2; *see also* Miller Decl., Ex. J (UCC Financing Statement).  DC Solar also made an unqualified assignment of its rights under the Sublease to STEFL.  Consent Agreements ¶ 4.  The Consent Agreements provided that, upon an event of default under the Master Lease and Schedules by DC Solar, STEFL (1) could "exercise all of the rights and remedies set forth in the Lease or any Sublease Agreement" and (2) "shall have the right to notify any Sublessee under any Sublease Agreement to make payments directly to STEFL . . . ."  *Id.* ¶ 5.

### D.   DC Solar Defaults Under the Master Lease and STEFL Exercises Its Right to Seek Payment Directly from ISC.

On December 28, 2018, DC Solar missed a payment under Schedule 001.  Cooper Decl. ¶ 6.  On January 4, 2019, STEFL gave DC Solar notice that this missed payment

---

[2] The Consent Agreement for Schedule No. 001 was originally dated September 27, 2017, and then corrected to September 28, 2017 to correspond to the closing of Schedule No. 001.  *See* Miller Decl., ¶ 8 & Ex. H (Sept. 27, 2017 Subleasing Consent and Amendment).

constituted a default under Schedule 001, Schedule 002 (per a cross-default provision), and the Master Lease. *See* Cooper Decl., ¶ 7 & Ex. A.

On January 15, 2019, STEFL notified ISC of DC Solar's default and instructed ISC to send all rent payments under the Sublease to STEFL directly. *See* Cooper Decl., Ex. B (Jan. 15, 2019 Letter). ISC, despite retaining possession of the MSGs, refused to make any payments. *See* Ex. 8 (ISC's Responses to STEFL's Requests for Admission) at 11 (RFA #17). On March 8, 2019, STEFL informed ISC that it would exercise available remedies under the Sublease if ISC did not cure its late payments within ten days. *See* Cooper Decl., Ex. C (Mar. 8, 2019 Letter). ISC did not do so. STEFL then commenced an action against ISC in the United States District Court for the Northern District of Georgia. *See SunTrust Equipment Finance & Leasing Corp. v. Int'l Speedway Corp.*, No. 1:19-cv-01493-CC (N.D. Ga.). Through its amended complaint in that action, filed on April 9, 2019, STEFL exercised its right to accelerate all outstanding rental payments under the Sublease. *See* Ex. 9 (Amend. Compl., Doc. 5, *SunTrust Equipment Finance & Leasing Corp. v. Int'l Speedway Corp.*, No. 1:19-cv-01493-CC (N.D. Ga. Apr. 9, 2019)) at 9–10.[3]

STEFL voluntarily dismissed its action in the Northern District of Georgia on August 22, 2019, and filed the present action on the same day. *See* Doc. 1. STEFL filed an Amended Complaint on October 17, 2019, which brings four counts against ISC, including for breach of contract (Count I) and an alternative count for a declaratory judgment that the addenda to the Sublease are unenforceable (Count II). *See* Doc. 30 at

---

[3] This Court may take judicial notice of pleadings filed in other courts. *See, e.g.*, *Universal Express, Inc. v. U.S. SEC*, 177 F. App'x 52, 53 (11th Cir. Apr. 18, 2006).

¶¶ 91–121.   On September 8, 2020, this Court denied ISC's motion to dismiss the Amended Complaint.  *See* Doc. 69.  On September 22, 2020, ISC filed its answer and affirmative defenses to the Amended Complaint, along with counterclaims for unjust enrichment, declaratory judgment, and trespass.  *See* Doc. 70.

## LEGAL STANDARD

Summary judgment is appropriate when a court concludes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  This includes where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Under California law, which governs STEFL's contract claim (see below), "[w]here a contract is clear and unambiguous, it is interpreted by the language therein without resort to extrinsic evidence."  *Niederer v. Ferreira*, 189 Cal. App. 3d 1485, 1499 (Cal. Ct. App. 1987).  "Such interpretation is a question of law which may be resolved on summary judgment."  *Id.* (citation omitted).

## ARGUMENT

STEFL's contract claim against ISC is simple.  Under the plain and unambiguous terms of the Sublease, ISC agreed to an *absolute and unconditional* obligation to pay rent to DC Solar.  And under the plain and unambiguous terms of the Master Lease and Consent Agreements, DC Solar conveyed the right to those rental payments to STEFL.  Consequently, ISC now has an absolute and unconditional obligation to pay rent to STEFL.  ISC's arguments to the contrary all fail as a matter of law.

10

The Court should therefore grant summary judgment for STEFL on Count I of its Amended Complaint.  And the same facts supporting summary judgment on Count I also support summary judgment for STEFL's alternative Count II, which seeks a declaratory judgment that the Addendum to the Sublease is unenforceable.  Conversely, it is impossible for ISC to establish at trial the necessary elements of its counterclaims or most of its affirmative defenses.

