UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| SUNTRUST EQUIPMENT FINANCE & LEASING CORP., | ) ) ) ) | |
| Plaintiff / Counter-Defendant, | ) ) ) | Case No.: 6:19-cv-01624-CEM-LRH |
| v. | ) ) | |
| INTERNATIONAL SPEEDWAY CORPORATION, | ) ) ) | |
| Defendant / Counter-Claimant. | ) ) ) | |

**PLAINTIFF / COUNTER-DEFENDANT SUNTRUST EQUIPMENT FINANCE & LEASING CORP.'S RESPONSE TO INTERNATIONAL SPEEDWAY CORPORATION'S MOTION FOR SUMMARY JUDGMENT**

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................... 1

BACKGROUND ..................................................................... 4

    A.    ISC and DC Solar Engage in a Pattern of Misrepresenting the Terms of Their Subleasing Agreements. ............................ 4

    B.    STEFL, Relying on ISC's Role as a Guaranteed Source of Repayment, Enters Into the Equipment Leasing Transaction. ................................................................. 8

    C.    The STEFL Deal Closes and ISC Again Misrepresents the Terms of Its Agreements with DC Solar. .................................. 9

    D.    DC Solar Is Raided by the FBI and Declares Bankruptcy, and ISC Discloses the Addendum for the First Time. ............ 13

LEGAL STANDARD ................................................................ 14

ARGUMENT ........................................................................ 15

  I.    STEFL'S FRAUD CLAIM (COUNT IV) RAISES GENUINE ISSUES OF MATERIAL FACT. ............................................... 15

    A.    Florida Law Controls STEFL's Fraud Claim. ......................... 16

    B.    STEFL's Fraud Claim Presents Multiple Issues of Fact. ........ 20

  II.    ISC'S ARGUMENTS AGAINST STEFL'S CONTRACT CLAIM (COUNT I) AND DECLARATORY JUDGMENT CLAIM (COUNT II) FAIL AS A MATTER OF LAW. ............. 28

    A.    The Addendum Did Not Effectively Amend the Sublease. ...... 28

    B.    Even if ISC Terminated the Sublease, Termination Would Not Eliminate Its Obligation to Pay Rent to STEFL. ............. 30

  III.    ISC'S ARGUMENTS ON STEFL'S UNJUST ENRICHMENT CLAIM (COUNT III) FAIL AS A MATTER OF LAW. ................................................................... 30

CONCLUSION ..................................................................... 30

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Auto. Sales, Inc. v. Federated Mut. Implement & Hardware Ins. Co.*,
  256 So. 2d 386 (Fla. 3d DCA 1972) ...................................................................3

*Butler v. Yusem*,
  44 So. 3d 102 (Fla. 2010) ........................................................................ 20, 26

*Cobb v. Ironwood Ctry. Club*,
  233 Cal. App. 4th 960 (Cal. Ct. App. 2015) ................................................. 29

*In re Double Jump, Inc.*,
  No. 19-50102-gs (Bankr. D. Nev.) ................................................................ 14

*Basquiat ex rel. Estate of Basquiat v. Sakura Int'l*,
  No. 04 CIV. 1369 (GEL), 2005 WL 1639413 (S.D.N.Y. July 5,
  2005) ............................................................................................................. 22

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*,
  902 F. Supp. 2d 476 (S.D.N.Y. 2012) .......................................................... 28

*First Fla. Bank, N.A. v. Max Mitchell & Co.*,
  558 So. 2d 9 (Fla. 1990) ............................................................................... 22

*Food Safety Net Services v. Eco Safe Systems USA, Inc.*,
  209 Cal. App. 4th 1118 (Cal. Ct. App. 2012) ............................................... 26

*Friebel v. Paradise Shores of Bay Cty., LLC*,
  No. 5:10-CV-120/RS-EMT, 2011 WL 500001 (N.D. Fla. Feb. 7,
  2011) ............................................................................................................. 21

*Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*,
  341 F.3d 1292 (11th Cir. 2003)........................................................ 16, 17, 18

*Hill v. BellSouth Telecommc'ns, Inc.*,
  364 F.3d 1308 (11th Cir. 2004)..................................................................... 21

*HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*,
  685 So. 2d 1238 (Fla. 1996) ......................................................................... 26

ii

*Immobiliare, LLC v. Westcor Land Title Ins. Co.*,
  424 F. Supp. 3d 882 (E.D. Cal. 2019) ......................................................... 22

*J.E. Morgan Knitting Mills, Inc. v. Reeves Bros., Inc.*,
  663 N.Y.S.2d 211 (N.Y. App. Div. 1997) .................................................... 26

*James v. Pawsey*,
  162 Cal. App. 2d 740 (Cal. 1958) ................................................................. 29

*Johnson v. Davis*,
  480 So. 2d 625 (Fla. 1985) ................................................................... 21, 22

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ......................................................................................... 16

*Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*,
  761 So. 2d 306 (Fla. 2000) ............................................................................ 17

*Merriman v. Convergent Bus. Sys., Inc.*,
  No. CIV. A. 90-30138-LAC, 1993 WL 989418 (N.D. Fla.
  June 23, 1993) .................................................................................................. 19

*Natarajan v. Paul Revere Life Ins. Co.*,
  720 F. Supp. 2d 1321 (M.D. Fla. 2010) ....................................................... 15

*Robinson v. Kalmanson*,
  882 So. 2d 1086 (Fla. 5th DCA 2004) .......................................................... 15

*Sack v. Cessna Aircraft Co.*,
  676 F. App'x 887, 890 n.2 (11th Cir. 2017) ................................................ 18

*Specialty Marine & Indus. Supplies, Inc. v. Venus*,
  66 So. 3d 306 (Fla. 1st DCA 2011) ............................................................... 27

*Sumpolec v. Pruco Life Ins. Co.*,
  563 So. 2d 778 (Fla. 3d DCA 1990) ............................................................. 23

*SunTrust Equipment Finance & Leasing Corp. v. Int'l Speedway
  Corp.*,
  No. 1:19-cv-01493-CC (N.D. Ga.) ................................................................ 14

*Topp, Inc. v. Uniden Am. Corp.*,
  483 F. Supp. 2d 1187 (S.D. Fla. 2007) ......................................................... 19

*United States v. Funt*,
　896 F.2d 1288 (11th Cir. 1990)....................................................... 23

*Viridis Corp. v. TCA Global Credit Master Fund, LP*,
　721 F. App'x 865 (11th Cir. 2018) ............................................... 17

