# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

_____

|  |  |  |
|---|---|---|
| SUNTRUST EQUIPMENT FINANCE & LEASING CORP., | : | |
| | : | |
| | : | Civil Action No.: |
| Plaintiff/Counter-Defendant, | : | |
| | : | 6:19-cv-01624-CEM-LRH |
| v. | : | |
| | : | |
| INTERNATIONAL SPEEDWAY CORPORATION, | : | |
| | : | |
| | : | |
| Defendant/Counter-Plaintiff. | : | |

## INTERNATIONAL SPEEDWAY CORPORATION'S OPPOSITION TO SUNTRUST EQUIPMENT FINANCING & LEASING CORP.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND REQUEST FOR ORAL ARGUMENT

Defendant/Counter-Plaintiff International Speedway Corporation ("ISC") opposes

Plaintiff/Counter-Defendant SunTrust Equipment Finance & Leasing Corp.'s ("STEFL")

Motion for Summary Judgment (Doc. 96) and avers as follows.

## INTRODUCTION

STEFL's Motion for Summary Judgment as to Counts I and II of its Amended

Complaint is entirely contingent on two alternative theories:  (i) that the Addendum

(Addendum 1) to the Sublease between ISC and DC Solar, which permitted ISC to

terminate the Sublease, is invalid; and (ii) even if the Addendum is enforceable, STEFL

accelerated the rent allegedly owed by ISC before ISC terminated the Sublease.  Both of

these theories are unsupported by the law and the facts for the reasons that follow.

- 1 -

STEFL attacks the validity of the Addendum primarily on the basis that ISC and DC Solar were prohibited from amending the Sublease without prior notice to STEFL as a third-party beneficiary of the contract.  However, based on the very law that STEFL cites, prior notice to a third-party beneficiary is only required if and when the third-party beneficiary materially changes its position by taking action that constitutes justifiable and detrimental reliance on the contract before the contract is amended.  The Sublease could be amended without notice at any time prior to STEFL taking specific action in detrimental reliance.  STEFL admits that it did not close or fund its transaction with DC Solar until _after_ ISC and DC Solar amended the Sublease and, therefore, no notice to STEFL was required as a matter of law.

STEFL also argues that the Addendum is unenforceable because it lacks consideration.  However, STEFL admits that the Addendum was executed on the same day as the Sublease as an integral part of that agreement and the entire contractual relationship between ISC and DC Solar that encompassed the connected sponsorship agreements identified in the Addendum.  Consideration under these circumstances is not required by California law.  Even if it were, ISC's agreement to both the Sublease in its entirety and the sponsorship agreements constitutes consideration for the mutual promises in the Addendum.

STEFL next argues that the Addendum violates the implied duty of good faith and fair dealing.  STEFL's basis for an alleged breach of the duty of good faith—amending the Sublease without its consent or knowledge—contradicts the express terms of the Sublease which permit amendments without notice to STEFL.  As such, STEFL's claim based on

- 2 -

the duty of good faith fails as a matter of law.  Finally, STEFL claims generally that it is an assignee and obtained a security interest in the Sublease from DC Solar.  However, as a matter of law, STEFL obtained no rights greater than those of DC Solar as the original contracting party, and STEFL is subject to the same contract terms and conditions as amended that applied to DC Solar.  In sum, none of these grounds invalidate the Addendum to the Sublease, and ISC had the contractual right to terminate that Sublease.  STEFL's attempt to invalidate the Addendum on these grounds should be denied.

Alternatively, STEFL argues that even if the Addendum is an enforceable amendment to the Sublease which provided ISC the right to terminate it, including the so-called "hell or high water" clause, STEFL accelerated the rent before ISC terminated the Sublease.  STEFL is incorrect as a matter of law.  The Sublease and any claims arising out of, or connected to, it were the property of the DC Solar bankruptcy estate as of February 4, 2019.  Only the trustee had standing to bring such claims.

STEFL contends that it attempted to accelerate the rent on April 9, 2019, in an action filed in the United States District Court for the District of Georgia.  STEFL did not seek to lift the automatic stay prior to its action or to have the contracts rejected prior to its action, and that action violated the automatic stay in place at the time.  Furthermore, STEFL did not have standing to enforce the contracts.  STEFL's attempt to accelerate the rent is invalid and void as a matter of law.  By contrast, ISC filed a motion in the DC Solar bankruptcy proceeding to lift the automatic stay and have the Sublease rejected.  That motion was granted on May 21, 2019, and ISC terminated the Sublease the following day.  Thus,

38020318.7

STEFL took no legal action to accelerate the rent before ISC terminated the Sublease. STEFL's motion on this basis should also be denied.

**STATEMENT OF MATERIAL FACTS**

ISC incorporates the statement of undisputed material facts set forth in its Motion for Summary Judgment (Doc. 97) in an effort not to repeat all of those facts here. Additional statements of undisputed material facts that controvert STEFL's contentions are provided throughout the argument section of this Memorandum with appropriate record citations.

**ARGUMENT**

## I.     THE ADDENDUM IS VALID AND ENFORCEABLE

STEFL contends that ISC was not entitled to amend the Sublease, including the so-called "hell or high water" clause, without notice to STEFL as a third-party beneficiary. (*See* Pl.'s Mot., Doc. 96 at 3, 12).  STEFL concludes that the Addendum is unenforceable and ISC had no right terminate the Sublease.  STEFL's argument is contrary to the expressed language of the Sublease that STEFL approved, as well as the law.

### A.     The Express Language of the Sublease Permits Amendments Without Prior Notice to STEFL.

STEFL admits that it reviewed and approved the Sublease (*Id.* at 5; Am. Compl., Doc. 30 ¶ 4), which expressly permits amendments without prior notice to it.  Paragraph 20 of the Sublease approved by STEFL provides that it may be amended or modified "by a writing signed by both Sublessor and Sublessee" alone.  (Sublease, Am. Compl. Ex. D, Doc. 30-4).  Nowhere in the Sublease is notice to STEFL, or its consent, required for

- 4 -

amendments to that document.  (*Id.*).  Indeed, the only notice provision in the Sublease concerns amendments of the Master Lease:  "No term, condition or provision of *the Master Lease* may be modified, amended or deleted without the prior written consent of Lessor." (Sublease, Doc. 30-4 ¶ 2 (emphasis added)).  Omission of an express notice requirement regarding amendment of the Sublease constitutes affirmative consent to other forms of amendments without notice to STEFL.  *See Karo v. San Diego Symphony Orchestra Ass'n*, 762 F.2d 819, 822 (9th Cir. 1985) (applying California third-party beneficiary law and citing Restatement (Second) of Contracts § 311 (cited in Pl.'s Mot., Doc. 96 at 19)) (stating that "in the absence of terms in a third-party beneficiary contract prohibiting change or modification of a duty to an intended beneficiary, the promisor and promisee retain power to discharge or modify the duty by subsequent agreement"); *see* Restatement (Second) of Contracts § 311 cmt. f (A "promisor and a promisee can by agreement create a duty to a beneficiary which cannot be varied without his consent.  But in the absence of such an agreement, the parties retain control over the contractual relation they have created.").

