UNITED STATES DISTRICT COURT FOR
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | | |
|---|---|---|
| SUNTRUST EQUIPMENT FINANCE & LEASING CORP., | ) ) ) ) | |
| Plaintiff / Counter-Defendant, | ) ) ) | Case No.: 6:19-cv-01624-CEM-LRH |
| v. | ) ) ) | |
| INTERNATIONAL SPEEDWAY CORPORATION, | ) ) ) ) | |
| Defendant / Counter-Claimant. | ) ) ) | |

**PLAINTIFF / COUNTER-DEFENDANT SUNTRUST
EQUIPMENT FINANCE & LEASING CORP.'S
<u>REPLY IN SUPPORT OF SUMMARY JUDGMENT</u>**

In response to STEFL's summary judgment motion, ISC argues that it terminated the Sublease pursuant to the Addendum. But ISC only purported to exercise its termination "right" on May 22, 2019, over a month after STEFL exercised its own right under the Sublease to accelerate all outstanding rent. Thus, even if the Addendum were enforceable (which it is not), ISC would still owe STEFL all outstanding rent under the Sublease, and STEFL would still be entitled to summary judgment on its contract claim.

Recognizing this problem, ISC argues that STEFL's acceleration of rent was void because it violated the automatic stay in DC Solar's bankruptcy. But ISC lacks standing to raise DC Solar's bankruptcy protections, and its argument fails on its merits. And in any event, the sole basis for ISC's purported termination of the Sublease—the Addendum—is invalid and unenforceable.

## I. STEFL'S ACCELERATION OF RENT UNDER THE SUBLEASE WAS VALID.

STEFL accelerated rent on April 9, 2019, over a month before ISC purported to terminate the Sublease. *See* Doc. 96 at 9. Consequently, ISC still owes STEFL all outstanding rent under the Sublease *even if* ISC's termination was valid. As STEFL has explained, *see* Doc. 96 at 21–23, under the UCC, "any right based on prior default or performance survives" termination of a lease agreement. Cal. Com. Code § 10505(b). STEFL's right to accelerate was based on ISC's prior March 2019 default of refusing to pay rent. *See* Doc. 96-17.

ISC does not challenge the fact that a purported termination of the Sublease would not alter the impact of a prior acceleration of rent. Rather, ISC argues for the first time in this case (despite STEFL's having pleaded the April 9, 2019 acceleration from the outset of the case, *see* Compl. (Doc. 1) ¶¶ 83–84) that STEFL's acceleration violated the automatic stay in DC

2

Solar's bankruptcy and was therefore void. ISC's argument fails for two reasons: (1) as a non-debtor, ISC lacks standing to enforce the stay in this way; and (2) as this Court has already observed, STEFL received an assignment of DC Solar's rights under the Sublease before DC Solar filed for bankruptcy. The right to rent that STEFL enforced through acceleration was accordingly STEFL's property, not property of the bankruptcy estate.

### A.     ISC Lacks Standing to Enforce the Automatic Stay.

ISC lacks standing to enforce the automatic stay in DC Solar's bankruptcy. "To have standing, a party must assert an injury within the zone of interests of the Bankruptcy Code." *Zurich Am. Ins. Co. v. Hardin*, No. 8:14-CV-775-T-23AAS, 2019 WL 2137449, at *1 (M.D. Fla. May 16, 2019). The automatic stay protects the interests of the debtor by shielding it from financial pressure during bankruptcy and of creditors by protecting orderly disbursement of the debtor's estate. *See id.* (citing *Carver v. Carver*, 954 F.2d 1573, 1576 (11th Cir. 1992)).

