UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**SUNTRUST EQUIPMENT
FINANCE & LEASING CORP.,**

       **Plaintiff,**

v.                                      Case No. 6:19-cv-1624-CEM-LRH

**INTERNATIONAL SPEEDWAY
CORPORATION,**

       **Defendant.**
_____/

**ORDER**

    THIS CAUSE is before the Court on Defendant's Objection to Magistrate Judge's Order on Defendant's Motion to Compel ("Objection," Doc. 85), to which Plaintiff filed a Response in Opposition (Doc. 87). For the reasons stated herein, the Objection will be overruled and the Magistrate Judge's Order (Doc. 82) will be affirmed.

### I.    BACKGROUND

    This case arises from a contractual dispute between several entities, some of which are parties to this action and some of which are not. (Am. Compl., Doc. 30, at 1–5). On September 25, 2017, Plaintiff entered into a Master Equipment Lease Agreement ("Master Lease," Doc. 30-1) with DC Solar Distribution, Inc. ("DC

Solar"). (Doc. 30 at 7; *see generally* Doc. 30-1). Through the Master Lease, Plaintiff leased to DC Solar certain equipment to be set forth in one or more equipment schedules, (Doc. 30 at 7; Doc. 30-1 at 2), specifically "mobile solar generators" ("MSGs"). (Doc. 30 at 1).

The Master Lease also contains other contract provisions applicable to the instant case. Specifically, the Master Lease contains a provision regarding "Lessee Assignments," which states:

> [DC Solar] shall not . . . sublet the equipment to, or permit the equipment to be used by, anyone other than [DC Solar] or a permitted sublessee under a permitted sublease, in each case without [Plaintiff]'s prior written consent.

(Doc. 30-1 at 9 (emphasis omitted)). The Master Lease defines a Permitted Sublease as "a sublease of any of the Equipment between [DC Solar] and a Permitted Sublessee under a sublease agreement in the form . . . approved by [Plaintiff]." (*Id.*). A Permitted Sublessee is defined as "[Defendant], and any other sublessee with [Plaintiff]'s prior written consent." (*Id.*).

Shortly thereafter, Plaintiff and DC Solar executed Equipment Schedule No. 001 ("Schedule 001," Doc. 30-2). (Doc. 30 at 8; *see generally* Doc. 30-2). On November 3, 2017, the same parties executed Equipment Schedule No. 002 ("Schedule 002," Doc. 30-3) (collectively, "Schedules"). (Doc. 30 at 8; *see generally* Doc. 30-3). Through the Master Lease, Schedule 001, and Schedule 002, Plaintiff

leased 500 MSGs to DC Solar at a total invoice cost of seventy-five million dollars. (Doc. 30 at 8; Doc. 30-2 at 2; Doc. 30-3 at 2).

On September 27, 2017, two days after the Master Lease was executed, DC Solar and Defendant entered into a Mobile Solar Equipment Sublease ("Sublease," Doc. 30-4). (*See generally id.*). Through the Sublease, DC Solar subleased to Defendant the 500 MSGs leased to DC Solar through the Master Lease and Schedules. (*Id.* at 2). The Sublease purports to "incorporate[] . . . by reference" the Master Lease. (*Id.*). The Sublease also states that it is "subject to all terms and conditions of the Master Lease[, and t]o the extent there is a conflict between the terms of the Master Lease and [the] Sublease, [the] Sublease shall prevail." (*Id.*).

The same day the Sublease was executed, DC Solar and Defendant executed an Addendum to Mobile Solar Equipment Sublease ("Sublease Addendum #1," Doc. 30-10). (Doc. 30 at 15–16; *see generally* Doc. 30-10). Sublease Addendum #1 amends the Sublease to incorporate additional contractual provisions, including conditions under which Defendant could terminate the Sublease. (Doc. 30-10 at 2). Specifically, Sublease Addendum #1 states that DC Solar "is entering into a sponsorship agreement" with certain affiliates of Defendant, and in the event the sponsorship agreements are not executed or are terminated by DC Solar, Defendant "in its sole discretion shall have the right to terminate the Sublease upon written notice to [DC Solar]." (*Id.*). Sublease Addendum #1 also provides that "[i]n the event

of a conflict between the terms and provisions of [Sublease Addendum #1] and the terms and provisions [of] the Sublease, [Sublease Addendum #1] shall control." (*Id.* at 3). Sublease Addendum #1 also states that it "shall be binding upon the parties and their respective heirs, successors and assigns." (*Id.*). However, Plaintiff alleges that it "was not aware of and did not consent to [Sublease Addendum #1]." (Doc. 30 at 16).