## I.     THERE IS NO GENUINE DISPUTE THAT ISC BREACHED THE SUBLEASE BY FAILING TO PAY RENT TO STEFL (COUNT I).

STEFL's contract claim against ISC arises under California law.  As a federal court sitting diversity, this Court applies "the substantive rules of the forum state, including its choice of law rules."  *Cluck-U Chicken, Inc. v. Cluck-U Corp.*, 358 F. Supp. 3d 1295, 1307 (M.D. Fla. 2017) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  "Under Florida law, a contractual choice-of-law provision is enforceable 'unless the law of the chosen forum contravenes strong public policy.'"  *Id.* (citing *Maxcess, Inc. v. Lucent Techs., Inc.*, 433 F.3d 1337, 1341 (11th Cir. 2015)).  The Sublease provides that it shall be construed and enforced pursuant to the laws of California.  *See* Sublease, ¶ 20.[4]

Under California law, "[t]he elements of a cause of action for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3)

---

[4] The Master Lease is governed by the laws of New York.  *See* Master Lease, ¶ 20. While the Court need not consider New York law to conclude that ISC breached the Sublease, *see* Sublease ¶ 2 (noting Sublease terms prevail in case of conflict), the Court has also noted that "the elements for a breach of contract claim under New York law or California law are essentially the same."  Sept. 8, 2020 Order Denying ISC's Mot. to Dismiss (Doc. 69) at 10 n.8.

defendant's breach, and (4) the resulting damages to plaintiff." *Coles v. Glaser*, 2 Cal. App. 5th 384, 391 (Cal. Ct. App. 2016) (internal quotation marks and citation omitted). As explained below, ISC cannot establish any genuine issue of fact that these elements are not met.

### A.     ISC Has a Contractual Obligation to Pay Rent.

While STEFL may not have signed the Sublease, ISC still has a contractual obligation to pay STEFL rent.  This is so for several independent reasons.  First, there is no question that STEFL has the right, as an express third-party beneficiary of the Sublease, to enforce the Sublease's terms.  This is plainly stated in the Sublease.  *See* Sublease ¶ 19.  It is also consistent with California law.  *See* Cal. Civ. Code § 1559 ("A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it.").

Second, through the Consent Agreements, DC Solar assigned its rights under the Sublease—including the right to receive rent from ISC—to STEFL.  This too creates a contractual relationship between ISC and STEFL.  *See, e.g.*, *Applera Corp. v. MP Biomedicals, LLC*, 173 Cal. App. 4th 769, 786 (Cal. Ct. App. 2009) (assignee of contract rights had standing to sue obligor for breach of contract).  As the Court noted in its ruling denying ISC's motion to dismiss, this assignment was "clear and unqualified."  Doc. 69 at 16.  Nothing in the Sublease prohibited DC Solar from assigning its rights to STEFL.

Third, DC Solar also granted STEFL a security interest in its rights under the Sublease.  *See* Consent Agreements, ¶ 2.  After DC Solar defaulted under the Master Lease, STEFL exercised that security interest by notifying ISC to make payment directly

to it, as STEFL was entitled to do under California's Uniform Commercial Code.  *See* Cal. Com. Code § 9607(a)(1).  Moreover, California's UCC also entitled STEFL, as the secured party, to enforce ISC's obligations under the Sublease (which is STEFL's collateral).  *See id.* § 9607(a)(3) (secured party may "[e]nforce the obligations of an account debtor or other person obligated on collateral and exercise the rights of the debtor with respect to the obligation of the account debtor or other person obligated on collateral to make payment . . . .").[5]  This accordingly provides STEFL an additional basis for enforcing ISC's unconditional obligation to pay rent.

### B.     ISC Breached the Sublease by Not Paying Rent, and Has No Defense Based on DC Solar's or STEFL's Purported Non-Performance.

With respect to the third element of STEFL's contract claim, there is no dispute that ISC did not make any rental payments to STEFL under the Sublease.  *See* Ex. 8 (ISC's Responses to STEFL's Requests for Admission) at 11 (RFA #17).  And there is no genuine dispute that failure to make required rental payments is a breach of the Sublease. *See* Sublease ¶ 13(a) (failure to pay rent when due gives rise to default).

With respect to the second element of STEFL's contract claim—plaintiff's performance or excuse for nonperformance—ISC acknowledges that it retains possession of the MSGs.  *See* ISC Counterclaim (Doc. 70) ¶ 36.  More importantly, however, the Sublease's hell-or-high-water clause renders moot any claim by ISC that its own performance is excused by STEFL's or DC Solar's nonperformance.  As noted above,

---

[5] As the party obligated on the Sublease, ISC is an "account debtor" under the UCC.  *See* Cal. Com. Code § 9102(3).  DC Solar is the "debtor."  *See id.* § 9102(28).

that clause states that the Sublease is "non-cancellable," and that ISC's obligation to pay rent "*is absolute and unconditional in all events*."  Sublease, at p.6.