*ZC Ins. Co. v. Brooks*,
　847 So. 2d 547 (Fla. 4th DCA 2003)........................................... 22

**Statutes**

Cal. Com. Code § 1304 ...................................................................... 29

Cal. Com. Code § 10505 .................................................................... 30

**Other Authorities**

Fed. R. Civ. P. 56(a) ......................................................................... 14

Rest. (2d) Conflict of Laws § 148..................................................... 19

Rest. (2d) Contracts § 311 ................................................................ 29

Rest. (2d) Torts § 540........................................................................ 27

## **INTRODUCTION**

Defendant International Speedway Corporation ("ISC") portrays itself as a victim of DC Solar's multibillion-dollar Ponzi scheme. The facts tell a different story. In exchange for lucrative sponsorship revenue from DC Solar, ISC fraudulently misrepresented its business relationship with DC Solar to potential investors. One of those duped investors was Plaintiff SunTrust Equipment Finance & Leasing Corp. ("STEFL").

The fraud worked as follows. DC Solar, which manufactured mobile solar generators ("MSGs"), needed to convince investors that there was high demand for leasing MSGs, whose value came from the rental income they generated. Actual demand for MSGs, however, was low. To create the appearance of more "end users," DC Solar approached ISC with the following deal: if ISC paid DC Solar to sublease MSGs, DC Solar would pay substantially *more* back to ISC under an accompanying set of sponsorship agreements. ISC accepted.

No lessor, however, would accept a sublease contingent on DC Solar's performance under separate sponsorship agreements. So ISC and DC Solar came up with a plan. First, ISC and DC Solar signed a sublease that contained all the terms that lessors like STEFL required, including a "hell-or-high-water" clause under which ISC pledged an "absolute and unconditional" obligation to pay rent for the MSGs for ten years. Then, ISC and DC Solar

signed a separate "addendum" that undid all the terms ISC did not want to follow.  ISC and DC Solar gave the sublease to the lessor.  They kept the addendum to themselves.

The plan worked initially, as ISC received payments that vaulted DC Solar into position as one of ISC's top sponsors while DC Solar raked in new investors and funds.  As with all Ponzi schemes, however, the music eventually stopped:  DC Solar was raided by the FBI, declared bankruptcy, and stopped making sponsorship payments to ISC.  Relying on its secret addendum, ISC stopped paying rent under the Sublease.  STEFL, which had been assigned DC Solar's rights under the Sublease, then sued ISC for breach of contract, fraud, declaratory judgment, and unjust enrichment.  STEFL has now moved for summary judgment on the contract claim.  *See* Doc. 96.  ISC remains bound by the Sublease's hell-or-high-water clause and obligated to pay STEFL rent for the MSGs.  As explained in STEFL's motion, the addendum does not do what ISC thinks it does, and ISC's arguments in its own motion rely on the same faulty premises.

But even if the addendum did allow ISC to walk away from the Sublease, ISC has perpetrated a massive fraud.  STEFL purchased and leased $75 million of MSGs in reliance on ISC's representation that it would have an absolute and unconditional obligation to pay rent for those MSGs.  But at the same time ISC made this representation to STEFL, it was trying

2

to undo that same obligation through its addendum.  Effectively, ISC signed a seven-page sublease, gave only the first five pages to STEFL, and told STEFL that the sublease was only five pages long.

Faced with the consequences of its fraud, ISC offers up a series of legal dodges.  None work.  *First*, ISC contends that STEFL has brought a nondisclosure claim.  But STEFL has quite plainly alleged that ISC made affirmative misrepresentations about the Sublease.  *Second*, ISC contends that it never made any representations to STEFL about the Sublease.  But ISC sent a letter **addressed to STEFL** about the Sublease.  *Third*, ISC contends that none of its statements are false.  But the facts show that ISC intentionally sent STEFL an incomplete sublease accompanied by statements that the Sublease was complete.  *Fourth*, ISC argues that STEFL was not "justified" in relying upon ISC's misrepresentations because STEFL did not do a good enough job in discovering that ISC was lying to it.  Unsurprisingly, this argument is legally meritless.

Fraud claims are ill-suited for summary judgment.  *See Auto. Sales, Inc. v. Federated Mut. Implement & Hardware Ins. Co.*, 256 So. 2d 386, 386 (Fla. 3d DCA 1972).  That is certainly the case here.  ISC comes nowhere near meeting its burden of showing the absence of a genuine dispute of material fact regarding STEFL's fraud claim, or any other claim.  ISC's motion for summary judgment should be denied.

3

## BACKGROUND

This case arises from a 2017 three-party equipment leasing transaction between STEFL, ISC, and DC Solar Distribution, Inc. ("DC Solar").   As explained in greater detail below, STEFL agreed to purchase 500 MSGs from an affiliate of DC Solar and then immediately lease them to DC Solar, which in turn would sublease the MSGs to ISC.   As the end user, ISC was the ultimate source of revenue, and the terms under which it subleased the MSGs were critical to STEFL's decision to do the deal.   ISC, however, fraudulently misrepresented to STEFL what those terms were.

### A.   ISC and DC Solar Engage in a Pattern of Misrepresenting the Terms of Their Subleasing Agreements.

The STEFL deal was not the first between ISC and DC Solar.  Nearly a year prior, in December 2016, ISC agreed to sublease 200 MSGs from DC Solar.  *See* ISC Mot. to Dismiss Amend. Compl., Ex. 3  (Doc. 36-3), Decl. of Joel Chitwood ("Chitwood Decl.") at ¶ 9 & Ex. A.  Those MSGs were owned by a special-purpose entity named Solar Eclipse Investment Fund XXVI, LLC. *Id.*  DC Solar and ISC entered into a second sublease six months later, on June 30, 2017, for 34 MSGs owned by Crestmark Bank.  *Id.* at ¶ 11 & Ex. B.