Both DC Solar as Sublessor and ISC as Sublessee executed the Addendum, which STEFL acknowledges as an amendment of the Sublease permitting termination by its terms upon DC Solar's default under either the Sublease or the sponsorship agreements identified in the Addendum.  Paragraph 1 of the Addendum specifically provides that the "Sublease shall be deemed to be amended, with the following provisions inserted into the Sublease." (Am. Compl. Ex. J, Doc. 30-10).[1]

---

[1] The title "Addendum" bears no legal significance.  Courts across the country uniformly hold that the language in the contract, not titles, controls as a matter of law.  *Glenn v. Am. United Life Ins. Co.*, No.

The parties' right to amend the Sublease also extends to the so-called "hell or high water" clause. "It is well-established that: 'The hell or high water clause is not ... watertight' and 'courts have found "hell or high water" provisions unenforceable where the lessor consented to cancellation of the lease.'" *Blue Ridge Bank, Inc. v. City of Fairmont*, 240 W.Va. 123, 129-30, 807 S.E.2d 794, 800-01 (W. Va. 2017) (citations omitted). Thus, a hell or high water provision can also be avoided if the sublessor consents to cancel the lease. *Info. Leasing Corp. v. GDR Investments, Inc.*, 152 Ohio App.3d 260, 266, 787 N.E.2d 652, 657 (Ohio App. 2003) (noting that "courts have also recognized that the lessor may give, through word or conduct, the lessee consent to cancel an otherwise noncancelable lease" and "'that the consent may be oral and may be established by conduct that reasonably manifests an intent'") (quoting *Colonial Pac. Leasing Corp. v. J.W.C.J.R. Corp.*, 977 P.2d 541, 548 (Utah Ct. App. 1999)) ("We note that even the 'hell or high water' provision provides a mechanism by which a lessee can escape its harsh strictures … the consent of the party to whom the promise runs."). "Any manifestations that the obligation of the lessee will not be enforced independently of the obligation that runs to the consenting party is sufficient." *Info. Leasing Corp.*, 152 Ohio App.3d at 266, 787 N.E.2d at 657.

---

7:12-cv-03691, 2014 WL 3895429, at *9 n. 5 (N.D. Ala. Aug. 8, 2014), *aff'd*, 604 F. App'x 893 (11th Cir. 2015) ("[T]he heading of a [contract's] section cannot limit the plain meaning of the text."); *Hayes v. Liberty Mut. Ins. Grp., Inc.*, No. 11-cv-15520, 2012 WL 12897380, at *4 (E.D. Mich. June 26, 2012), *aff'd sub nom.*, 526 F. App'x 564 (6th Cir. 2013) ("it is the language and intent of the [contract] and not the title that controls, even if the titles appear misleading or confusing." (citation and quotations omitted)); *Chartis Prop. Cas. Co. v. Huguely*, 243 F. Supp. 3d 615, 624 (D. Md. 2017), *aff'd sub nom.*, 734 F. App'x 184 (4th Cir. 2018) (An "ambiguous title or heading does not create ambiguity in the contract where it is followed by clear specific language.").

- 6 -

Amendment of a hell or high water clause is accomplished either expressly by words or implicitly by conduct.  At a bare minimum, "whether consent has been given to a cancellation is a question of fact for the trier of fact" when the sublessor's manifestations of such assent are not expressed but through conduct.  *Id.*; *Colonial Pac. Leasing Corp.*, 977 P.2d at 548, 38 UCC Rep. Serv. 2d 424.  *See In re Atl. Computer Sys., Inc.*, 173 B.R. 844, 853 (S.D.N.Y. 1994) (denying summary judgment based on ambiguity); *In re Atl. Computer Sys.*, 173 B.R. 858, 860 (S.D.N.Y. 1994); *Nissan World, LLC v. Mkt. Scan Info. Sys., Inc.*, No. 05-2839-MAH, 2014 WL 1716451, at *24 (D.N.J. Apr. 30, 2014) (denying summary judgment).  Here, the Sublease expressly permits the parties to that contract alone, ISC and DC Solar, to amend it, including the hell or high water clause by their consent to termination, and STEFL's contention is contrary to the Sublease language that it approved.

STEFL's reliance on the Sublease's standard integration clause to contend that ISC and DC Solar were prohibited from amending it is also misplaced.  That clause provides the following:

> This Sublease and the Master Lease constitute the entire contract between the parties with regard to the subject matter hereof, are the final expression of agreement with respect thereto and supersede all prior oral or written discussions or agreements.  There are no Sublease terms which are not contained herein or in the Master Lease.

(Sublease, Doc. 30-4 ¶ 20).  The clause is immediately followed by the language permitting ISC and DC Solar to amend the Sublease without notice to STEFL or its consent.  It is a fundamental axiom of contract law that whenever possible contract provisions should be read "together, so as to give effect to every part, if reasonably practicable, each clause

- 7 -

helping interpret the other." *R.W.L. Enterprises v. Oldcastle, Inc.,* 17 Cal.App.5th 1019, 1026, 226 Cal. Rptr. 3d 677, 682 (Cal. App. 2017) (internal quotation marks and citations omitted). Thus, an "interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable." *Id.* STEFL's reading of the integration clause to prohibit amendments that are expressly permitted in the very next sentence renders the subsequent clause unenforceable and superfluous. In order to read the clauses consistently to give effect to each, the integration clause simply prohibits reliance on prior oral or written representations outside the four corners of the Sublease, which can be amended by a further written instrument executed by the parties to the Sublease. STEFL's contention that the first part of this integration clause prohibits amendments is contrary to the law and without merit.