ISC is not the debtor. And while ISC is a creditor of DC Solar, "[o]nly the Trustee is empowered to protect property of the estate." *In re Stadler*, No. BKR. 04-91944, 2005 WL 6487189, at *2 (Bankr. N.D. Ga. Mar. 31, 2005). Accordingly, "an unsecured creditor may not pursue a stay violation on behalf of a bankruptcy estate." *Id.* DC Solar's Trustee has not invoked the stay here. To the contrary, the Trustee knew of the litigation between STEFL and

3

ISC, and informed the bankruptcy court—<u>after</u> ISC filed a brief in which it argued that STEFL had violated the automatic stay—that she was "willing to permit the litigation . . . to go forward." *See In re Double Jump, Inc.*, No. 19-50102-gs, Doc. 561 (ISC Reply Brief) at 3–5 (Bankr. D. Nev. Apr. 10, 2019), Doc. 641 (Joint Mot. to Vacate the May 24, 2019 Evidentiary Hearing) (Bankr. D. Nev. Apr. 29, 2019) at 4.

Furthermore, to the extent ISC suffered a unique injury from STEFL's acceleration of rent, it was not as a creditor of DC Solar. The automatic stay is intended to preserve the bankruptcy estate and benefit creditors. Permitting ISC to avoid making Sublease payments does not benefit the estate or its creditors; it only benefits ISC as a sublessee. It thus falls outside the zone of interests protected by the automatic stay. *See In re Nilhan Developers, LLC*, 622 B.R. 795, 802 (Bankr. N.D. Ga. 2020); *In re Peeples*, 880 F.3d 1207, 1215 (10th Cir. 2018).

**B.     STEFL's Right to Rent from ISC Was Never Part of the Bankruptcy Estate or Subject to the Automatic Stay.**

More basically, ISC's argument fails because STEFL's acceleration of rent was never subject to the automatic stay. As STEFL explained in its motion, it obtained a contractual right to rent from ISC in three different ways: as a third-party beneficiary to the Sublease, as a secured creditor of DC Solar, and through an assignment of rights from DC Solar. *See* Doc. 96 at

4

12–13.  ISC's response focuses on the security interest, arguing that STEFL's exercise of its rights as a secured creditor did not take the Sublease rental payments out of the bankruptcy estate.  *See* Doc. 102 at 18–19.  But ISC does not discuss DC Solar's assignment of its rights under the Sublease to STEFL.

A prepetition assignment of rent or other payment streams removes them from the bankruptcy estate, and thus beyond the reach of the automatic stay.  *See, e.g.*, *In re Jones Const. & Renovation, Inc.*, 337 B.R. 579, 586 (Bankr. E.D. Va. 2006); *In re Brooks*, 248 B.R. 99, 105–06  (Bankr. W.D. Mich. 2000).  This Court has already observed that STEFL received a "clear and unqualified" assignment of DC Solar's rights under the Sublease.  Doc. 69 at 16.  ISC does not challenge the validity or nature of this assignment.  And there is no dispute that the assignment occurred before DC Solar's bankruptcy.  *See* Doc. 96-8 at 3; Doc. 96-10 at 3.

Were there any doubt about whether DC Solar retained any interest in the right to rent under the Sublease, STEFL directed ISC on January 15, 2019 to begin making rental payments directly to STEFL.  *See* Doc. 96 at 9.  And on January 28, 2019, STEFL exercised its right against DC Solar to terminate the Equipment Schedules, thereby cutting off any property rights

5

DC Solar had in the MSGs being rented.  *See* Doc. 96-25.[1]  Both actions took place before DC Solar filed for bankruptcy on February 4, 2019.

Finally, the bankruptcy court never ruled that the rents assigned to STEFL were part of the bankruptcy estate or subject to the automatic stay, despite ISC's request for such a ruling.  *See In re Double Jump*, No. 19-50102-gs, Doc. 561 (Bankr. D. Nev. Apr. 10, 2019), Doc. 722 (Bankr. D. Nev. May 14, 2019).  Instead, the court noted that the Trustee stated she would not assume any of DC Solar's subleases or contracts with ISC, thereby rendering them rejected as a matter of law, and accordingly granted ISC's motion for relief from the automatic stay.  *See id.*, Doc. 722 at 3; 11 U.S.C. § 365(d)(1).