On March 6, 2018, DC Solar and Defendant executed Addendum to Mobile Solar Equipment Sublease ("Sublease Addendum #2," Doc. 30-12). (Doc. 30 at 17; *see generally* Doc. 30-12). Sublease Addendum #2 amends the Sublease to delete and replace language regarding the Master Lease, stating that "[Defendant's] use of the [MSGs] is subject to all terms and conditions of the Master Lease. To the extent there is a conflict between the terms of the Master Lease and [the] Sublease, [the] Sublease shall prevail. No term, condition or provision of the Master Lease may be modified, amended or deleted without the prior written consent of [DC Solar]." (Doc. 30-12 at 2). Sublease Addendum #2 also states that it "shall be binding upon the parties and their respective heirs, successors and assigns." (*Id.*). However, as with Sublease Addendum #1, Plaintiff alleges that it "was not aware of and did not consent to . . . [Sublease] Addendum [#]2." (Doc. 30 at 18).

The same day the Sublease and Sublease Addendum #1 were executed, and prior to the time Sublease Addendum #2 was executed, Plaintiff and DC Solar

executed a Subleasing Consent and Amendment for Schedule 001 ("Schedule 001 Consent," Doc. 30-5). (Doc. 30 at 12; *see generally* Doc. 30-5). Plaintiff and DC Solar also later executed a Subleasing Consent and Amendment for Schedule 002 ("Schedule 002 Consent," Doc. 30-6) on November 3, 2017 (collectively, "Consents"). (Doc. 30 at 12; *see generally* Doc. 30-6). In the Consents, Plaintiff and DC Solar agreed that "[DC Solar] may lease, sublease, rent or otherwise permit use of the Equipment in the regular course of its business to [Defendant]." (Doc. 30-5 at 2; Doc. 30-6 at 2). The Schedule 001 Consent also contains a "Sublessee Acknowledgement" that has a signature block for Defendant but is not executed by Defendant. (*Id.* at 5). The Schedule 002 Consent does not contain a Sublessee Acknowledgement. (*See generally* Doc. 30-6). Plaintiff reiterates that despite signing the Consents, "[Plaintiff] was not aware of and did not consent to either [Sublease] Addendum [#]1 or [Sublease] Addendum [#]2, . . . and [Plaintiff] never consented to their terms." (Doc. 30 at 18).

In the Consents, DC Solar also "assigns and grants to [Plaintiff] a continuing security interest in any and all Sublease Agreements and all proceeds thereof." (Doc. 30-5 at 2; Doc. 30-6 at 2). "[Plaintiff] filed a UCC Financing Statement to perfect its security interest in the Sublease." (Doc. 30 at 13; UCC Financing Statement, Doc. 30-7, at 2). The UCC Financing Statement defines the collateral as "[a]ll of [Plaintiff's] right, title and interest in and to [the Sublease], . . . and all extensions

and renewals thereof, and all rentals and other sums due, now or hereafter, under the Sublease, and any and all proceeds of insurance required under the Sublease, and all products and proceeds of the foregoing." (Doc. 30-7 at 2).

Plaintiff alleges that DC Solar failed to make the payments required under the Master Lease for December 2018, (Doc. 30 at 14), and therefore that DC Solar was in default under the Master Lease, (Doc. 30-1 at 7). On January 15, 2019, Plaintiff sent a letter (Doc. 30-8) directly to Defendant alleging that DC Solar was in default and asserting that Plaintiff would "be exercising all of the rights and remedies of [DC Solar] under the Sublease." (Doc. 30 at 14; Doc. 30-8 at 1). Further, Plaintiff requested that Defendant begin remitting payments due under the Sublease directly to Plaintiff instead of to DC Solar. (Doc. 30 at 14; Doc. 30-8 at 1). According to Plaintiff, Defendant did not make any payments to Plaintiff following DC Solar's alleged default. (Doc. 30 at 14). On March 8, 2019, Plaintiff sent another letter (Doc. 30-9) to Defendant stating that Defendant had failed to make payments due under the Sublease for February and March 2019. (*Id.* at 14–15; Doc. 30-9 at 2). The March 8, 2019 letter also noted that Plaintiff would pursue its "remedies under the Sublease" if Defendant did not cure the late payments within ten days. (Doc. 30-9 at 2). Plaintiff alleges that Defendant did not make any payments or cure the late payments. (Doc. 30 at 15).