The importance of this clause to the equipment leasing industry cannot be overstated.  Hell-or-high-water clauses are "essential to the equipment leasing industry." *Copelco Capital, Inc. v. Johnson*, No. B164376, 2004 WL 1559652, at *5 (Cal. Ct. App. July 13, 2004).  As courts have noted, "there are significant policy reasons for upholding hell or high water clauses," as they aid "parties in obtaining financing that would not otherwise be available."  *Colo. Interstate Corp. v. CIT Grp./Equip. Financing, Inc.*, 993 F.2d 743, 749 (10th Cir. 1993).  This is because, absent such a clause, a financing assignee's only remedy in the event of a default by the lessee "would be to repossess equipment with substantially diminished value."  *In re OPM*, 21 B.R. at 1007. Accordingly, "[t]o deny their effect as a matter of law would seriously chill business in [the equipment leasing] industry . . . ."  *Id.*

For this reason, "[c]ourts have uniformly given full force and effect to 'hell and high water' clauses in the face of various kinds of defaults by the party seeking to enforce them."  *Wells Fargo Bank, N.A. v. BrooksAmerica Mortg. Corp.*, 419 F.3d 107, 110 (2d Cir. 2005) (quoting *O.P.M.*, 21 B.R. at 1006–07).  This includes courts in California. *See, e.g.*, *Copelco Capital*, 2004 WL 1559652, at *4.  Whether the clause "is harsh and one-sided" is irrelevant.  *Wells Fargo Bank Minnesota, N.A. v. Nassau Broad. Partners, L.P.*, No. 01 Civ. 11255 (HB), 2003 WL 22339299, at *7 (S.D.N.Y. Oct. 10, 2003).

Hell-or-high-water clauses are also frequently used in transactions, like here, where the lessor assigns its rights under the lease to a third party that provided the

equipment or funding for the deal.  Courts have also held that such an assignee of an equipment lease containing a hell-or-high-water clause may enforce the lease against the lessee despite the lessor's own default.  *See Wells Fargo Bank*, 419 F.3d at 111; *see also In re OPM*, 21 B.R. at 1007.  That is precisely the situation here: STEFL is an assignee of an equipment lease between DC Solar (sublessor) and ISC (sublessee) that contains a hell-or-high-water clause.  Accordingly, even if DC Solar or STEFL has failed to perform under the Sublease, ISC would still have to pay rent to STEFL.  That is the bargain ISC struck when it signed the Sublease.

### C.  STEFL Is Entitled to Outstanding Rent Under the Sublease.

With respect to damages, the Sublease's remedies provision provides that, upon a default by the sublessee, the sublessor may declare all outstanding rent immediately due and payable.  Sublease ¶ 14(a).  STEFL did this in April 2019 when it filed its amended complaint in the Northern District of Georgia action.  *See* Ex. 9 (Amend. Compl., Doc. 5, *SunTrust Equipment Finance & Leasing Corp. v. Int'l Speedway Corp.*, No. 1:19-cv-01493-CC (N.D. Ga. Apr. 9, 2019)) at 9–10.  Per the Sublease's remedies section, STEFL is also entitled to reasonable attorneys' fees.  Sublease ¶ 14(c).

The report of STEFL's expert witness, J. Les Alexander, sets out the calculation of outstanding rent under the Sublease.  Per the calculations in appendices 1 and 2 of his report, ISC owes STEFL $46,903,073 in outstanding rent.  *See* Ex. 10 (Alexander Report)

at Appx. 1 & 2.[6]  ISC's damages expert, Michelle Riley, expressed no disagreement with the computation of these rental payments.  *See* Ex. 11 (Riley Depo. Tr. at 141–43).

> **D.      ISC's Contractual Obligation to Pay Rent Has Not Been Terminated.**

In its motion to dismiss, ISC contended that it no longer had an obligation to pay rent to STEFL because the Sublease had been terminated.  The Court did not address this argument because it was based on facts outside the pleadings.  *See* Doc. 69 at 14.  These facts, which are now in play on summary judgment, are undisputed and establish that the Sublease was not terminated.  Moreover, even if the Sublease had somehow been terminated, ISC would still be obligated to pay outstanding rent to STEFL.

> **1.      STEFL Did Not Terminate the Sublease.**

ISC's principal argument regarding termination is that a January 28, 2019 letter sent by STEFL to DC Solar, which invoked STEFL's rights under the Master Lease to terminate the Schedules, had the effect of terminating the Sublease as well.  *See* ISC Mot. to Dismiss (Doc. 22) at 7–9; Ex. 12 (Jan. 28, 2019 Letter).  Contrary to ISC's suggestions, however, this letter did not terminate the Master Lease.  Rather, it invoked STEFL's right under Paragraph 15(a)(ii) of the Master Lease to terminate the *Schedules* upon DC Solar's default.  Ex. 12 (Jan. 28, 2019 Letter).