Both subleases were accompanied by sponsorship agreements between DC Solar and ISC.  *See* Chitwood Decl., ¶¶ 8–40, Exs. A and B.  From the beginning, ISC viewed the subleases and sponsorships as part of the same

overall deal.  Indeed, ISC assessed DC Solar's proposal in terms of the net revenue that the sponsorships would generate, less the cost of subleasing the MSGs.  *See* Ex. A (ISC Partnership Framework) at 2–4.  ISC's former chief operating officer, Joie Chitwood, submitted a sworn declaration in DC Solar's bankruptcy proceedings that the sponsorships and subleases were part of the same bargain.  *See* Chitwood Decl. ¶ 44.  Mr. Chitwood testified at his deposition that ISC would never have subleased the MSGs without the sponsorship revenue.  *See* Ex. B (Chitwood Dep.) at 52:4–53:11, 91:20–24.  And the reason is clear: prior to agreeing to accept DC Solar's MSGs, ISC was able to fulfill its need for lighting at track events, which is how ISC intended to use the MSGs, through temporary as-needed rentals that cost considerably less than the MSGs (for example, for one racetrack, approximately $60,000 per year as opposed to $960,000 for the MSGs).  *Id.* at 109:7–112:7.

The arrangement was mutually beneficial to DC Solar and ISC.  With ISC, DC Solar obtained a publicly traded company that it could market to potential investors as an end user of its MSGs, which it in fact did.  *See* Ex. C (DC Solar Industry Market Summary) at 7.  And ISC received a new stream of sponsorship revenue, eventually worth about $10 million per year.  *See* Chitwood Dep. at 112:19–21; Chitwood Decl. ¶¶ 41–42.  That revenue stream was particularly lucrative for ISC:  ISC projected a 139% return on its proposed rental of an additional 500 MSGs from DC Solar in June 2017,

5

sparking the reaction "Let's paper it up!" from ISC's Vice President Frank Kelleher.  *See* Ex. D (June 7, 2017 Email from F. Kelleher).  DC Solar ultimately became one of ISC's top sponsors.  *See* Chitwood Dep. at 133:5–7 (DC Solar "important" sponsor); Ex. E (ISC 30(b)(6) Dep.) at 46:16–47:10 (DC Solar would have been in top 25% of ISC sponsors for 2019).

As they would later do with STEFL, DC Solar and ISC misrepresented the complete terms of their arrangement to Solar Eclipse and Crestmark. Both subleases had a ten-year term and a standard "hell-or-high-water" clause that made ISC's payment obligation absolute and unconditional.  *See* Chitwood Decl. at Exs. A & B.  But in both deals, DC Solar and ISC signed a separate "addendum" that purported to allow ISC to terminate the sublease for multiple reasons, including: (1) for any reason after five years; (2) if DC Solar failed to perform under the sublease (directly contrary to the hell-or-high-water clause); and (3) if DC Solar failed to perform under its sponsorship agreements (also directly contrary to the hell-or-high-water clause).  *Id.*  ISC did not share these addenda with Solar Eclipse or Crestmark.  *See* ISC 30(b)(6) Dep. at 117:1-25, 129:18–130:7.

None of ISC's witnesses have offered a plausible explanation of why the sublease documents were structured this way.  Frank Kelleher, ISC's Vice President of Sales and its main contact with DC Solar, testified that he did not know why they used an addendum.  *See* Ex. F (Kelleher Dep.) at 111:16–

6

21.   Mr. Chitwood similarly testified that he did not know.   *See* Chitwood Dep. at 54:3–7.   ISC's former in-house counsel, Brett Scharback, testified that DC Solar requested the concept of an addendum, but could not give additional details about the reason for it.   *See* Ex. G (Scharback Dep.) at 49:9–25.   ISC's in-house counsel, Benjamin Odom, testified he understood that DC Solar preferred not to edit the main sublease, *see* Ex. H (Odom Dep.) at 106:2–9, but the evidence shows that DC Solar accepted multiple edits from ISC to the sublease.   *See* Ex. I (Sept. 27, 2017 Email from B. Odom).

ISC clearly knew that this arrangement was unusual.   When Mr. Kelleher first described the possible deal to Mr. Chitwood, Mr. Chitwood's response was: "Govt sanctioned pyramid scheme?"   Ex. J (Nov. 22, 2016 Email from F. Kelleher) at 4.   And Mr. Kelleher himself, prior to the first deal, told DC Solar "[t]here is already an element that feels 'sneaky' to a few here (addendum to a lease) and I can't afford to add additional question marks to the deal."   See Ex. K (Dec. 8, 2016 Email from F. Kelleher).   Mr. Scharback testified that DC Solar's insistence on an addendum raised concerns and was "curious" to him.   *See* Scharback Dep. at 56:7–15, 82:11–16. Yet ISC proceeded with this "sneaky" transaction structure in order to reap the benefits of the sponsorship agreements with DC Solar.

**B.    STEFL, Relying on ISC's Role as a Guaranteed Source of Repayment, Enters Into the Equipment Leasing Transaction.**

Representatives of DC Solar approached STEFL about a possible deal in June 2017.  *See* ISC MSJ Ex. 2 (Doc. 97-2) (June 2, 2017 Email from J. Capps).  In the following months, STEFL conducted extensive diligence on DC Solar.  Among other things, STEFL's underwriting team reviewed DC Solar's financial statements, ISC MSJ Ex. 21 (Doc. 97-21) at 58 ("STI Risk Rating Approval Report"), attended site visits and observed the MSGs in person, Ex. L (Culos Dep.) at 109:3–110:25, conducted a risk assessment analysis on DC Solar, *id.* at 254:24–255:22, and submitted the deal to a special review committee.  *See id.* at 251:6–252:25.

While STEFL had concerns about DC Solar's financial condition, they were mitigated by the fact that ISC, a publicly traded company and longstanding SunTrust Bank client, would be the sublessee and ultimate source of repayment.  Indeed, this was the core conclusion of STEFL's credit memorandum, which noted that "***[t]he cash flow to support this transaction comes from ISC***[] which has been a Bank client since 1998 . . ." ISC MSJ Ex. 21 (Doc. 97-21) ("Credit Approval/Modification Summary") at 11 (emphasis added).   STEFL's underwriters carefully reviewed detailed financial data on ISC.  *See id.* at 22–26.  And their testimony confirms that STEFL viewed its ability to seek recourse against ISC as the lynchpin of the

8

transaction.  *See* Culos Dep. at 118:22–25 (hell-or-high-water clause "would ensure that SunTrust was paid in full by either DC Solar or [ISC]"); Ex. M (McIntyre Dep.) at 52:22–24 ("[W]e did the DC Solar deal in my mind because of the International Speedway Corporation relationship.").