**B.** **California Law Does Not Require Prior Notice to STEFL as a Third-Party Beneficiary Based on the Uncontroverted Facts.**

STEFL contends that under Cal. Civ. Code § 1559 a "contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." (Pl.'s Mot., Doc. 96 at 12). This statute was enacted in 1872 "simply to exclude enforcement by persons are who only incidentally or remotely benefitted" and thus are not intended third-party beneficiaries. *Goonewardene v. ADP, LLC*, 6 Cal.5th 817, 827-28, 434 P.3d 124, 131 (Cal. 2019) (internal citation omitted). Thus, only the parties to the contract can rescind it, and unless agreed to by those parties, rescission may only occur in certain circumstances. *See Schauer v. Mandarin Gems of Cal., Inc.*, 125 Cal. App.4th 949,

959, 23 Cal. Rptr.3d 233, 240 (Cal. App. 2005) (citing Cal. Civ. Code § 1689 and holding that a third-party beneficiary lacks the ability to rescind a contract).

STEFL claims "that the parties to a contract cannot modify the contract to the detriment of a third-party beneficiary *if the beneficiary accepts or acts in reliance on the contract before receiving notification of the change.*"  (Pl.'s Mot., Doc. 96 at 19 (emphasis added) (citing *James v. Pawsey,* 162 Cal. App.2d 740 (Cal. App. 1st 1958); *Principal Mut. Life Ins. Co. v. Vars, Pave, McCord & Freedman,* 65 Cal. App.4th 1469, 1487, n. 9 (Cal. App.2d 1998))).  STEFL's Motion acknowledges, as it must, that the "'parties to a contract entered into for the benefit of third persons may rescind or abrogate it without the assent of such third persons at any time *before* the contract is accepted, adopted, or acted upon by such third persons.'"  *Id.* (emphasis in original) (quoting *James*, 162 Cal. App.2d at 747).

Under California law, the parties to a contract "may rescind, vary or abrogate the contract as they see fit, without the assent of the third person, at any time before the contract is accepted, adopted, or acted upon by him, and such rescission deprives the third person of any rights under or because of the contract." *James*, 162 Cal. App.2d at 747, 328 P.2d 1023; *Riley v. Riley,* 118 Cal. App.2d 11, 15, 256 P.2d 1056 (Cal. App. 1953); *Mitchell v. Marklund,* 238 Cal. App.2d 398, 407, 47 Cal. Rptr. 756 (Cal. App. 1965).  *See* Restatement (Second) of Contracts § 311(3) (stating that in the absence of an express agreement between the contracting parties not to modify a contract without notice, contracting parties retain the right to modify the duty owed to the third party unless the third party "materially changes his position in justifiable reliance on the promise or brings suit on it or manifests assent to it at the request of the promisor or promise").  Indeed, a "third-party beneficiary

- 9 -

lacks standing to sue, however, where her rights have not vested prior to a contract being modified or rescinded." *Bennett v. American General Life Ins. Co.*, No. CV 13-04822, 2015 WL 12661909, at \*6 (C.D. Cal. Jan. 26, 2015).

In order to establish that ISC and DC Solar were not permitted to vary, amend or abrogate the terms of the Sublease without notice to STEFL, it must produce undisputed evidence that it materially changed its position in actual and justifiable reliance on the pre-amendment version of the Sublease to its detriment. *See Karo*, 762 F.2d at 822 (dismissing complaint based on contractual rights as a third-party beneficiary inasmuch as plaintiff alleged no action in reliance on the original contract terms in the three years from the initial contract to the modification of the contract and therefore had no vested interest that would prevent the modification). The undisputed facts to which STEFL admits show that it did not take action in detrimental reliance on the Sublease *prior to its amendment*, and even if it had, any such alleged reliance was objectively unjustified.

STEFL admits that ISC and DC Solar executed the Sublease and the Addendum on the same day, September 27, 2017. (Pl.'s Mot., Doc. 96 at 6). STEFL's Motion acknowledges that "STEFL received a copy of the Sublease the day it was executed, and over the next week purchased and leased \$75 million of MSGs." (*Id*. at 20). In fact, STEFL did not accept, close or fund its transaction with DC Solar until September 28, 2017. (*Id*. at 4; Cooper Dep., ISC's Mot. Ex. D-2, Doc. 97-42 at 155:12-165:4; Capps Dep., ISC's Mot. Ex. D-1, Doc 97-41 at 76:1-12). Thus, it is undisputed that the Sublease was amended *before* STEFL closed its transaction and took any action representing detrimental reliance. STEFL did not materially change its position by purchasing the MSGs or funding the

- 10 -

transaction prior to the Sublease's amendment.  Under the law, ISC and DC Solar were free to vary or abrogate Sublease terms without notice to STEFL up to the point that it detrimentally relied on the Sublease by funding its transaction.

Even if STEFL could provide undisputed evidence that it materially changed its position by closing the transaction before the Sublease was amended, it must also provide undisputed evidence that such reliance was justifiable.  The "power to modify terminates when the beneficiary materially changes position in _justifiable reliance_ on the promise before receiving notification of the modification." _Karo,_ 762 F.2d at 822 (citing Rest. (Second) Contracts § 311(3)) (emphasis added).  (_See_ Pl.'s Mot., Doc. 96 at 19 (citing "justifiable reliance" provision)).  STEFL approved the Sublease permitting amendments without notice to it when it easily could have adopted a clause requiring such notice. Indeed, STEFL did require such notice for changes to the Master Lease.  (_See_ Sublease, Doc. 30-4 ¶ 2).  ISC also placed STEFL on actual notice that it would not agree to the terms or conditions of the Master Lease before STEFL closed the transaction.  (_See_ ISC's Mot., Doc. 97 at 12-16).  STEFL knew before it closed its transaction with DC Solar that ISC considered its contract with DC Solar completely separate and independent from STEFL's contract with DC Solar and would not subject itself to obligations or liability to STEFL. (_Id._).  The foregoing facts are uncontroverted and at a minimum create a dispute as to whether any purported reliance by STEFL was justifiable, which precludes summary judgment on STEFL's behalf.  "Except in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's

- 11 -

reliance is reasonable is a question of fact." *Blankenheim v. E. F. Hutton & Co.*, 217 Cal. App.3d 1463, 1475, 266 Cal. Rptr. 593 (Cal. App. 1990).

STEFL also contends that "the Sublease incorporates the Master Lease by reference and provides that ISC's use of the MSGs 'is subject to all terms and conditions of the Master Lease,' meaning that ISC agreed to these terms as well." (Pl.'s Mot., Doc. 96 at 17 (citing Sublease at 1)). STEFL erroneously enlarges the scope of this "subject to" clause from the "use of the [MSGs]" to all of the terms and conditions of the Master Lease. (*See* Master Lease, Am. Compl. Ex. A, Doc. 30-1 ¶ 7) (governing use, maintenance and repair of the MSGs). STEFL's contention in this regard is belied by ISC's express refusal to sign the Subleasing Acknowledgement, which would have subjected it to all of the terms and conditions of the Master Lease.