## II.     THE ADDENDUM IS UNENFORCEABLE.

Further, the basis of ISC's purported termination of the Sublease—the Addendum—is invalid because it abrogated STEFL's rights as a third-party beneficiary and violated the implied covenant of good faith and fair dealing.

First, ISC does not contest the well-accepted principle that parties may not discharge or modify a promise to an intended beneficiary if the beneficiary, "before he receives notification of the discharge or modification, materially changes his position in justifiable reliance on the promise or brings suit on it or manifests assent to it at the request of the promisor or

---

[1] As STEFL explained in its motion and ISC has not disputed in its response, STEFL's January 28, 2019 termination of the Equipment Schedules did not terminate the Sublease itself.  *See* Doc. 96 at 16–18.

6

promisee." Rest. (2d) Contracts § 311(3); *see* ISC Br. at 11. Here, STEFL, one day after receiving the incomplete Sublease and without knowledge of the Addendum, purchased and leased $45 million in MSGs (and shortly thereafter another $30 million) in reliance on the Sublease.

ISC contends that STEFL's reliance was not "justifiable" because the Sublease allowed ISC and DC Solar to amend it. This vastly overstates the bar for a beneficiary to rely on a promise made for its benefit. *See* Rest. (2d) Contracts § 311 cmt. g ("In the absence of some contrary indication, an intended beneficiary is justified in relying on the promise."). Contractual language that merely states the parties may later modify the contract (which right exists even absent such a provision) does not preclude a beneficiary from relying on the contract. *See Cent. States, Se. & Sw. Areas Pension Fund v. Standard Elec. Co.*, 87 F. Supp. 3d 810, 815–16 (N.D. Ill. 2015).

ISC also argues that, because it immediately "amended" the Sublease before STEFL even had a chance to read the original (incomplete) version it received, STEFL could not have relied on or assented to the Sublease prior to the amendment. ISC's arguments in this regard reveal the insidious nature of its deal with DC Solar and why the Addendum is truly not an enforceable amendment. ISC's argument purports to rest on the Restatement's language, and on similar language from California courts, that the power to modify "terminates" once the beneficiary acts in reliance before receiving notification

7

of the modification.  *See* ISC Br. at 11.  ISC infers from this language that any modification done before the right "terminates" (*i.e.*, once the third party acts in reliance) must therefore be valid, even if concealed from the beneficiary.

The comments and illustrations to Section 311 of the Restatement, however, confirm that, so long as a beneficiary relies on a promise without notification of its modification, the modification is ineffective against the beneficiary *even if made before the beneficiary acted*.  *See* Rest. (2d) Contracts § 311, cmt. g & h, ill. 9.  The reasoning behind this rule is clear, and consistent with STEFL's position: allowing amendment of a contract to the detriment of a third-party beneficiary without its consent or knowledge is inequitable when the beneficiary has relied on the unamended contract.

ISC cites no case that holds a party may avoid this rule by entering into an undisclosed "amendment" simultaneously with the main contract.  The lack of precedent on this issue is unsurprising, given the limited circumstances under which it might arise.  Since an intended beneficiary's rights vest as soon as it manifests assent to the contract, ISC's timing argument would only come up in the clearly inequitable, and apparently unprecedented, situation where parties amend a contract *before* giving it to the beneficiary and then subsequently hide the amendment.  The Court should not allow this case to be the first endorsing such conduct.

Even if such skirting of the rules against modification of third-party promises were permitted, it was a clear breach of the implied duty of good faith and fair dealing. *See* Cal. Com. Code § 1304. The entire purpose of the Addendum was to undo—in secret—a standard and important leasing term (the hell-or-high-water clause) material to STEFL's decision to do the deal.