Plaintiff filed this lawsuit, asserting four claims for relief in the Amended Complaint: (I) Breach of the Master Lease and Sublease, (II) Declaratory Relief, (III) Unjust Enrichment, and (IV) Fraudulent Inducement. (*Id.* at 25–36). Defendant asserts three counterclaims: (I) Unjust Enrichment, (II) Declaratory Relief, and (III) Trespass to Land. (Answer and Countercls., Doc. 70, at 22–26).

As applicable to the instant Objection, during discovery in this case, Defendant sent Interrogatory No. 21 to Plaintiff, which read as follows:

> Describe in detail every customer of SunTrust and/or [Plaintiff] with whom SunTrust and/or [Plaintiff] has or had a contract to sponsor a sporting or other event, venue, franchise or other organization within the last ten years, and for each such customer, identify every person with knowledge of any such contract and identify each such contract and the benefits and other sponsorship, entertainment or hospitality assets received by SunTrust and/or [Plaintiff].

(Pl.'s Resps. to Def.'s First Interrogs., Doc. 75-1, at 3). Additionally, Defendant sent Request for Production No. 57 to Plaintiff, which read as follows:

> For every customer of SunTrust and/or [Plaintiff] with whom SunTrust and/or [Plaintiff] has or had a contract to sponsor a sporting or other event, venue, franchise or other organization within the last ten years, all contracts in effect with such a customer during the last ten years.

(Pl.'s Resps. to Def.'s First Reqs. for Produc., Doc. 75-2, at 3). Plaintiff objected to both the interrogatory and request for production, arguing that they were "unduly burdensome and not proportional to the needs of the case." (Doc. 75-1 at 3; Doc.

75-2 at 3). Further, Plaintiff objected to the request for production, arguing that "sponsorship contracts between SunTrust and/or [Plaintiff] are not relevant to the interpretation of the contracts between [Plaintiff] and ISC or to any other issues in this case" and that the documents request are "subject to third-party confidentiality obligations." (Doc. 75-2 at 3).

Defendant filed a Motion to Compel (Doc. 75), arguing that Plaintiff's experience in sports sponsorship agreements, particularly agreements with Defendant and NASCAR, is relevant and discoverable. (*Id.* at 6–13). Thus, Defendant argued that the Court should overrule Plaintiff's objections to the interrogatory and request for production and compel Plaintiff to answer and provide the requested documents. (*Id.* at 13–14). United States Magistrate Judge Leslie R. Hoffman denied the Motion to Compel. (Doc. 82 at 14). Defendant filed the instant Objection to Judge Hoffman's Order, requesting that the Court vacate Judge Hoffman's Order and grant Defendant's Motion to compel.

## II.   LEGAL STANDARD

"Regardless of whether a magistrate judge rules on a dispositive or a non-dispositive matter, any party who disagrees with the magistrate judge's decision [may] object to those specific portions of the decision disagreed with." *Fla. Action Comm., Inc. v. Seminole Cnty.*, No. 6:15-cv-1525-Orl-40GJK, 2016 U.S. Dist. LEXIS 143735, at *3 (M.D. Fla. Oct. 18, 2016) (citing Fed. R. Civ. P. 72(a), (b)(2)).

Objections to a Magistrate Judge's Order are reviewed under the "clearly erroneous" or "contrary to law" standard. Fed. R. Civ. P. 72(a); *Hallford v. Allen*, No. 07-0401-WS-C, 2007 U.S. Dist. LEXIS 64956, at *3 (S.D. Ala. Aug. 30, 2007) (citing additional authority). "In reviewing the decision, the district judge affords the magistrate judge considerable deference and will only set aside those portions of the decision that . . . leave the district judge 'with the definite and firm conviction that a mistake has been committed.'" *Fla. Action Comm.*, 2016 U.S. Dist. LEXIS 143735, at *3–4 (quoting *Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005)).

### III.  ANALYSIS

Defendant first objects that "the Order misapprehends [Defendant]'s argument as to the relevance of the requested discovery and as a result erroneously concludes that [Defendant] failed to meet its burden to demonstrate the relevance of the requested discovery regarding [Plaintiff]'s sponsorship of sporting events." (Doc. 85 at 1). As applicable here, "[w]hen relevancy of a discovery request is not apparent on the face of the request, then the party seeking discovery has the burden to show its relevancy." *Siddiq v. Saudi Arabian Airlines Corp.*, No. 6:11-cv-69-Orl-19GJK, 2011 U.S. Dist. LEXIS 151474, at *5 n.3 (M.D. Fla. Dec. 7, 2011) (citation omitted); (*see* Doc. 82 at 5–6 (setting forth the full legal standard)).