The Master Lease itself—and thus by incorporation also the Sublease—provide that termination of the Schedules does *not* terminate the Sublease.  Specifically, Paragraph 17(c) of the Master Lease states that the "agreements" contained in any "Lease

---

[6] To further assist the Court, Mr. Alexander's report also includes calculations of prejudgment interest, using an assumed trial date of May 1, 2021, *see* Ex. 10 at Appx. 1 & 2, though these amounts will obviously depend on the actual date of any final judgment.

Documents shall survive the expiration or earlier termination or cancellation of any Schedule."  As noted above, the Master Lease defines "Lease Documents" to include any documents "executed in connection [with]" the Master Lease and Schedules, which would include the Sublease.  Master Lease ¶ 1.  And as also noted above, the Sublease incorporates the Master Lease by reference and provides that ISC's use of the MSGs "is subject to all terms and conditions of the Master Lease," meaning that ISC agreed to these terms as well.  Sublease at p.1.

California law recognizes that a sublease may survive the termination of a head lease if the relevant agreements indicate an intent that it do so.  For example, a mortgagee of real property may enforce, as a third-party beneficiary, an attornment provision in a lease (requiring the lessee to continue abiding by the lease terms) even after foreclosing on the real property and extinguishing the lease.  *See Principal Mut. Life Ins. Co. v. Vars, Pave, McCord & Freedman*, 65 Cal. App. 4th 1469, 1483, 1487–88 (Cal. Ct. App. 1998).  Such intent is manifest here: the Master Lease (which is incorporated into the Sublease) provides that the Sublease survives termination of the Schedules, the Consent Agreements gave STEFL the right to demand payment directly from ISC, and the Sublease's hell-or-high-water clause made clear that ISC's obligation to pay that rent was "non-cancellable" and "absolute and unconditional in all events."

Moreover, by the time STEFL terminated the Equipment Schedules with DC Solar, STEFL already had a direct contractual relationship with ISC through STEFL's status as a third-party beneficiary, DC Solar's assignment of rights to STEFL, and STEFL's security interest.  Put differently, DC Solar was no longer a necessary "link"

connecting STEFL and ISC.  STEFL's relationship with ISC was thus unlike that of a real estate landlord and sublessor, where termination of the head lease may cut off the privity of estate needed by the sublessor to maintain possession.  *See Syufy Enters., L.P. v. City of Oakland*, 104 Cal. App. 4th 869, 886 (Cal. Ct. App. 2002).  Rather, and as California law has also recognized, once STEFL established a direct contractual relationship with ISC, it no longer depended on ISC's continued contractual relationship with DC Solar.  *See Vallely Investments, LP v. BancAmerica Com. Corp.*, 88 Cal. App. 4th 816, 823–24 (Cal. Ct. App. 2001) (lessor could enforce, as third-party beneficiary, assignment of lease obligations even after lease is rejected in bankruptcy).

<ol start="2">
<li><u>ISC Did Not Terminate the Sublease</u>.</li>
</ol>

ISC may also argue that, pursuant to the undisclosed addendum it entered into with DC Solar, it had the ability to terminate the Sublease after DC Solar's default under the Sublease, and did so pursuant to a May 22, 2019 letter to DC Solar.  *See* Ex. 6 (May 22, 2019 Letter); ISC Counterclaim (Doc. 70) ¶ 67.  This argument also fails for two reasons.  First, by the Addendum's own terms, ISC's only remedy for default was to terminate the Sublease upon written notice, and ISC only sent a notice of termination *after* STEFL accelerated rent.  Second, in any event, the purported termination rights in the Addendum are an unenforceable abrogation of STEFL's rights as a third-party beneficiary.

First, even assuming the Addendum was an enforceable amendment to the Sublease as ISC contends (and which STEFL disputes), it did not purport to fully abrogate the Sublease's "hell or high water clause," but instead only purported to give

ISC the right to terminate the Sublease upon written notice following a default by the sublessor.  *See* Addendum ¶¶ 22, 24.[7]  But ISC only did this on May 22, 2019, *after* STEFL had accelerated the rent.  *See* Ex. 6 (May 22, 2019 Letter).  As explained in greater detail below, any termination at this point, even if effective, would not relieve ISC of the obligation to pay all rent already due.  *See* Cal. Com. Code § 10505(b).

Second, if the Addendum in fact granted ISC the right to terminate the Sublease, then the Addendum unlawfully abrogated ISC's rights as a third-party beneficiary to the Sublease.  It is well-settled contract law, in California and elsewhere, that the parties to a contract cannot modify the contract to the detriment of a third-party beneficiary if the beneficiary accepts or acts in reliance on the contract before receiving notification of the change.  *See James v. Pawsey*, 162 Cal. App. 2d 740, 747 (Cal. 1958) ("The parties to a contract entered into for the benefit of third persons may rescind or abrogate it without the assent of such third persons at any time *before* the contract is accepted, adopted, or acted upon by such third persons.") (emphasis added); *Principal Mut. Life Ins.*, 65 Cal. App. 4th at 1487 n.9 ("[R]escission may not be allowed if a third party beneficiary has acted in reliance on the promises made for his benefit."); Rest. (2d) Contracts § 311 (power to modify duty to intended beneficiary "terminates when the beneficiary, before he receives notification of the discharge or modification, materially changes his position in justifiable reliance on the promise or brings suit on it or manifests assent to it at the request of the promisor or promisee").