### C.    The STEFL Deal Closes and ISC Again Misrepresents the Terms of Its Agreements with DC Solar.

The STEFL deal closed in late September 2017.  The deal involved multiple contracts, described in greater detail in STEFL's affirmative summary judgment motion.  *See* Doc. 96.  At a high level, on September 25, 2017, STEFL and DC Solar signed a Master Lease (Doc. 96-2) that established the terms under which DC Solar would lease MSGs from STEFL. Two days later, on September 27, 2017, ISC and DC Solar signed the Sublease.   Doc. 96-5.   STEFL and DC Solar separately executed two equipment schedules—one on September 28, 2017 (Doc. 96-3) and the second on November 3, 2017 (Doc. 96-4)—that leased specific MSGs pursuant to the terms of the Master Lease.  In connection with each Schedule, STEFL and DC Solar also executed a "Subleasing Consent and Amendment," under which DC Solar both assigned its rights in the Sublease to STEFL and granted STEFL a security interest in the Sublease.  Docs. 96-8 and 96-10.

## 1.   ISC Intentionally Avoids Disclosing the Addendum to STEFL.

ISC knew prior to executing the Sublease for the STEFL deal that, like with its prior deals, it would also execute an addendum with DC Solar ("the Addendum").  Multiple ISC witnesses admitted as much in their depositions. *See* Chitwood Dep. at 81:20–84:12; Kelleher Dep. at 176:8–178:17.

Internal ISC communications make clear that ISC did not want STEFL to know about the Addendum.  On September 26, 2017, the night before ISC signed the Sublease, Alex McGhee, Vice President at DC Solar, sent ISC a "Sublessee Acknowledgment" form that STEFL requested ISC sign.  *See* Ex. N (Sept. 26, 2017 Email from F. Kelleher) at 2.  The Sublessee Acknowledgment included language that ISC would not "modify amend or extend the time for payment or performance in any material respect . . . without the express prior written consent of STEFL . . . ." *Id.* at 11.

The following morning, ISC in-house counsel Ben Odom sent an email (subsequently shared with DC Solar) expressing concern about this language:

> The second part of (ii) is what really concerns me.  It says we will not modify, amend or extend the time for payment or performance in any material respect without SunTrust's approval.  Our amendment to our sublease with DC Solar does this by (a) giving us the out after 5 years and (b) allowing us to terminate if DC Solar defaults on its sponsorship.  ***The way I read this, our amendment to the sublease will have to be approved in advance by SunTrust***.  Ex. O (Sept. 27, 2017 Email from F. Kelleher) at 3 (emphasis added).

10

As Mr. Odom's email made clear, ISC understood that the Addendum would *not* be disclosed to STEFL.  Moreover, as Mr. Odom's email strongly suggests, ISC understood that if STEFL knew about the Addendum, it likely would not go through with the deal—hence the "concern" that the Sublessee Acknowledgment would require ISC to disclose the Addendum to STEFL.

ISC subsequently requested a call with DC Solar's attorney, Ari Lauer.  *See* Ex. O (Sept. 27, 2017 Email from F. Kelleher) at 2.  Later that same morning, Mr. Lauer emailed STEFL that ISC would not sign the Sublessee Acknowledgment.  *See* Ex. P (Sept. 27, 2017 Email from A. Lauer) at 4.  ISC and Mr. Lauer then held a call, apparently to discuss how to consummate the STEFL deal.  *See* Ex. Q (Sept. 27, 2017 Email from B. Odom).[1]  Following that call, Mr. Lauer proposed to Lawrence Cooper, STEFL's in-house counsel, that ISC send STEFL a letter acknowledging that it was subleasing the MSGs pursuant to the Sublease.  *See* Ex. S (Sept. 27, 2017 Email from A. Lauer).

STEFL, which had not seen the final Sublease, agreed to the concept of receiving a letter from ISC.  *See id.*  But STEFL, through Mr. Cooper, had already communicated that its approval was "conditioned upon seeing and

---

[1] When asked about this call at his deposition, Mr. Odom stated he could not recall specifics, other than conveying ISC's refusal to sign the acknowledgment.  *See* Odom Dep. at 183:13–185:11.  When asked similar questions, Mr. Lauer invoked his Fifth Amendment right against self-incrimination.  *See* Ex. R (Lauer Dep.) at 14:9–23.

reviewing the final sublease executed by ISC."  Ex. T (Cooper Dep.) at 135:6–20.

>    **2.    ISC Affirmatively Represents to STEFL that an Incomplete Sublease Was the Entire Agreement Between ISC and DC Solar.**

Following further discussions with Mr. Cooper, Mr. Lauer emailed ISC the afternoon of September 27th that "SunTrust will accept the letter we discussed during our call."  Ex. S (Sept. 27, 2017 Email from A. Lauer).  ISC then prepared a letter (the "Side Letter"), on ISC letterhead and signed by its Senior Vice President and Deputy General Counsel, stating that ISC was subleasing the MSGs "pursuant to the Sublease":

> International Speedway Corporation ("ISC") acknowledges that the Solar Equipment (as that term is defined in the September 27, 2017 Mobile Solar Equipment Sublease between DC Solar Distribution, Inc. and ISC ("Sublease") is being leased by SunTrust Equipment Finance & Leasing Corp. to DC Solar Distribution, Inc. and then subleased by DC Solar Distribution, Inc. to ISC pursuant to the Sublease.

Ex. U (Side Letter).  The letter was addressed to Lawrence Cooper at STEFL. *Id.*

At 4:42 p.m., Frank Kelleher emailed the Side Letter, along with the signed Sublease, to Jeff Carpoff, DC Solar's president.  *See* Ex. V (Sept. 27, 2017 Email from F. Kelleher).  Mr. Carpoff then immediately forwarded both documents to STEFL.  *See* Ex. W (Sept. 27, 2017 Email from J. Carpoff).  A little over one minute after sending the email with the Sublease and Side Letter, Mr. Kelleher then emailed DC Solar a *separate* email with the signed

Addendum to the same recipients as his 4:42 PM email.  *See* Ex. X (Sept. 27, 2017 Email from F. Kelleher).  Mr. Carpoff did not forward this email to STEFL.  When asked at his deposition why he sent two separate emails, Mr. Kelleher answered that he did not know.  *See* Kelleher Dep. at 200:2–201:13.

After reviewing the incomplete Sublease and Side Letter from ISC, STEFL closed on the first tranche of MSGs the next day, September 28, 2017.  *See* Schedule No. 01 (Doc. 96-3); Cooper Dep. at 135:6–20.