Moreover, California law is clear that a "subject to" clause such as this one does not incorporate all of the terms and conditions of a master lease into a sublease as STEFL contends. *Reed v. South Shore Foods, Inc.*, 229 Cal.App.2d 705, 712, 40 Cal. Rptr. 575 (Cal. App. 1964). Indeed, "such 'subject to' clauses are merely a statement of a rule of law binding upon the sublessee without necessity of express provision in the sublease, and they do not create any privity either of contract or estate between the sublessee and head lessor. Therefore, the 'subject to' clause cannot be construed as incorporating the provisions of the master lease into the sublease." *Id*. (citing *Johnson v. Couch*, 189 Cal.App.2d 687 (Cal. App. 1961); *Pedro v. Potter*, 197 Cal. 751 (Cal. 1926)). This is so because "the master lease and the sublease vest different estates and rest upon different agreements. Benefits conferred and consideration given for such benefits may be entirely different." *Id*. As

such, the "subject to" clause (which only concerns use of the MSGs in any event) does not incorporate the terms of the Master Lease in the Sublease as a matter of California law. *See id*. at 713.

### C.   STEFL's Contention that the Addendum Violates an Implied Duty of Good Faith and Fair Dealing as to STEFL Is Without Merit.

STEFL made this same good faith and fair dealing argument in its opposition to ISC's Motion to Dismiss and relied on the same case.  (*Cf.* Pl.'s Mot., Doc. 96 at 20 (citing *Cobb. v. Ironwood Country Club*, 233 Cal. App.4th 960, 966 (Cal. Ct. App. 2015)), *with* Pl.'s Opp. to Mot. to Dismiss, Doc. 39 at 21).  ISC argued that the Sublease authorizes ISC and DC Solar to amend it and imposes no duty to disclose such an amendment to STEFL. This Court held "ISC's legal argument on this point may or may not have merit, but the Court cannot reach it because ISC has skipped a step in its legal argument by assuming that Sublease Addendum #1 is a valid amendment to the Sublease."  (*See* Order, Doc. 69 at 18).

As discussed herein and throughout ISC's Motion for Summary Judgment, STEFL has not provided undisputed facts or a sufficient legal basis on which to invalidate the Addendum.  Thus, the Addendum is valid for all of the reasons stated herein and, therefore, the duty of good faith and fair dealing cannot impose substantive duties or limitations contrary to those in the expressed terms of the contract.  *Guz v. Bechtel Nat. Inc.,* 24 Cal.4th 317, 349-50, 100 Cal. Rptr.2d 352 (Cal. 2000).  The implied covenant of good faith and fair dealing "does not alter a party's existing rights or duties under a contract," and "if defendants were given the right to do what they did by the express provisions of the contract there can be no breach."  *Enchanced Athlete Inc. v. Google LLC,* No. 19-cv-08260, 2020

38020318.7

WL 4732209, at *5 (N.D. Cal. Aug. 14, 2020) (internal citations omitted).  Given that the Sublease was modified in accordance with its express terms, that modification does not breach an implied duty of good faith and fair dealing to STEFL.

STEFL's continued reliance on *Cobb. v. Ironwood Country Club* is equally misplaced.  233 Cal. App.4th 960, 183 Cal. Rptr.3d 282 (Cal. App. 2015).  *Cobb* does not address claims by a third-party beneficiary or the duty of good faith and fair dealing in the context of contradictory contractual provisions.  *Cobb* held only that a country club's unilateral insertion of an arbitration clause into its bylaws after it entered into plaintiffs' membership agreements was unenforceable as to them.  233 Cal. App.4th at 965-66, 183 Cal. Rptr.3d at 286-87.  The *Cobb* court held that an attempt to retroactively impose a new provision on the parties' contractual relationship violated the implied duty of good faith and fair dealing.  *Id. Cobb* does not support STEFL's argument that ISC and DC Solar (as the contracting parties) could not jointly agree to amend their contractual rights and obligations under the Sublease when the express terms of the Sublease approved by STEFL provides them that right.

**D.     STEFL's Contention that the Addendum Is Invalid Because It Is Not Supported by Consideration Is Without Merit.**

STEFL claims that modifications of written contracts are not binding unless supported by consideration.  (Doc. 96 at 21).  As discussed in ISC's Motion for Summary Judgment (Doc. 97 at 32-33), California law provides that "modifications to contractual terms do not require consideration where they are contemplated by the contract, the contract sets forth a method for effecting such modifications, and the parties comply with

- 14 -

that method." *Gemcap Lending I, LLC v. Crop USA Insurance Agency, Inc.*, No. 13-05504, 2014 WL 12589335, at *4 (C.D. Cal. Jan. 14, 2014) (finding that contract language providing for amendment by mutual consent of the parties in writing constituted such a provision); *see Fennie v. E-Fuel Corp.*, No. 5:13-cv-04687, 2014 WL 1494370, at *3 (N.D. Cal. Apr. 16, 2014) (no consideration needed to modify maturity date of a promissory note when note contemplated amendment of maturity, however contract was ambiguous as to whether modification after maturity date was permissible). Moreover, Cal. Civ. Code § 1614 provides that "[a] written instrument is presumptive evidence of a consideration."

Amendments were contemplated by the Sublease and the parties executed the Addendum in compliance with the Sublease requirements. The Addendum was executed on the same day and as part of the Sublease agreement.[2] STEFL acknowledges that the Addendum and the sponsorship agreements cross-referenced in it were "'part of the bargain struck between the parties concerning the Sublease.'" (Am. Compl., Doc. 30 ¶ 63 (quoting Chitwood Decl., ISC's Mot. Ex. 40, Doc. 97-40 ¶ 44)). ISC's agreement to the sponsorship agreements, and to provide the track and corporate assets reflected in those agreements, also constituted consideration for the Addendum.

In sum, the express Sublease terms contemplated the execution of amendments, and the Addendum was executed in compliance with those terms at the same time and as part of the Sublease agreement. STEFL admits as much and fails to provide undisputed facts

---

[2] ISC's corporate counsel involved in the transaction testified to his understanding that the additional terms were placed in an Addendum at DC Solar's request as part of its process to preserve its underlying sublease template. (Odom Dep., ISC's Mot. Ex. D-5, Doc. 97-45 at 103:19-104:2, 104:11-14). *See also* Odom Dep. at 106:2-9, attached hereto as **Exhibit 1**.

38020318.7

supported by clear law requiring additional consideration for the Addendum.  STEFL is not entitled to judgment as a matter of law invalidating the Addendum on the basis of an alleged lack of consideration.