ISC's argument that the Addendum cannot violate the duty of good faith because ISC was authorized to amend the Sublease misses the point. It is precisely where a party can exercise discretion under a contract that the duty applies. California law is clear that the duty of good faith applies to a party's power to amend a contract. *See Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 966 (Cal. Ct. App. 2015). The defendant in *Cobb*, like ISC, argued that, because it had a contractual right to amend, it could force an amendment (there, an arbitration clause) that negatively affected the plaintiff. *Id.* at 965–66. That is what happened here: ISC and DC Solar amended the Sublease without STEFL's knowledge—much less its consent—in a manner that significantly impeded STEFL's rights under the Sublease.[2]

### III. ISC'S OTHER ARGUMENTS FAIL TO RAISE FACT ISSUES.

ISC has not raised a fact issue on damages that should preclude summary judgment on STEFL's contract claims. While ISC references

---

[2] STEFL withdraws its argument that the Addendum is invalid because it was not supported by consideration.

9

potential "re-leasing or selling" of the MSGs, *see* Doc. 102 at 22, it is ISC's burden to establish that doing so would have been a reasonable way for STEFL to mitigate damages. *See, e.g.*, *Millikan v. Am. Spectrum Real Estate Servs. Cal., Inc.*, 117 Cal. App. 4th 1094, 1105 (Cal. Ct. App. 2004). Moreover, California courts use mitigation "sparingly in the contract or commercial context," particularly where a liquidated sum is at issue. *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (Cal. Ct. App. 1994); *see also Vitagraph, Inc. v. Liberty Theatres Co. of Cal.*, 242 P. 709, 711 (Cal. 1925). ISC's response does not explain how re-leasing or selling the MSGs would have been reasonable for STEFL to do under the circumstances.

Likewise, while ISC contends that STEFL's expert used an incorrect discount rate in some of his damages calculations, it does not dispute that the amount of outstanding rent under the Sublease is $46,903,073. *See* Doc. 102 at 22. And whether ISC is entitled to offset will depend on whether its counterclaims have merit. In any event, a fact issue on damages would still not preclude summary judgment on liability for STEFL's contract claim.

Finally, while ISC disputes some of STEFL's other arguments, *see, e.g.*, Doc. 102 at 12, none are necessary for the Court to resolve to find for STEFL on its contract claim.

## CONCLUSION

STEFL's summary judgment motion should be granted.

Respectfully submitted, this 2nd day of March, 2021.

*s/ Daniel J. Gerber*
DANIEL J. GERBER, ESQUIRE
Florida Bar No. 0764957
SUZANNE BARTO HILL, ESQUIRE
Florida Bar No. 0846694
RUMBERGER, KIRK & CALDWELL
A Professional Association
300 South Orange Avenue, Suite 1400 (32801)
Post Office Box 1873
Orlando, Florida  32802-1873
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133
dgerber@rumberger.com
shill@rumberger.com

Lawrence A. Slovensky (admitted *pro hac vice*)
Georgia Bar No. 653005
Jeffrey R. Dutson (admitted *pro hac vice*)
Georgia Bar No. 637106
Benjamin B. Watson (admitted *pro hac vice*)
Georgia Bar No. 632663
Aaron Parks (admitted *pro hac vice*)
Georgia Bar No. 224347
KING & SPALDING LLP
1180 Peachtree Street, N.E.
Atlanta, Georgia 30309
(404) 572-4600
lslovensky@kslaw.com
jdutson@kslaw.com
bwatson@kslaw.com
aparks@kslaw.com

Lennette Lee (admitted *pro hac vice*)
California Bar No. 263023
KING & SPALDING LLP
633 West Fifth Street
Suite 1600
Los Angeles, CA 90071

11

>          (213) 443-4355
>          llee@kslaw.com
>
>          *Attorneys for Plaintiff SunTrust Equipment Finance & Leasing Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which automatically sends e-mail notification of such filing to any attorneys of record.

This 2nd day of March, 2021.

>          *s/ Daniel J. Gerber*
>          DANIEL J. GERBER, ESQUIRE
>          Florida Bar No. 0764957
>          RUMBERGER, KIRK & CALDWELL