As explained in the Order, Judge Hoffman understood Defendant's relevancy argument to be that the requested discovery is relevant to Plaintiff's fraudulent inducement claim, "specifically whether [Plaintiff]'s reliance on [Defendant]'s alleged false statements was 'justifiable.'" (Doc. 82 at 8 (citing Doc. 75 at 2, 6–13)). That is, Defendant asserts in the Motion to Compel and its Objection that the discovery is relevant to show whether "[Plaintiff] . . . kn[e]w about the sponsorship agreements between DC Solar and [Defendant's] affiliates, and [whether Plaintiff] . . . kn[e]w about sponsorship agreements in general." (*Id.* at 11). However, as explained by Judge Hoffman, this is not in fact Plaintiff's theory of its fraudulent inducement claim. (*Id.* at 11–12). "[Plaintiff] has never contended that it did not know about the sponsorship agreements DC Solar entered into, nor has it ever contended that it was unaware of the existence of sponsorship agreements in general. Rather, [Plaintiff]'s fraudulent inducement claim is centered on the fact that [Defendant] affirmatively misrepresented to [Plaintiff] that the Sublease itself contained all of its terms when, in fact, [Defendant] had entered into two Addendums which materially changed the terms of the Sublease." (*Id.*).

Primarily, Defendant's Objection contends that it was improper for Judge Hoffman's Order to "prejudge[] disputed factual issues and uncritically accept[] as true [Plaintiff]'s allegations and [Plaintiff]'s theory of the case." (Doc. 85 at 10). This Objection is mistaken as to both arguments. First, the Order does not accept as

true any disputed factual issues. Second, while the Order does accept Plaintiff's theory of its own claim, this is not improper. Rather, Plaintiff is in the best position to explain the contours of its own theory of liability on its fraudulent inducement claim. *Merle Wood & Assocs. v. Trinity Yachts, Ltd. Liab. Co.*, 714 F.3d 1234, 1237 (11th Cir. 2013) ("Plaintiffs are the masters of their claims."). And because Plaintiff is limiting its theory of recovery to that argument in opposition to discovery requests, Plaintiff will be limited to its asserted theory on this claim. Thus, based on Plaintiff's asserted theory of recovery on its fraudulent inducement claim, Defendant has failed to demonstrate the relevancy of the requested discovery.

The Court need not address the substance of Defendant's remaining objections. First, some of Defendant's remaining arguments were not raised before Judge Hoffman. Specifically, Judge Hoffman opines about what argument regarding relevancy might have permitted Defendant to prevail on the Motion to Compel—i.e., the discovery might have been relevant if Defendant had "argu[ed] that it is commonplace for sponsorship agreements themselves to materially alter terms of related leasing agreements." (Doc. 82 at 13). But, as Judge Hoffman correctly points out, Defendant "had two chances to make this argument" and did not. (*Id.* (noting that Defendant "has not connected the dots")). Perhaps predictably, Defendant argues in its Objection that "in fact, this is exactly [Defendant]'s argument." (Doc. 85 at 12). But this argument was not presented to Judge Hoffman, and in its

Objection, Defendant has not cited to any place in its Motion to Compel where it made this argument. "It of course defies logic to claim that the Magistrate Judge erred by failing to consider legal authority which was never offered for [her] consideration, and [this Court] will decline to entertain new arguments which should have been raised to the Magistrate Judge." *Fla. Action Comm.*, 2016 U.S. Dist. LEXIS 143735, at *9 n.3 (citing *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009)).

Alternatively, even if Defendant had met its relevancy burden, Judge Hoffman explains that "[Plaintiff] represents in its response that it has not entered into any such agreements from 2016 to present, thus there is no production to compel." (Doc. 82 at 13). In regard to this issue, Defendant argues that Judge Hoffman erred by not compelling the same discovery from SunTrust—a non-party to this case. But, as explained above, Defendant has not demonstrated the relevancy of the requested discovery, so the Court need to address whether it would be appropriate to compel SunTrust to produce such potential information.

Similarly, the Court need not address Defendant's objections related to which state law applies. Federal law controls the issue of relevancy, and Defendant has not met this threshold burden. Thus, because the Court need not address any issues related to substantive law, there is no occasion to address which substantive state law applies. (*See* Doc. 82 at 8–10, 8 n.5, 9 n.6).

## IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. Defendant's Objection to Magistrate Judge's Order on Defendant's Motion to Compel (Doc. 85) is **OVERRULED**.

2. The Magistrate Judge's Order (Doc. 82) is **AFFIRMED**.

**DONE** and **ORDERED** in Orlando, Florida on July 20, 2021.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record