---

[7] While Paragraph 23 of the Addendum states that ISC may seek "available remedies" for default under certain circumstances, the Sublease, which provides that ISC's payment obligation is absolute, make clear that no such other remedies were available.

There can be no genuine dispute that the Addendum, if it has the effect ISC claims, materially modified and abrogated ISC's duty to make payments under the Sublease, to STEFL's detriment as the lessor.  There likewise can be no dispute that STEFL both accepted and acted upon the Sublease submitted to it, which did not include the Addendum.  STEFL received a copy of the Sublease the day it was executed, and over the next week purchased and leased $75 million of MSGs with the expectation that they would be subleased pursuant to the version of the Sublease it received, which indicated that ISC could not terminate the Sublease under any circumstances.  *See* Cooper Decl. ¶¶ 4–5; Miller Decl, Exs. B–F.  As such, DC Solar and ISC did not have the power to make undisclosed material modifications to ISC's duties, including the right to terminate those duties, under the Sublease.

Similarly, the Addendum violates California's implied duty of good faith and fair dealing, as it "frustrate[d] [STEFL]'s rights to the benefit of the contract"—namely, a secure income stream for the MSGs.  *Cobb. v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966 (Cal. Ct. App. 2015).  Even if the Addendum is construed as an amendment to the Sublease (despite the fact that it was executed the same day as the Sublease), the implied covenant would govern ISC's discretion to amend.  *See id.* at 965 (describing implied covenant of good faith and fair dealing as "very significant restriction on what might otherwise be a party's unfettered power *to amend* or terminate the agreement

. . . .") (emphasis added).  This too makes the Addendum unenforceable. *See id.* at 966 (refusing to enforce amendment that breached implied covenant).[8]

Furthermore, if the Addendum is construed as an amendment to the Sublease, then it is not valid for the separate reason that it is not supported by consideration.  Under California law, "[a] modification of a written contract is not binding unless supported by a consideration." *Fairlane Estates, Inc. v. Carrico Const. Co.*, 228 Cal. App. 2d 65, 71 (Cal. Ct. App. 1964); *see also Motown Record Corp. v. Brockert*, 160 Cal. App. 3d 123, 133 (Cal. Ct. App. 1984).  Here, all the benefits in the Addendum flow to ISC, not DC Solar.  In other words, ISC gave nothing for the termination rights it claims in the Addendum.

In short, the Addendum is invalid and unenforceable against STEFL, which was never aware of the Addendum when it acted in reliance on the Sublease as a third-party beneficiary.  In addition to defeating ISC's termination argument, this also supports summary judgment on Count II of STEFL's Amended Complaint, which, as an alternative to the contract claim, seeks declaratory relief that the Addendum (and a subsequent addendum to the Sublease also not disclosed to STEFL) are unenforceable. *See* Amend. Compl. (Doc. 30) ¶¶ 109–21.

3.   Even if STEFL or ISC Terminated the Sublease, It Would Not Have Extinguished ISC's Obligation to Pay Rent.

Moreover, even assuming that STEFL or ISC's actions had in fact validly terminated the Sublease, that termination would not change that ISC still owes STEFL all

---

[8] STEFL also contends that the Addendum is unenforceable because it is fraudulent, but recognizes that this argument presents disputed issues of fact.

outstanding rent under the Sublease.  This is because the effect of any "termination" of the Sublease would be governed by Article 2A of California's Uniform Commercial Code, which applies to personal property leases.  *See* Cal. Com. Code § 10102.

Article 2A specifies the consequences when a lease is terminated.  *See* Cal. Com. Code § 10505.  In particular, upon "termination of the lease contract, all obligations that are still executory on both sides are discharged *but any right based on prior default or performance survives*."  Cal. Com. Code § 10505(b) (emphasis added).  Put differently, even after termination of the Sublease, STEFL retains the ability to pursue its rights—which include seeking outstanding rent—based on ISC's prior defaults.  The Sublease's remedies provision confirms that termination does not cut off the sublessor's right to accelerate, as it provides that, after default by the sublessee, the sublessor may accelerate rent "*and/or* . . . terminate the sublease."  Sublease ¶ 14 (emphasis added).