### D.   DC Solar Is Raided by the FBI and Declares Bankruptcy, and ISC Discloses the Addendum for the First Time.

Payments under the STEFL deal proceeded smoothly until December 18, 2018, when the FBI raided DC Solar's offices in California.  Subsequent filings by the FBI would reveal that, from before the signing of the STEFL deal, DC Solar had operated as a massive Ponzi scheme.  *See* Ex. Y (Decl. of Special Agent Christopher Phillips in Support of In Rem Forfeiture Complaint ("Phillips Decl.")).  Specifically, most of the revenue that DC Solar investors ostensibly received from leasing MSGs was actually disguised payments from new investors.  *Id.* at 4–6.

DC Solar defaulted on its rent payments to STEFL at the end of December 2018 and beginning of January 2019.  *See* STEFL MSJ Ex. 4 (Doc. 96-14) (Decl. of L. Cooper) at ¶ 6.  On January 15, 2019, STEFL notified ISC of DC Solar's default and instructed ISC to send all rent payments under the

Sublease to STEFL.  *See id.*, Ex. B (Jan. 15, 2019 Letter) (Doc. 96-16).  ISC, despite retaining possession of the MSGs, refused to pay.  *See* STEFL MSJ Ex. 8 (Doc. 96-21) (ISC's Responses to STEFL RFAs) at 11 (RFA #17).

On February 22, 2019, ISC filed in DC Solar's bankruptcy proceedings a motion for relief from the automatic stay so that it could terminate its contracts with DC Solar.  *In re Double Jump, Inc.*, No. 19-50102-gs (Doc. 174) (Bankr. D. Nev.).  In connection with the motion, ISC submitted a sworn declaration from Mr. Chitwood that outlined ISC's sponsorships and subleases with DC Solar.  *See* Chitwood Decl.  Copies of each sublease agreement—with their addenda—were attached to the declaration.  *See id.* This was the first time anyone at STEFL had seen the Addendum.

STEFL commenced an action against ISC in the United States District Court for the Northern District of Georgia, through which it exercised its right to accelerate outstanding rental payments.  *See* STEFL MSJ Ex. 9 (Doc. 96-22) (Amend. Compl., *SunTrust Equipment Finance & Leasing Corp. v. Int'l Speedway Corp.*, No. 1:19-cv-01493-CC (N.D. Ga.)).  STEFL voluntarily dismissed that action and filed the present action on August 22, 2019.  Doc. 1.

## **LEGAL STANDARD**

Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Generally, the issue of

fraud is not properly the subject of summary judgment, because a court can seldom determine the presence or absence of fraud without a trial." *Natarajan v. Paul Revere Life Ins. Co.*, 720 F. Supp. 2d 1321, 1330 (M.D. Fla. 2010) (citing *Robinson v. Kalmanson*, 882 So. 2d 1086, 1088 (Fla. 5th DCA 2004)).   This is because "questions of . . . misrepresentation, intent, knowledge, and reliance all turn on factual determinations, which are often based on circumstantial evidence." *Id.* (citation omitted).

## ARGUMENT

ISC has not met its burden of demonstrating that no genuine issue of material fact exists for any of STEFL's claims.  As explained in greater detail in STEFL's own summary judgment motion, the facts support summary judgment *for STEFL* on its contract claim.   With respect to STEFL's alternative fraud claim, ample evidence supports that ISC made intentional, affirmative misrepresentations about the Sublease that induced STEFL to enter into the transaction with DC Solar and ISC.

## I.   STEFL'S FRAUD CLAIM (COUNT IV) RAISES GENUINE ISSUES OF MATERIAL FACT.

Although STEFL brings a fraud claim against ISC only as an alternative count to its contract claim, ISC focuses most of its motion on this claim.  STEFL did not move for summary judgment on this count, recognizing that fraud typically raises fact questions for the jury.  And the record bears

this out.   Among other things, genuine issues of material fact exist with regard to whether ISC knowingly made false statements about the Sublease to STEFL, as well as whether STEFL relied on those false statements.

### A.   Florida Law Controls STEFL's Fraud Claim.

Contrary to ISC's claim that California or New York law controls, *see* ISC MSJ (Doc. 97) at 20, Florida law governs STEFL's fraud claim.  Because this is a diversity case, the choice-of-law rules of the forum state—Florida— apply.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Those rules establish that (1) the choice-of-law provisions in the Master Lease and Sublease do not apply to STEFL's fraud claim, and (2) in the absence of an applicable choice-of-law provision, Florida law controls.

### 1.   The Choice-of-Law Provisions in the Master Lease and Sublease Do Not Apply to STEFL's Fraud Claim.

ISC bases its application of New York or California law on the choice- of-law clauses in the Master Lease and Sublease, which select New York and California law, respectively.  *See* ISC MSJ. at 20.  But before applying a contractual choice-of-law provision, a court must first determine whether the claims at issue fall within the provision's scope.  *See, e.g.*, *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1300 (11th Cir. 2003).  Here, the Master Lease provides that New York law governs questions of contract construction and interpretation:

> This Master Lease and the other lease documents, and the rights and obligations of the parties hereunder and thereunder, shall in all respects be governed by, and construed in accordance with, the internal laws of the state of New York . . . including all matters of construction validity and performance. (Master Lease (Doc. 96-2) ¶ 20).

The Sublease has a similar provision.  *See* Sublease (Doc. 96-5) ¶ 20 ("This Sublease shall be interpreted, construed and/or enforced pursuant to the laws of the State of California.").

These are both "narrow" choice-of-law clauses because they extend only to issues concerning construction of the contract in which they are found. And as the Eleventh Circuit has held, "a choice-of-law provision that by its terms governs only the parties' contractual relationship may not provide the choice-of-law for non-contract claims."  *Viridis Corp. v. TCA Global Credit Master Fund, LP*, 721 F. App'x 865, 875 n.11 (11th Cir. 2018).  This includes fraud claims.  *See Green Leaf*, 341 F.3d at 1301 (declining to apply clause stating contract "shall be governed and construed in accordance with the laws of the State of Delaware" to fraud claim).