> **E.     Neither STEFL's Position as an Assignee nor Its Security Interest Provide It Any Greater Contractual Rights than DC Solar Possessed.**

STEFL claims that it is entitled to future rents under the Sublease as an assignee and pursuant to a security interest DC Solar granted to it in the Subleasing Consents and Amendments.  (*See* Pl.'s Mot., Doc. 96 at 12-13).  As a matter of well-established law, neither claim grants STEFL any greater rights than those held by DC Solar as the original contracting party.  As DC Solar's assignee, STEFL is subject to the same contract provisions, arguments and defenses that DC Solar was subject to as the original contracting party. *Casiopea Bovet, LLC v. Chiang*, 12 Cal. App.5th 656, 662-63, 219 Cal. Rptr.3d 157, 162 (Cal. App. 2017) ("An assignee stands in the shoes of the assignor, taking his rights and remedies, subject to any defenses which the obligor has against the assignor prior to notice of the assignment.") (citations omitted); *Johnson v. County of Fresno*, 111 Cal. App.4th 1087, 1096, 4 Cal. Rptr.3d 475, 482 (Cal. App. 2003) ("The assignee 'stands in the shoes' of the assignor, taking his rights and remedies, subject to any defenses which the obligor has against the assignor prior to notice of the assignment."); *Cal-W. Bus. Services, Inc. v. Corning Capital Group*, 221 Cal. App.4th 304, 310-11, 163 Cal. Rptr.3d 911, 916 (Cal. App. 2013) (same).  *See Gietzen v. Covenant RE Mgmt., Inc.*, 40 Cal. App.5th 331, 340, 253 Cal. Rptr.3d 97, 103 (Cal. App. 2019), *review denied* (Jan. 2, 2020)

(assignee of lease through a foreclosure had no greater rights than assignor and therefore assignee could not enforce exculpatory clause previously extinguished by assignor).

Citing § 9-607(a)(3) of California's Commercial Code, STEFL also contends that it may enforce ISC's obligations under the Sublease as a secured party.  (Pl.'s Mot., Doc. 96 at 12-13).  However, STEFL is subject to the same contractual terms and defenses as a secured party as DC Solar was as the contracting party.  California Commercial Code § 9-404(a) provides the following:

> (a) Unless an account debtor has made an enforceable agreement not to assert defenses or claims, and subject to subdivisions (b) to (e), inclusive, *the rights of an assignee are subject to both of the following:*
> *(1) All terms of the agreement between the account debtor and assignor and any defense or claim in recoupment arising from the transaction that gave rise to the contract*.

*Id.* (emphasis added).  *See Zions First Nat'l Bank v. Christiansen Bros., Inc. (In re Davidson Lumber Sales, Inc.)*, 66 F.3d 1560, 1565 (10th Cir. 1995) ("The relative rights of account debtors and assignees of accounts receivable are set out in [§ 9–404] of the UCC."); *Maine Farmers Exch., Inc. v. Farm Credit of Maine*, 789 A.2d 85, 88 n.7, 46 UCC Rep. Serv.2d 1172 (Me. 2002) ("Even though Article 9 usually refers to a creditor with a security interest as a 'secured party,' a secured party with a security interest in accounts is the 'assignee' under [§ 9-404].").

Under either theory, STEFL stands in the shoes of DC Solar and is subject to all of the contractual terms to which DC Solar is as a matter of law.  STEFL is not entitled to judgment as a matter of law based on an attempt to assert rights greater than those possessed

by DC Solar as to ISC.  As such, STEFL is subject to the Addendum and ISC's termination rights thereunder.

## II.   STEFL'S CLAIM THAT IT ACCELERATED THE RENT PRIOR TO TERMINATION OF THE SUBLEASE IS WITHOUT MERIT

STEFL next argues that even if ISC was permitted to terminate the Sublease pursuant to the Addendum, it only did so after STEFL accelerated the rent.  (Pl.'s Mot., Doc. 96 at 18).[3]  STEFL claims that on January 15, 2019, it "notified ISC of DC Solar's default and instructed ISC to send all rent payments under the Sublease to STEFL directly." (*Id*. at 9).   STEFL has suggested throughout this litigation that its letter somehow constituted "foreclosure" of its security interest.  STEFL further claims that pursuant to that purported foreclosure, on or around April 9, 2019, it "exercised its right to accelerate all outstanding rental payments under the Sublease" by filing an amended complaint in its action previously pending in Georgia.  (*See id*. at 9 (citing *SunTrust Equipment Finance & Leasing Corp. v. Int'l Speedway Corp.*, No. 1:19-cv-01493-CC (N.D. Ga. Apr. 9, 2019))). STEFL's contention is contrary to established bankruptcy law.

First, contrary to STEFL's assertions, it never effectuated a "foreclosure" under Cal. Com. Code § 9-601 and it fails to present any facts—much less undisputed ones— evidencing that it did.  Pursuant to § 9-601(a)(1), after DC Solar's default, STEFL could "[r]educe [its] claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure."  STEFL did not take any

---

[3] STEFL also contends that ISC defaulted before it terminated the Sublease because the Addendum was unenforceable and constituted a breach of the Sublease.  (Pl.'s Mot., Doc. 96 at 22-23).  That argument is fairly circular and is without merit for all of the above-stated reasons.

judicial action to foreclose its claims prior to February 4, 2019, the date on which DC Solar filed its Chapter 11 petition in the United States Bankruptcy Court for the District of Nevada.  *See In re: Double Jump, Inc.*, Lead Case No. 3:19-BK-50102-BTB (Bankr. D. Nev.).  (*See also* Am. Compl., Doc. 30 ¶ 85).  Instead, STEFL merely sent a letter dated January 15, 2019, directing ISC to remit payment to STEFL.  This letter alone is insufficient to terminate DC Solar's interest in the Sublease pursuant to § 9-601.  The Sublease and all rights and claims thereunder remained DC Solar's property until it filed its Chapter 11 petition when those rights and claims became property of DC Solar's bankruptcy estate.