ISC defaulted under the Sublease prior to any purported termination.  First, ISC's execution of the Addendum was a default, as it breached the representation that there were "no Sublease terms which are not contained herein or in the Master Lease." Sublease ¶ 20; *see also id.* ¶ 13(j) (event of default if "[a]ny statement, representation or warranty furnished by Sublessee or Sublessor in relation to this Sublease shall be untrue or unperformed in any material respect").  Second, to the extent the Addendum was part of the Sublease, then the Sublease was not a "permitted sublease" under the Master Lease, thereby constituting an event of default under the Master Lease, and hence by incorporation, the Sublease.  *See* Master Lease ¶¶ 14(e), 16(a) & p.15; Sublease at p.1. Both these defaults entitled STEFL to accelerate rent.  *See* Sublease, ¶ 14 (allowing

sublessor to declare all rent due upon "any event of default"); *see also Addison Express, L.L.C. v. Medway Air Ambulance, Inc.*, No. Civ. 3:04-CV-1954-H, 2006 WL 1489385, at *11 (N.D. Tex. May 19, 2006) (noting that, even after termination, under UCC Article 2A party "would still retain its right to sue for breach of the Lease, an express remedy for which is acceleration and payment of all obligations").

Likewise, as discussed above, ISC's purported May 22, 2019 termination of the Sublease only occurred *after* STEFL accelerated outstanding rent due to ISC's failure to make required rental payments. Accordingly, to the extent ISC relies on its May 22, 2019 letter, that purported termination occurred after not only ISC's default, but also STEFL's invocation of its remedy for ISC's default.

## II. ISC HAS FAILED TO RAISE A GENUINE ISSUE OF MATERIAL FACT IN SUPPORT OF ANY OF ITS COUNTERCLAIMS.

In addition to granting summary judgment in STEFL's favor on Counts I and II of the Amended Complaint, the Court should also grant summary judgment against ISC on each of its three counterclaims, all of which fail as a matter of law.

### A. ISC's Unjust Enrichment Claim (Count I) Fails Because ISC Was Under a Contractual Obligation to Rent the MSGs.

For the same reasons that STEFL's contract claim succeeds, ISC's counterclaim for unjust enrichment fails, because ISC cannot maintain such a claim in the face of a valid contract between the parties. Under either Florida or California law,[9] when a valid,

---

[9] Florida applies the *lex loci contractus* rule, which looks to the place where the contract was executed, to determine choice of law for unjust enrichment claims. *Am. Home Assur. Co. v. Weaver Aggregate Transp., Inc.*, 773 F. Supp. 2d 1317, 1324 (M.D. Fla. 2011). However, the Court need not engage in this analysis to apply the above defense, as the

express contract governs the transaction between the parties, the remedy of unjust enrichment is unavailable.  *See Shibata v. Lim,* 133 F. Supp. 2d 1311, 1316 (M.D. Fla. 2000) ("Proof of an express contract between parties to a contract defeats a claim for unjust enrichment.") (citing *Solutec Corp. v. Young & Lawrence Assoc., Inc.*, 243 So.2d 605 (Fla. 4th DCA 1971)); *Bowleg v. Bowe*, 502 So.2d 71, 72 (Fla. 3d DCA 1987) (upholding trial court's dismissal of unjust enrichment claim where action could be maintained upon "presumably valid" contract); *Lance Camper Mfg. Corp. v. Rep. Indem. Co. of Am.*, 44 Cal. App. 4th 194, 203 (Cal. Ct. App. 1996) ("[I]t is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter.").

Here, the Sublease specifically provides for the delivery of the MSGs in exchange for the payment of rent by ISC.  Sublease ¶ 4.  The Sublease also provides that ISC is responsible for insuring the MSGs.  *Id.* ¶ 8.  Moreover, even assuming the Sublease had been terminated, ISC would still rent the MSGs "on a month-to-month basis and subject to all the terms of [the Sublease]" so long as it maintains possession, which it indisputably has.  *Id.* ¶ 10(a).  Since there is no genuine dispute that the Sublease governs the leasing and use of the MSGs, ISC's counterclaim for unjust enrichment must be dismissed.

---

legal principle is the same in both California and Florida, where DC Solar and ISC are located.

**B.     ISC's Declaratory Judgment Claim (Count II) Fails Because It Is Duplicative of ISC's Defenses to STEFL's Contract Claim.**

Count II of ISC's counterclaim seeks a "judgment declaring that STEFL cannot enforce the Sublease against ISC and dismissal of STEFL's claims, together with interest, costs, and such other relief as this Court deems proper."  Doc. 70 at 25.  This simply rehashes ISC's defenses to STEFL's contract claim, and adds nothing new to the case.  But "[i]t is well settled that the declaratory remedy should not be invoked merely to try issues or determine the validity of defenses in pending cases."  *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937); *see also Knights Armament Co. v. Optical Sys. Tech., Inc.*, 568 F. Supp. 2d 1369, 1374–75 (M.D. Fla. 2008).