ISC's authorities for applying the clauses are distinguishable.  In *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours & Co.*, the Florida Supreme Court held that a release's Delaware choice-of-law clause applied to the question of whether the release barred a fraudulent inducement claim.  761 So. 2d 306, 308 n.2, 313 (Fla. 2000).  Notably, the Delaware Supreme Court had already answered this question in the negative—the release did *not* bar

the fraud claim—meaning that the Florida Supreme Court's decision allowed the plaintiffs' claim to proceed.   *See id.* at 310 n.5.   Subsequently, when evaluating a similar claim, the Eleventh Circuit concluded that this choice-of-law clause did *not* control the substantive elements of the fraud claim.   *See Green Leaf*, 341 F.3d at 1301.   Rather, applying Florida choice-of-law principles, the Eleventh Circuit held that Florida law controlled.   *Id.*

In short, *Mazzoni* is consistent with the principle that a narrow choice-of-law clause selects the law only for issues regarding the scope or effect of a contract—not the elements of a claim that the contract was fraudulently induced.   By contrast, in *Sack v. Cessna Aircraft Co.*, there was no dispute that the choice-of-law clause at issue, which was broader and covered "the legal relationships between the parties," controlled the fraud claim.   676 F. App'x 887, 890 n.2 (11th Cir. 2017).

### 2.    Under Florida's "Most Significant Relationship" Test, Florida Law Applies to STEFL's Fraud Claim.

Since neither the Master Lease's nor the Sublease's choice-of-law clauses cover STEFL's fraud claim, Florida's "most significant relationship" test determines which state's law applies.   *See Green Leaf*, 341 F.3d at 1301. Where the alleged misrepresentations are made and received in different states, that test calls for an analysis of six factors:

(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received

the representations, (c) the place where the defendant made the representations, (d) the domicile, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*See Topp, Inc. v. Uniden Am. Corp.*, 483 F. Supp. 2d 1187, 1191 (S.D. Fla. 2007) (citing Restatement (Second) of Conflict of Laws, § 148(2)).

Here, application of these factors favors Florida law.  STEFL has offices in multiple states, thus discounting the importance of the first two factors. *See* Rest. (2d) Conflict of Laws § 148, cmt. f ("Plaintiff's action in reliance provides a more important contact when it is confined to a single state than when it is divided among two or more.").  With respect to the third factor, ISC made its misrepresentations from its office in Florida.   *See* Ex. U (Side Letter) (listing Florida address for ISC).  For the fourth factor, ISC's principal place of business is in Florida. *See* ISC Counterclaim (Doc. 70) at ¶ 1.  While STEFL's headquarters were in Georgia, its parent company, SunTrust Bank, has extensive offices and branches in Florida.  *See* STEFL MSJ (Doc. 96) at 26.  For the last two factors, it was not clear where the MSGs were located at the time of ISC's misrepresentations, and the MSGs were to be delivered to multiple states.  *See id.*  Accordingly, although multiple states touch upon the fraud, Florida has the clearest relationship.  *See Merriman v. Convergent Bus. Sys., Inc.*, No. CIV. A. 90-30138-LAC, 1993 WL 989418, at *9 (N.D. Fla.

June 23, 1993) (applying Florida law to misrepresentations made from Florida to Texas, noting that "location of the defendant's conduct should be given greater weight" than location of injury).

### B.   **STEFL's Fraud Claim Presents Multiple Issues of Fact.**

Under Florida law, the elements of fraud are: "(1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010).

ISC does not offer argument on the second or third elements of this analysis.  Rather, in its motion, ISC argues (1) it had no duty to disclose the Addendum to STEFL, (2) it did not make any representations to STEFL because it had no direct contact with STEFL, (3) its representations about the Sublease were not false, and (4) STEFL did not justifiably rely on ISC's representations.  None of ISC's arguments have merit, legally or factually.

### 1.   **STEFL's Claim Is Based on ISC's Affirmative Misrepresentations About the Sublease.**

ISC's first argument—that it had no duty to disclose the Addendum to STEFL—rests on a deliberate misreading of STEFL's fraud claim.  STEFL bases its fraud claim on affirmative misrepresentations made by ISC in the Sublease and Side Letter.  Amend. Compl. (Doc. 30) ¶¶ 133 ("ISC made a

false statement of material fact in the Sublease when it represented that 'There are no Sublease terms which are not contained herein or in the Master Lease.'"); 135 ("ISC made a false statement of material fact in the September 27 ISC Letter when it represented that the 'Solar Equipment . . . is being leased by SunTrust Equipment Finance & Leasing Corp. to DC Solar Distribution, Inc. and then subleased by DC Solar Distribution, Inc. to ISC ***pursuant to the Sublease*** . . .'").  ISC simply ignores the actual allegations from STEFL's fraud count and instead asserts that STEFL has brought "a fraud claim based on nondisclosure."  ISC MSJ at 20.  This is wrong.  Florida recognizes that fraud claims based on affirmative misrepresentations—which is the claim STEFL has pled here—are distinct from those based on omissions or concealment.  *See Johnson v. Davis*, 480 So. 2d 625, 627–28 (Fla. 1985).  As the plaintiff, STEFL is the master of its own claims.  *See, e.g.*, *Hill v. BellSouth Telecommc'ns, Inc.*, 364 F.3d 1308, 1314 (11th Cir. 2004).  It chose to bring a claim based on the false representations ISC made to STEFL about the terms of its agreement with DC Solar.

Considered in light of STEFL's actual fraud claim, ISC's "no duty" argument fails.  "[A]s a matter of law, a duty to disclose is not an element of common law fraud or fraudulent misrepresentation."  *Friebel v. Paradise Shores of Bay Cty., LLC*, No. 5:10-CV-120/RS-EMT, 2011 WL 500001, at *3 &

n.3 (N.D. Fla. Feb. 7, 2011) (citing *Johnson*, 480 So.2d at 628).[2]  And even if STEFL's fraud claim were construed as for nondisclosure of the Addendum, Florida law "places a duty on one who undertakes to disclose material information to disclose that information fully."  *ZC Ins. Co. v. Brooks*, 847 So. 2d 547, 551 (Fla. 4th DCA 2003).  ISC undertook a duty to disclose the Addendum when it made an incomplete representation to STEFL about the Sublease's terms.  ISC's arguments based on an alleged lack of duty to disclose the Addendum are thus a strawman.

### 2.  ISC Made Misrepresentations to STEFL About the Sublease.

ISC also makes much of the fact that it supposedly "did not communicate anything regarding the Sublease, nor transmit any of the Sublease contract documents" to STEFL.  ISC MSJ at 22.  This is simply not correct: the Side Letter, which stated that ISC was subleasing the MSGs "pursuant to the Sublease," was addressed *from ISC to STEFL*.  *See* Ex. U (Side Letter).