Inasmuch as STEFL did not legally foreclose the Sublease, it became property of the bankruptcy estate.   Under 11 U.S.C. § 541(a), upon the filing of a petition for bankruptcy relief an estate that consists of "all legal or equitable interests of the debtor in property as of the commencement of the case" is created.  *Id.*, § 541(a)(1).  The estate includes "any causes of action possessed by the debtor."  *Seward v. Devine,* 888 F.2d 957, 963 (2d Cir. 1989).  In evaluating whether the claims are property of the estate, courts look to whether they are derivative of the debtor or separate and independent.  *See In re Enron Corp.*, 292 B.R. 507, 510-11 (S.D.N.Y. 2002) (considering whether shareholder claims under a merger agreement were derivative and possessed by the debtor or whether they were separate and independent).  Claims that belong to the bankruptcy estate must be asserted by the bankruptcy trustee.  *Id.* at 511; *see In re Granite Partners,* 194 B.R. 318, 324-25 (Bankr. S.D.N.Y. 1996) ("Where the trustee has standing to sue, the automatic stay prevents creditors or shareholders from asserting the claim notwithstanding that outside of

bankruptcy, they have the right to do so."); *St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.,* 884 F.2d 688, 701-02 (2d Cir. 1989). The DC Solar Bankruptcy Trustee is still actively investigating claims, including those relating to the Sublease. *See In re Double Jump, Inc.*, *supra*, Dkt. No. 2530 (attaching tolling agreement continuing time period when bankruptcy trustee may assert claims against ISC on account of the Sublease, attached hereto as **Exhibit 2**, ¶ 4)

Upon DC Solar's filing of a bankruptcy petition on February 4, 2019, a bankruptcy estate was created that included the DC Solar Sublease and any claims arising from, or in connection with, that contract. *See* 11 U.S.C. § 541(a)(1); *Seward*, 888 F.2d at 963. STEFL did not judicially foreclose its security interests prior to institution of the bankruptcy estate and, therefore, did not remove the Sublease or those claims from the bankruptcy estate.

STEFL attempted to usurp the power of the trustee by bringing claims against ISC as a third-party beneficiary to the Subleases in violation of the automatic stay. (*See* Pl.'s Mot. Cooper Decl. Ex. C, Doc. 96-17 (Mar. 8, 2019 Letter)). *See also SunTrust Equipment Finance & Leasing Corp. v. Int'l Speedway Corp.*, No. 1:19-cv-01493-CC (N.D. Ga.). STEFL's attempt to obtain payment from ISC on April 9, 2019, and thereby extinguish the bankruptcy debtor's claims, constituted the exercise of control over property of the estate in violation of the automatic stay. *NAP Chesterfield, L.P. v. Rhodes, Inc. (In re Rhodes, Inc.)*, No. 04-78434, 2005 WL 6487212, at *6 (Bankr. N.D. Ga., June 28, 2005). As a matter of law, STEFL lacked standing to bring such claims and its actions were completely ineffectual. *See Granite,* 194 B.R. at 324-25 ("If the cause of action belongs to the estate, the trustee has exclusive standing to assert it… [and] the automatic stay prevents creditors

38020318.7

or shareholders from asserting the claim.").  Indeed, Debtor DC Solar continued to assert an interest in the Sublease by, *inter alia*, opposing ISC's Motion for Relief from Stay.  *See In re Double Jump, Inc.*, *supra*, Dkt. No. 328.

STEFL did not seek relief from the automatic stay at any time.  Accordingly, any and all actions taken by STEFL in violation of the automatic stay are void.  *Schwartz v. United States (In re Schwartz),* 954 F.2d 569, 572–75 (9th Cir. 1992).  By contrast, ISC properly requested relief from the automatic stay to terminate the Sublease and asked the Court to reject the Sublease and connected sponsorship agreements on February 22, 2019.  *In re Double Jump, supra*, Dkt. No. 174.  That motion placed DC Solar and STEFL on actual notice that ISC sought relief from the stay to immediately terminate the Sublease and sponsorship agreements.  *Id.*  On May 21, 2019, the United States Bankruptcy Court for the District of Nevada granted ISC's request for relief from stay and rejected the Sublease and related contracts.  *Id.*, Dkt. No. 722.  The following day, May 22, 2019, ISC formally terminated the Sublease and sponsorship agreements.  That notice of termination stated:  "To the extent the Agreements have not already been terminated as a result of the numerous breaches and defaults under the Agreements, the Agreements are terminated effective immediately."  (*See* ISC Notice of Termination, ISC's Mot. Ex. 39, Doc. 97-39).  Accordingly, STEFL was placed on actual notice of ISC's intent to terminate the Sublease as of February 22, 2019, and the Sublease was terminated on May 22, 2019.  As discussed fully above, STEFL's letter and complaint in the interim were invalid and void as violations of the automatic stay and as a result of STEFL's lack of standing.  STEFL failed to foreclose its security interests prior to the bankruptcy or to obtain relief from the automatic

stay, and thereafter attempted to exert control over estate assets that it lacked standing to pursue as a third-party beneficiary or secured party.

ISC's proper notice of termination preceded any valid or enforceable action taken by STEFL to accelerate the rent and the Sublease was terminated.  STEFL's argument to the contrary violates well-established bankruptcy law, and it is not entitled to summary judgment on that basis.

## III.   STEFL'S ALLEGED DAMAGES ARE RIFE WITH DISPUTED FACTS

Relying on its designated expert's report, STEFL contends it is entitled to $46,903,073 in outstanding rent and reasonable attorneys' fees as a matter of law.  (Pl.'s Mot., Doc. 96 at 15-16).  ISC's expert witness, Michele Riley, challenged STEFL's report on several grounds that represent genuine disputes of material facts.  (*See* Riley Report, Doc. 95-2).  First, STEFL's expert acknowledges that future rent must be discounted to present value, but utilized an excessively large discount rate to artificially inflate its damages.  (*See id*. at ¶¶ 35-42, 51).  STEFL's expert also ignored any mitigation of its damages by retrieving, re-leasing or selling the equipment despite its duty to mitigate.  *Li v. Sheltzer,* No. 1:07-CV-1039AWIGSA, 2008 WL 5216033, at *9 (E.D. Cal. Dec. 12, 2008) ("Both Federal and California law recognize a duty to mitigate damages, and whether a plaintiff has failed to mitigate damages is generally a question of fact for the jury.").  (*See* Riley Report, ¶¶ 45-46).  STEFL's expert also failed to consider any offsets to the damages alleged such as ISC's ongoing storage and insuring of the units because STEFL did not retrieve them.  STEFL contends that ISC is still in "possession" of the

MSGs, but ignores the fact that ISC terminated the Sublease and repeatedly requested that STEFL remove them.  *See* § IV below.