Since the Court will decide these same issues in adjudicating STEFL's contract claim, it should dismiss Count II of ISC's counterclaim.  *See Knights Armament*, 568 F. Supp. 2d at 1374–75 (dismissing declaratory judgment claim).  Indeed, ISC should be well aware of this principle, as it made the exact same argument in its motion to dismiss STEFL's own declaratory judgment claim.  Dkt. 36 at 19–20 ("When a declaratory judgment action involves the same dispute as the same plaintiff's breach of contract claim, the declaratory judgment claim is subject to dismissal.").  However, STEFL seeks a declaratory judgment as an alternative form of relief in the event its contract claim is denied.  *See* Amend. Compl. (Doc. 30) ¶¶ 109–21.  ISC's declaratory judgment counterclaim, by contrast, would result in relief no different than denial of STEFL's affirmative contract claim, making it redundant of ISC's defenses and thus appropriate for dismissal.

**C.     ISC Has Failed to Establish the Required Elements of Trespass to Land (Count III).**

ISC also asserts a counterclaim for trespass to land based on the continued presence of the MSGs on its property.  *See* Doc. 70, ¶¶ 69–74.  While ISC does not state what law applies to its trespass claim, under Florida conflict-of-law principles, Florida law should apply.  For tort claims like trespass, Florida employs the "most significant relationships" test, under which the laws of the state "with the most significant relationship to the occurrence and the parties" controls.  *Bishop v. Fla. Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla. 1980) (quoting Rest. (2d) Conflict of Laws § 145).  In determining what state has the most significant relationship, Florida courts will look at (1) where the injury occurred, (2) where the conduct causing the injury occurred, (3) the location of the parties, and (4) the place where the relationship, if any, between the parties is centered.  *Id.*  With respect to the first two factors, STEFL's alleged trespass occurred at ISC racetracks in five different states: California, Kansas, Michigan, Virginia, and Alabama.[10]  By contrast, with respect to the third and fourth factors, Florida is ISC's principal place of business, as well as the location of SunTrust Bank (STEFL's former parent) offices.  *See* Counterclaim (Doc. 70) ¶ 1; *Florida Branches*, https://www.suntrust.com/branch/fl.   Florida accordingly bears the most significant relationship to single trespass claim asserted by ISC.

To establish the elements of civil trespass under Florida law, ISC must show (1) "an injury to or use of the land of another by one having no right or authority" and (2)

---

[10] See Miller Decl., Ex. E (Sept. 28, 2017 Sale Agreement) at 10 (noting delivery for Alabama, California, and Kansas); Miller Decl., Ex. F (Nov. 3, 2017 Sale Agreement) at 9 (noting delivery for Michigan and Richmond).

that ISC was "the owner or rightfully in possession of the land at the time of the trespass." *Gunning v. Equestleader.com, Inc*., 253 So. 3d 646, 648 (Fla. 2d DCA 2017). Here, STEFL continues to have a right, under the Sublease, to use ISC's land for the MSGs. The Sublease, which is non-cancellable, clearly contemplates the presence of the MSGs on ISC property. *See* Sublease, ¶ 4, p.6. Moreover, even if the Sublease had been terminated, it is ISC's responsibility under the Sublease to return the MSGs to the Sublessor, and until it does so it is deemed to be leasing the MSGs on a month-to-month basis. *See id.* ¶ 10(a). While ISC has demanded that STEFL retrieve the MSGs, it has not offered to deliver them to an address designated by STEFL, as the Sublease requires. *See* ISC Counterclaim (Doc. 70) ¶ 39. Accordingly, per the Sublease that ISC signed, it is still leasing the MSGs. Count III of ISC's counterclaim should be dismissed on this basis as well.

## III.   THE COURT SHOULD GRANT SUMMARY JUDGMENT AGAINST ISC ON ITS AFFIRMATIVE DEFENSES 1, 2, 3, AND 5.

While the Court need not reach the issue if it grants summary judgment in STEFL's favor on Count I of the Amended Complaint, ISC has also failed to raise genuine issues of material fact to support a number of its affirmative defenses.

### 1.   Accord and Satisfaction

ISC's accord and satisfaction defense fails as a matter of law. Under California law, "[t]he affirmative defense of accord and satisfaction is applicable to the disposition of a dispute over an unliquidated claim." *FEI Enterprises, Inc. v. Yoon*, 194 Cal. App. 4th 790, 803 (Cal. Ct. App. 2011) (emphasis added). "To succeed on such a defense, it must be established (1) that there was a 'bona fide dispute' between the parties, (2) that

the debtor made it clear that acceptance of what he tendered was subject to the condition that it was to be in full satisfaction of the creditor's unliquidated claim, and (3) that the creditor clearly understood when accepting what was tendered that the debtor intended such remittance to constitute payment in full of the particular claim in issue." *Id.*

Here, ISC has not presented, nor can it, evidence that ISC tendered anything to STEFL as full satisfaction of STEFL's claim or that STEFL accepted any offer from ISC as satisfaction of its claim. There is accordingly no genuine dispute of fact to support the defense.