That it was Jeff Carpoff at DC Solar who actually clicked "send" to transmit the Sublease and Side Letter to STEFL is irrelevant.  A party can commit fraud through an intermediary.  *See First Fla. Bank, N.A. v. Max*

---

[2] *See also Immobiliare, LLC v. Westcor Land Title Ins. Co.*, 424 F. Supp. 3d 882, 889–90 (E.D. Cal. 2019); *Basquiat ex rel. Estate of Basquiat v. Sakura Int'l*, No. 04 CIV. 1369 (GEL), 2005 WL 1639413, at *6, n.5 (S.D.N.Y. July 5, 2005).

*Mitchell & Co.*, 558 So. 2d 9, 14–15 (Fla. 1990); *Sumpolec v. Pruco Life Ins. Co.*, 563 So. 2d 778, 779 (Fla. 3d DCA 1990); *see also United States v. Funt*, 896 F.2d 1288, 1293–94 (11th Cir. 1990) (a party "cannot insulate itself from its fraudulent acts by use of an intermediary").

Here, ISC clearly knew both the Sublease and Side Letter would be sent to STEFL after ISC signed them.  ISC sent both documents in the same email to Jeff Carpoff at DC Solar, *see* Ex. V (Sept. 27 Email from F. Kelleher), who then almost immediately forwarded them to STEFL.  *See* Ex. W (Sept. 27, 2017 Email from J. Carpoff).  Even more tellingly, ISC waited to send the Addendum in a *separate* email, which it sent a little more than one minute after the email with the Sublease and Side Letter, and to the same recipients as the earlier email.  *See* Ex. X (Sept. 27, 2017 Email from F. Kelleher).  As noted above, ISC has not explained why it split the documents this way.

These emails strongly suggest—and certainly raise a genuine issue of fact—that ISC sent DC Solar separate emails because it knew that DC Solar would transmit the Sublease and Side Letter (but not the Addendum) to ISC. Were that not enough, ISC's Side Letter *was addressed to STEFL*. Considering these facts, ISC's argument that it did not "communicate" with STEFL is little different than the sender of a fraudulent letter arguing that it did not "communicate" with the letter's recipient because the letter was physically delivered by the mailman.

Moreover, the record also belies ISC's claim that it did not know if DC Solar disclosed the Addendum to STEFL.  *See* ISC MSJ at 25.  If ISC truly did not know if DC Solar would disclose the Addendum to STEFL, then  ISC's concern immediately prior to closing that the Sublessee Acknowledgment would require disclosure of the Addendum to STEFL makes little sense.  Indeed, Mr. Odom testified as ISC's 30(b)(6) witness that it was ISC's understanding at the time of transaction that DC Solar would *not* provide the Addendum to STEFL.  *See* ISC 30(b)(6) Dep. at 130:15–131:16.

### 3.    ISC's Representations About the Sublease Were False.

ISC relatedly argues that nothing in the Sublease or Side Letter was false.  This too fails factually and legally.  There are genuine issues of fact, at the very least, that both documents contained materially false statements.

First, ISC argues that the Side Letter, which ISC agreed to send in lieu of the Sublessee Acknowledgment, was essentially meaningless, and "stated only the obvious existence of a Master Lease and Sublease and nothing more."  ISC MSJ at 24.  But the Side Letter cannot be viewed in isolation. ISC sent the Side Letter to DC Solar—and DC Solar sent it to STEFL—with an incomplete version of the Sublease.  *See* Ex. V (Sept. 27 Email from F. Kelleher); Ex. W (Sept. 27 Email from J. Carpoff).  Any reasonable reader of the Side Letter would have construed "pursuant to the Sublease" to mean

pursuant to the sublease document sent simultaneously with the letter. But that document was *not* the actual agreement under which ISC was subleasing the MSGs, because it did not contain the Addendum. As such, this statement in the Side Letter was materially false and misleading.

Second, ISC argues that the statement in the Sublease it signed and transmitted to STEFL that "[t]here are no Sublease terms which are not contained herein or in the Master Lease" is simply a "standard integration clause." ISC MSJ at 26. "Standard" or not, the clause says what it says, and what it says was clearly false. The Addendum contained additional terms that were *not* included in the Master Lease or the Sublease sent to STEFL.

ISC's contention that this language is an agreement between it and DC Solar, and thus cannot be a representation to STEFL, *see* ISC MSJ at 25–26, does not hold up to close scrutiny. First, as presented to STEFL, this language was *not* a confirmation of ISC and DC Solar's deal, because the sublease given to STEFL did not contain the full terms of that deal. Second, there is no reason why one party cannot defraud another by misrepresenting the terms of an agreement with a third party. To take one example, if a business forged a sales contract in order to qualify for a loan, that business would clearly be committing bank fraud.

ISC's authorities for its contention that a fraudulent statement must be "conceptually distinct from the contract," meanwhile, merely stand for the

25

point that a fraud claim must be based on more than a party's breach of a contractual term. *See Food Safety Net Services v. Eco Safe Systems USA, Inc.*, 209 Cal. App. 4th 1118, 1130 (Cal. Ct. App. 2012); *J.E. Morgan Knitting Mills, Inc. v. Reeves Bros., Inc.*, 663 N.Y.S.2d 211, 211 (N.Y. App. Div. 1997). Here, STEFL's fraud claim is that ISC misrepresented the nature of its agreement with DC Solar from the outset. Moreover, Florida law recognizes that "[f]raudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract," and thus can exist alongside a contract claim. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996).

### 4.   STEFL Relied on ISC's Misrepresentation that the Sublease Was a Complete Version.

Finally, ISC argues that it is entitled to summary judgment because STEFL did not conduct sufficient due diligence into either DC Solar or ISC prior to entering into the transaction. But the Court must consider this argument in light of the fact that STEFL has sued ISC for making affirmative misrepresentations about the Sublease, not for nondisclosure. Put differently, ISC is arguing that STEFL is at fault for believing ISC.

ISC's "justifiable reliance" argument fails as a matter of law. Justifiable reliance is not an element of fraud under Florida law. *See Butler*, 44 So. 3d at 105. Rather, a statement must be obviously false in order for a

fraud plaintiff to be unable to rely on it under Florida law.  *See Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 310 (Fla. 1st DCA 2011).  This is consistent with black letter fraud law.  *See* Rest. (2d) Torts § 540 ("The recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth, although he might have ascertained the falsity of the representation had he made an investigation.").  Accordingly, the pages ISC dedicates to how STEFL supposedly "rush[ed] into its transaction with DC Solar" are irrelevant.  ISC MSJ at 1.  So too are ISC's arguments based on its refusal to sign the Sublessee Acknowledgment.