## IV. STEFL'S MOTION FOR SUMMARY JUDGMENT AS TO ISC'S COUNTERCLAIMS AND AFFIRMATIVE DEFENSES SHOULD BE DENIED

STEFL moved for summary judgment on ISC's counterclaims and some of ISC's affirmative defenses.  It is noteworthy in the context of the foregoing arguments that STEFL does not seek summary judgment on ISC's affirmative defenses of setoff or STEFL's failure to mitigate its damages.  ISC voluntarily withdraws its affirmative defense based on the doctrine of accord and satisfaction.  For the following reasons, STEFL's motion on the counterclaims and the other affirmative defenses should be denied.

### A. STEFL's Motion Regarding ISC's Counterclaims Should be Denied.

#### 1. STEFL is not entitled to summary judgment on ISC's unjust enrichment claim (Counterclaim Count I).

ISC's unjust enrichment claim seeks recovery for costs and expenses that ISC incurred (and continues to incur) for storing STEFL's MSGs despite ISC's demands for STEFL to retrieve that equipment.  (Counterclaim, Doc. 70 at 22).  There is no express contract governing the parties' relationship in this regard, and ISC's unjust enrichment claim does not seek recovery for alleged breaches of any agreement, unlike STEFL's unjust enrichment claim which was expressly plead as an "alternative count" to its breach of contract claim.  (*Cf.* Counterclaim, Doc. 70 at ¶¶ 45-49, *with* Am. Compl., Doc. 30 at ¶ 123).

Also, ISC is not renting the MSGs on a month-to-month basis, and STEFL's argument to the contrary relies on an illogically selective reading of the Sublease. The Sublease provides that "*[a]ny holding over after the expiration of the Term* shall be on a month-to-month basis and subject to all the terms of this Agreement." (Sublease, Doc. 30-4 ¶ 10(a) (emphasis added)). The Sublease term did not expire and ISC is not "holding over," yet STEFL ignores those requirements. Simply put, that provision is inapplicable here.

As noted above, ISC does not remain in possession of those units willingly as implied in STEFL's Motion, but stopped using them altogether in February 2019. (*See* Counterclaim, Doc. 70 at ¶ 36; Chitwood Decl., ISC's Mot. Ex. 40, Doc. 97-40 at ¶ 56). *See also* ISC Answers to STEFL's Third Set of Interr. at 2, attached hereto as **Exhibit 3**. STEFL has been aware for nearly two years that it must recover its MSGs from ISC's properties. *See* Ex. 3 at 4-5. ISC placed STEFL on notice of its intent to terminate the Sublease and its possessory interests in the MSGs on February 22, 2019, when it filed its Motion for Relief from Stay in the bankruptcy proceeding. Thereafter, ISC repeatedly requested that STEFL remove the units from its tracks, culminating in formal notice to STEFL on August 13, 2020. *See id*. at 4. (*See also* STEFL Counterclaim Answer, Doc. 71 ¶ 39). ISC has been storing and insuring STEFL's MSGs at ISC's cost and expense, which sums remain in dispute.

In an email dated April 16, 2019, Samuel Finelli, a member of STEFL's Asset Management Group, admitted that STEFL would need to retrieve its units in "short order." *See* Email from Finelli to M. Phommathep at STEFL_033793, attached hereto as **Exhibit**

**4**.  On or about May 30, 2019, ISC informed STEFL that it was storing the MSGs, and that STEFL would need to retrieve them.  *See* ISC Interr. Ans., Ex. 3 at 5.  Finally, on August 13, 2020, ISC's counsel sent formal written notice to STEFL's counsel demanding that STEFL retrieve the MSGs, which STEFL admits to receiving in its Answer to ISC's counterclaims.  ISC Notice dated 8/13/20, attached hereto as **Exhibit 5**.  (*See also* STEFL Counterclaim Answer, Doc. 71 ¶ 39).

ISC has not willingly remained in possession of the MSGs as STEFL's Motion implies, but has been forced to store and insure them on its properties.  STEFL should be disgorged of the amounts it has unjustly and voluntarily accepted, and STEFL's motion for summary judgment as to ISC's unjust enrichment claim should be denied.

> 2.   STEFL is not entitled to summary judgment on ISC's declaratory judgment claim (Counterclaim Count II).

Although STEFL's declaratory judgment claim is duplicative of its breach of contract claim, ISC's declaratory judgment claim was neither pled in the alternative to any affirmative count nor is it duplicative of its defenses to STEFL's claims.  ISC seeks affirmative relief in the form of a declaration that STEFL has no ongoing rights to rent or any other obligations allegedly extending to STEFL under the Sublease, and that the Sublease was legally terminated.  (*See* Counterclaim, Doc. 70 ¶ 68).  Even if ISC prevails on STEFL's breach of contract claim (as it should), such a ruling does not necessarily provide ISC with the prospective relief of an express ruling that the Sublease was terminated and there are no continuing rights or obligations thereunder.  *See Hannon v. Del. Am. Life Ins. Co.*, No. 6:14-cv-301-Orl-40KRS, 2014 WL 12618716, at *3 (M.D. Fla.

2014) ("In determining whether a claim for declaratory judgment should be dismissed or stricken as duplicative of a claim for breach of contract, federal courts are guided by two principles: (1) 'the completeness of the relief afforded to a party when it prevails on its breach of contract claim' and (2) the judicial economy of entertaining both claims." (citation omitted)).  A declaratory judgment provides complete and unambiguous relief as to any remaining, prospective rights or obligations of the parties.  Therefore, STEFL's motion for summary judgment as to ISC's declaratory judgment claim should be denied.

### 3.   STEFL is not entitled to summary judgment on ISC's trespass to land claim (Counterclaim Count III).

ISC withdrew any permission for STEFL's MSGs to remain on ISC's property as early as February 22, 2019, when it filed the motion in the bankruptcy court in order to terminate the Sublease.  At the latest, that permission was withdrawn as of May 22, 2019, when ISC issued the notice of termination.  *Garden Street Iron & Metal, Inc. v. Tanner*, 789 So.2d 1148, 1150 (Fla. 2d DCA 2001) (explaining that the continued presence of an object or objects on land after consent has been withdrawn is a trespass to land).  Such permission was also retracted repeatedly, and ISC specifically requested that STEFL remove the equipment from the tracks throughout 2019 settlement negotiations, culminating in a formal written demand on August 13, 2020.  (*See* STEFL Counterclaim Answer, Doc. 71 ¶¶ 38, 39).  *See also* Ex. 5.  Despite multiple notices to STEFL and requests from ISC, STEFL's MSGs remain on ISC's property at ISC's expense.  ISC does not remain in possession of those units willingly as implied in STEFL's Motion, and stopped using them altogether in February 2019.  (*See* Counterclaim, Doc. 70 at ¶ 36;

Chitwood Decl., ISC's Mot. Ex. 40, Doc. 97-40 at ¶ 56). *See also* ISC Interr. Ans., Ex. 3 at 2. Additionally, STEFL's argument that ISC "has not offered to deliver [the MSGs] to an address designated by STEFL" is baseless. (Pl.'s Mot., Doc. 96 at 27). The Sublease requires the Sublessor to designate a return address in writing, and STEFL (claiming to stand in the shoes of Sublessor as its assignee) never provided such notice or information. (Sublease, Doc. 30-4 ¶ 10(a)). STEFL's motion for summary judgment as to ISC's trespass claim should be denied and, in conjunction with ISC's claim for declaratory relief, STEFL should be ordered to remove its property from ISC's tracks.