### 2. Ratification

ISC has not raised any genuine issue of fact with respect to the defense of ratification. "Ratification occurs where a party with full knowledge of all the material facts makes an affirmative showing of his or her express or implied intention to adopt an act or contract entered into without authority." *Zurstrassen v. Stonier*, 786 So. 2d 65, 71 (Fla. 4th DCA 2001); *Chung v. Johnston*, 274 P.2d 922, 926–27 (Cal. Ct. App. 1954).[11] ISC has presented no evidence of any "affirmative showing" by STEFL, either express or implied, to adopt the fraudulent Addendum entered into by ISC and DC Solar. To the contrary, STEFL initiated litigation seeking to invalidate the Addendum within months of discovery of its existence.

---

[11] While Florida law governs STEFL's fraud claim, the elements for the affirmative defense of ratification are substantively the same in California. *See Chung*, 274 P.2d at 926 (plaintiff's intent to ratify shown by "declarations, acts, and conduct").

3.      Fraud and Illegality

ISC's affirmative defense of fraud and illegality should be dismissed because ISC has not shown that the subject matter of the Master Lease or the Sublease was illegal. *See* Cal. Civ. Code §§ 1596, 1598 (contract void where "object is unlawful").  In fact, one of ISC's main arguments in this case is that not only was the subject matter of the parties' agreement legal, but that it was a customary arrangement in the sports and entertainment industry.   *See, e.g.*, Defendant and Counter-Plaintiff International Speedway Corporation's Motion to Compel (Dkt. 75) at 12 (describing the parties' arrangement as "common industry practice").  Clearly, then, ISC does not believe that the subject matter of the Master Lease and Sublease was illegal at the time those agreements were executed.

Further, to the extent ISC's affirmative defense of illegality is premised on DC Solar's illegal and fraudulent activity related to the MSGs, that argument is similarly unavailing.  The impetus of the illegality doctrine is the object of the contract, not the general behavior or conduct of the parties to the contract.  *See* Cal. Civ. Code § 1598. The object of the Sublease was to sublease mobile solar equipment, which no party has disputed was lawful.

4.      Waiver and Estoppel

The Court should grant summary judgment on ISC's affirmative defense of waiver since there is no evidence that STEFL accepted partial performance or expressly waived its right to performance under the contract.  *See Sabo v. Fasano*, 154 Cal. App. 3d 502, 505–06 (Cal. Ct. App. 1984).  In fact, STEFL has not received *any* performance

under the agreements since the breach.  *See* Ex. 8, (ISC's Responses to STEFL's Requests for Admission) at 11 (RFA #17) (admitting that ISC "has not paid any rents to STEFL . . . under the terms of the Sublease").  Therefore, summary judgment should be granted on ISC's affirmative defense of waiver.

With respect to estoppel, ISC has no evidence that STEFL misrepresented or concealed any facts from ISC.  Under California law, a party raising the affirmative defense of estoppel must prove four elements: "(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury."  *Lentz v. McMahon*, 777 P.2d 83, 85 (Cal. 1989) (citation omitted).  Here, none of these elements can be proven:  ISC has no evidence that it relied on any statement or conduct by STEFL to ISC's injury.  Indeed, as set forth more fully above, the evidence in this case is exactly the opposite—STEFL relied to its detriment on false statements by ISC.  The Court should grant summary judgment on ISC's affirmative defense of estoppel.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment for STEFL on Counts I and II of STEFL's Amended Complaint, and grant summary judgment against ISC on ISC's counterclaims.  If necessary, the Court should also grant summary judgment against ISC on its affirmative defenses 1, 2, 3, and 5.

Respectfully submitted, this 15th day of January, 2021.

_s/ **Suzanne Barto Hill**_

DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SUZANNE BARTO HILL, ESQUIRE
Florida Bar No. 0846694
RUMBERGER, KIRK & CALDWELL, P.A.
300 South Orange Avenue, Suite 1400 (32801)
Post Office Box 1873, Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
dgerber@rumberger.com
shill@rumberger.com

Lawrence A. Slovensky (admitted _pro hac vice_)
Georgia Bar No. 653005
Jeffrey R. Dutson (admitted _pro hac vice_)
Georgia Bar No. 637106
Benjamin B. Watson (admitted _pro hac vice_)
Georgia Bar No. 632663
Aaron Parks (admitted _pro hac vice_)
Georgia Bar No. 224347
KING & SPALDING LLP
1180 Peachtree Street, N.E.,
Atlanta, Georgia 30309
(404) 572-4600
lslovensky@kslaw.com
jdutson@kslaw.com
bwatson@kslaw.com
aparks@kslaw.com

Lennette Lee (admitted _pro hac vice_)
California Bar No. 263023
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
(213) 443-4355
llee@kslaw.com

**Attorneys for Plaintiff,**
**_SunTrust Equipment Finance & Leasing Corp._**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 15, 20121, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which automatically sends e-mail notification of such filing to any attorneys of record.

*s/ Suzanne Barto Hill*

SUZANNE BARTO HILL, ESQUIRE
Florida Bar No. 0846694
RUMBERGER, KIRK & CALDWELL, P.A.