In any event, even if STEFL was subject to a justifiable reliance requirement (and it is not), ISC has failed to show the absence of a genuine issue of material fact regarding STEFL's reliance on ISC's false statements. To the contrary, the record supports that STEFL conducted extensive diligence—both into DC Solar and ISC—and relied on ISC's role as a financially stable sublessee to enter the deal.  *See supra* pp. 8–9.  Moreover, ISC's decision to offer an alternative to the Sublessee Acknowledgment—the Side Letter, which falsely represented the basis of its agreement to sublease STEFL's MSGs—rebuts any argument that STEFL could not reasonably rely on ISC's representations.  As courts recognize, "because justifiable reliance 'involve[s] many factors to consider and balance, no single one of which is dispositive,' it is 'often a question of fact for the jury rather than a question of

27

law for the court.'" *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 496 (S.D.N.Y. 2012) (citation omitted).

## II.   ISC'S ARGUMENTS AGAINST STEFL'S CONTRACT CLAIM (COUNT I) AND DECLARATORY JUDGMENT CLAIM (COUNT II) FAIL AS A MATTER OF LAW.

STEFL has moved for summary judgment on its contract claim against ISC for failure to pay rent under the Sublease, as well as its alternative declaratory judgment claim. *See* Doc. 96.   As explained in that motion, STEFL bargained for and received from DC Solar both an assignment of and a security interest in DC Solar's rights under the Sublease. *See* Doc. 96 at 6–8.   Those rights included a "hell-or-high-water" clause that made ISC's obligation to pay rent *absolute* and *unconditional. Id.*

ISC does not contest that STEFL was assigned DC Solar's rights under the Sublease, nor the absolute nature of the hell-or-high-water clause. Rather, ISC relies entirely on the fraudulent Addendum, arguing that it amended the Sublease's hell-or-high-water clause.   STEFL already addressed in its affirmative summary judgment motion why ISC's argument is wrong. *See* Doc. 96 at 18–20.   ISC is still wrong here.

### A.   The Addendum Did Not Effectively Amend the Sublease.

ISC's motion cites several cases that stand for the proposition that parties to a contract may amend a hell-or-high-water clause. *See* ISC MSJ at 30–31.   STEFL does not disagree that a lessor can, under some

circumstances, amend a hell-or-high-water clause.  But that does not change that ISC and DC Solar did not validly amend the clause here.

First, STEFL was a named third-party beneficiary to the Sublease.  *See* Sublease (Doc. 96-5) at ¶ 19.   Under California law (which controls the Sublease, *see id.* at ¶ 20), ISC and DC Solar were prohibited from amending the Sublease to STEFL's detriment if STEFL accepted or acted in reliance on the Sublease before receiving notification of the change.   *See James v. Pawsey*, 162 Cal. App. 2d 740, 747 (Cal. 1958); Rest. (2d) Contracts § 311. STEFL clearly did act in reliance on the Sublease, when it—without knowledge of the Addendum—purchased and leased $75 million of MSGs.

Second, the Addendum violated the implied covenant of good faith and fair dealing.  *See Cobb v. Ironwood Ctry. Club*, 233 Cal. App. 4th 960, 966 (Cal. Ct. App. 2015).   By signing the Addendum, ISC frustrated STEFL's right as a third-party beneficiary to the benefit of the contract—namely, a secure income stream for the MSGs.   None of ISC's cited cases consider whether parties to a lease could amend a hell-or-high-water clause without the knowledge of the lease's intended third-party beneficiary.  As the UCC itself makes clear, even if ISC and DC Solar could modify the Sublease without additional consideration, their ability to do so was subject to the duty of good faith.  *See* Cal. Com. Code § 1304 (every contract under UCC "imposes an obligation of good faith in its performance and enforcement").

29

**B.** **Even if ISC Terminated the Sublease, Termination Would Not Eliminate Its Obligation to Pay Rent to STEFL.**

Finally, even if the Addendum did grant ISC a valid right to terminate the Sublease, ISC only exercised that right *after* STEFL exercised its own right to accelerate remaining rent based on ISC's prior default. *See* Doc. 96 at 21–23. Under California's Uniform Commercial Code, that accelerated rent remains due even after termination. *See* Cal. Com. Code § 10505 ("right based on prior default or performance" survives termination of lease).

**III. ISC'S ARGUMENTS ON STEFL'S UNJUST ENRICHMENT CLAIM (COUNT III) FAIL AS A MATTER OF LAW.**

Finally, ISC's argument for summary judgment on STEFL's unjust enrichment claim ignores that STEFL brings this claim, like its fraud claim, as an alternative to the contract claim. *See* ISC MSJ at 34–35. STEFL agrees that if there is a valid contract claim between it and ISC, then STEFL cannot recover for unjust enrichment—it will recover for breach of contract instead. ISC, however, provides no reason for dismissing STEFL's unjust enrichment claim other than the existence of an express contract. But that is accordingly no reason to dismiss the claim at all, since STEFL only seeks unjust enrichment if there is *not* an express contract governing the MSGs.

## CONCLUSION

ISC's summary judgment motion should be denied.

Respectfully submitted, this 16th day of February, 2021.

<u>*s/ Daniel J. Gerber*</u>
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SUZANNE BARTO HILL, ESQUIRE
Florida Bar No. 0846694
RUMBERGER, KIRK & CALDWELL
A Professional Association
300 South Orange Avenue, Suite 1400 (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
dgerber@rumberger.com
shill@rumberger.com

Lawrence A. Slovensky (admitted *pro hac vice*)
Georgia Bar No. 653005
Jeffrey R. Dutson (admitted *pro hac vice*)
Georgia Bar No. 637106
Benjamin B. Watson (admitted *pro hac vice*)
Georgia Bar No. 632663
Aaron Parks (admitted *pro hac vice*)
Georgia Bar No. 224347
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 572-4600
lslovensky@kslaw.com
jdutson@kslaw.com
bwatson@kslaw.com
aparks@kslaw.com

Lennette Lee (admitted *pro hac vice*)
California Bar No. 263023
KING & SPALDING LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071
(213) 443-4355
llee@kslaw.com

31

*Attorneys for Plaintiff SunTrust Equipment
Finance & Leasing Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which automatically sends e-mail notification of such filing to any attorneys of record.

This 16th day of February, 2021.

*s/ Daniel J. Gerber*

DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
RUMBERGER, KIRK & CALDWELL

32