B.    **STEFL's Motion for Summary Judgment as to ISC's Affirmative Defenses Should be Denied.**

There is a genuine dispute of material fact as to whether STEFL ratified the Addendum, or has waived or should be estopped from refusing its enforceability. Ratification may be implied through conduct that is "inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it." *Rakestraw v. Rodrigues*, 8 Cal.3d 67, 73, 500 P.2d 1401 (Cal. 1972) (citations and internal quotation marks omitted). Waiver and estoppel can, likewise, be implied through conduct. *Financial Pacific Ins. Co. v. Amco Ins. Co.*, No. 2:05-cv-2099-GEB-CMK, 2007 WL 685856, at *3 (E.D. Cal. Mar. 5, 2007). On or about October 25, 2017, Gregory Motto, ISC's Executive Vice President of Accounting, informed J. Robert Capps, Peter Dorfman, and Luke Blades, all employees of STEFL or SunTrust Bank, that "this sublease was accompanied by a partnership agreement between ISC and DC Solar." Email dated 10/25/17, attached hereto as **Exhibit 6**. There is evidence showing that the terms "partnership" and "sponsorship"

- 27 -

are used interchangeably (Odom Dep., Ex. 1 at 32:10-18; Newmark Report, Doc 94-1 at 3), and that partnership agreements are often accompanied by cross-default provisions, which may appear in a separate addendum (Newmark Report, Doc. 94-1 at 9)—all of which STEFL knew or should have known given its extensive sponsorship experience in the sports industry.  (ISC's Mot. to Compel, Doc. 75 at 9-11 (discussing STEFL's sponsorships in the sports industry, generally, and the motorsports industry, specifically)).  Nevertheless, STEFL did nothing to repudiate or even investigate Mr. Motto's statement, and in fact STEFL proceeded to close on the second tranche with DC Solar eight days later.  Dep. of STEFL 30(b)(6), **Exhibit 7** at 47:4-48:24 (discussing deposition exhibit ISC 39, attached hereto as Ex. 6).  Furthermore, prior to its eventual default, DC Solar performed under the addendum and thus equally ratified its terms.  (*See generally* Chitwood Decl., Doc. 97-40 (explaining the sponsorship agreements that DC Solar entered into, under which DC Solar received certain sponsorship, promotional, naming, and other rights and privileges)).  There is, at the very least, a material dispute of fact as to whether STEFL ratified the Addendum through its conduct.  Therefore, STEFL's motion for summary judgment should be denied.

Finally, STEFL makes no argument as to why ISC's affirmative defense for fraud should be dismissed.  For that reason alone, STEFL's motion for summary judgment on ISC's fraud defense should be denied.  Moreover, DC Solar and its affiliates engaged in widespread fraud, of which both ISC and STEFL (among countless others) are victims.  In light of DC Solar's bad acts, ISC's affirmative defenses of both fraud and estoppel should survive summary judgment.  *Outsource Services Mgmt., LLC v. Lake Auston Properties I, Ltd.*, No. 6:09-cv-1928-Orl-35-DAB, 2012 WL 12903281, at *4 (M.D. Fla. 2012)

(concluding that an estoppel defense alleging "that the Lender (or its predecessor) made misrepresentations" that induced performance should be tried, and thus granting the defendant's motion for reconsideration).  In conclusion, this Court should deny STEFL's motion for summary judgment.

## CONCLUSION

For all of the foregoing reasons, STEFL is not entitled to judgment as a matter of law on either Count I or Count II of its Amended Complaint.

Respectfully submitted,

/s/ Robert C. Folland
Robert C. Folland (FL#1007951)
BARNES & THORNBURG LLP
4540 PGA Boulevard, Suite 208
Palm Beach Gardens, FL  33418
561-473-7560 (Telephone)
561-473-7561 (Facsimile)
Rob.Folland@btlaw.com

Mark R. Owens (*admitted pro hac vice*)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN, 46204-3535
317-231-7459 (Telephone)
317-231-7433 (Facsimile)
Mark.Owens@btlaw.com

Donald A. Rea (*admitted pro hac vice*)
Ashley N. Fellona (*admitted pro hac vice*)
SAUL EWING ARNSTEIN & LEHR LLP
500 East Pratt Street, Suite 900
Baltimore, MD 21202-3133
410-332-8680 (Telephone)
410-332-8862 (Facsimile)
don.rea@saul.com
ashley.fellona@saul.com

*Counsel for Defendant/Counter-Plaintiff*
*International Speedway Corporation*

38020318.7

## <u>REQUEST FOR ORAL ARGUMENT</u>

Pursuant to Local Rule 3.01(h), ISC respectfully requests a hearing on the instant

Motion and estimates that no more than 3 hours will be required for argument.

Respectfully submitted,

<u>*/s/ Robert C. Folland*</u>
Robert C. Folland (FL#1007951)
BARNES & THORNBURG LLP
4540 PGA Boulevard, Suite 208
Palm Beach Gardens, FL  33418
561-473-7560 (Telephone)
561-473-7561 (Facsimile)
Rob.Folland@btlaw.com

Mark R. Owens (*admitted pro hac vice*)
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, IN, 46204-3535
317-231-7459 (Telephone)
317-231-7433 (Facsimile)
Mark.Owens@btlaw.com

Donald A. Rea *(admitted pro hac vice)*
Ashley N. Fellona *(admitted pro hac vice)*
SAUL EWING ARNSTEIN & LEHR LLP
500 East Pratt Street, Suite 900
Baltimore, MD 21202-3133
410-332-8680 (Telephone)
410-332-8862 (Facsimile)
don.rea@saul.com
ashley.fellona@saul.com

*Counsel for Defendant/Counter-Plaintiff*
*International Speedway Corporation*

38020318.7

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on February 16, 2021, a copy of the foregoing was filed with the Court and served on all parties of record via CM/ECF.

_/s/ Robert C. Folland_____
Robert C. Folland

38020318.7